**No. 21-35334**

---

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

---

SUSAN CLARK, for herself and/or
on behalf of all others similarly situated,

*Plaintiff-Appellant*,

v.

EDDIE BAUER LLC, and
EDDIE BAUER PARENT, LLC,

*Defendants-Appellees*.

---

On Appeal from the United States District Court
for the Western District of Washington
No. 2:20-cv-01106-JCC
Hon. John C. Coughenour

---

### PLAINTIFF-APPELLANT'S
### OPENING BRIEF

---

HATTIS & LUKACS
Daniel M. Hattis
Paul Karl Lukacs
Che Corrington
400 108th Avenue NE, Suite 500
Bellevue, WA 98004
Telephone: (425) 233-8628
*Attorneys for Plaintiff-Appellant*

# TABLE OF CONTENTS

**Page**

INTRODUCTION AND SUMMARY OF ARGUMENT ........................................1

JURISDICTIONAL STATEMENT .........................................................................4

STATUTORY AND REGULATORY AUTHORITIES .........................................4

STATEMENT OF ISSUES PRESENTED FOR REVIEW .....................................5

STATEMENT OF THE CASE................................................................................5

STANDARD OF REVIEW ...................................................................................15

ARGUMENT ........................................................................................................17

I.  MS. CLARK LACKS AN ADEQUATE REMEDY AT LAW FOR
    HER FUTURE HARM AND MAY SEEK INJUNCTIVE RELIEF ..........17

    A.  Monetary Damages Are Inadequate Because They Will Not
        Prevent Eddie Bauer From Continuing Its False Advertising ........... 21

    B.  Monetary Damages Are Inadequate Because They Cannot Be
        Calculated For Future Harm And Thus Cannot Be Awarded........... 22

    C.  A Plaintiff May Plead A Mix Of Equitable And Legal
        Remedies When The Plaintiff Plausibly Alleges That Legal
        Remedies May Be Inadequate And The Lawsuit Is Young.............. 25

II. MS. CLARK'S COMPLAINT SUFFICIENTLY PLEADS A CLAIM
    UNDER THE OREGON UNLAWFUL TRADE PRACTICES ACT .........29

    A.  Element One: Eddie Bauer Committed An Unlawful Trade
        Practice ........................................................................................ 31

    B.  Element Two: Ms. Clark Suffered An Ascertainable Loss Of
        Money Or Property.......................................................................... 35

i

1. Ascertainable Loss is Interpreted Broadly so as to Cover the Gamut of Monetary Loss that may be Incurred by any One of the Proscribed Trade Practices in ORS 646.608..........37

2. Ms. Clark Suffered an Ascertainable Loss by Not Receiving the Advantageous Bargain Eddie Bauer Promised Her Because the Value of the Items She Purchased was Less than Represented ........................................................................38

3. Ms. Clark Suffered an Ascertainable Loss by Purchasing Products that She Would Not Otherwise have Purchased but for Eddie Bauer's Misrepresentations ...............................42

4. Ms. Clark Suffered an Ascertainable Loss Because Eddie Bauer's False Advertising Inflated Consumer Demand and in Turn Increased the Prices Eddie Bauer was able to Command and Charge................................................................47

C. Element Three: Ms. Clark's Ascertainable Loss Was The Result Of The Unlawful Trade Practice .............................................. 48

III. THE DISTRICT COURT ERRED BY DISMISSING THE COMPLAINT WITH PREJUDICE AND FAILING TO GRANT MS. CLARK LEAVE TO FILE A FIRST AMENDED COMPLAINT ...........................................50

A. The District Court Erred Generally In Not Granting Leave To Amend............................................................................................. 50

B. The District Court Erred Specifically When It Failed To Grant Leave To Amend As To The UTPA's Statutory Discovery Rule. .................................................................................. 53

CONCLUSION ......................................................................................................56

# TABLE OF AUTHORITIES

<u>**Cases**</u>                                                           <u>**Pages**</u>

*Andino v. Apple, Inc.,*
No. 2:20-cv-01628-JAM-AC,
2021 WL 1549667 (E.D. Cal. Apr. 20, 2021) ...................................................21

*Banks v. R.C. Bigelow, Inc.,*
--- F. Supp. 3d ---, No. 20-cv-6208 DDP (RAOx),
2021 WL 1734779 (C.D. Cal. May 3, 2021) ......................................................25

*Center for Biological Diversity v. Veneman,*
394 F.3d 1108 (9th Cir. 2005) ...........................................................................51

*Dahlin v. Under Armour, Inc.,*
No. CV 20-3706 PA (JEMx),
2020 WL 6647733 (C.D. Cal. July 31, 2020) .....................................................26

*Davidson v. Kimberly-Clark Corp.,*
889 F.3d 956 (9th Cir. 2018) ......................................................................19, 22

*Denson v. Ron Tonkin Gran Turismo, Inc.,*
566 P.2d 1177 (Or. 1977) ..........................................................................33, 47

*Eminence Capital, L.L.C. v. Aspeon, Inc.,*
316 F.3d 1048 (9th Cir. 2003) .............................................................16, 52, 54

*Feitler v. Animation Celection, Inc.,*
13 P.3d 1044 (Or. Ct. App. 2000)......................................................................38

*Foman v. Davis,*
371 U.S. 178 (1962).........................................................................................52

*Harris v. McDonald's Corp.,*
No. 20-cv-06533-RS, 2021 WL 2172833 (N.D. Cal. Mar. 24, 2021)................27

*Hennessey v. Kohl's Corp.,*
2020 WL 870982 (E.D. Mo. Feb. 21, 2020) ......................................................40

*Hinchliffe v. American Motors Corp.,*
    440 A.2d 810 (Conn. 1981) ............................................................... 39

*Hinojos v. Kohl's Corp.,*
    718 F.3d 1098 (9th Cir. 2013) ....................................... 41, 43, 44, 45

*Hubmer v. Walmart, Inc.,*
    No. EDCV 20-1369 JGB (KKx),
    2021 WL 1537206 (C.D. Cal. Feb. 16, 2021) ................................... 21

*In re MacBook Keyboard Litig.,*
    No. 5:18-cv-02813-EJD,
    2020 WL 6047253 (N.D. Cal. Oct. 13, 2020) ................................... 25

*IntegrityMessageBoards.com v. Facebook, Inc.,*
    No. 18-cv-05286-PJH,
    2020 WL 6544411 (N.D. Cal. Nov. 6, 2020) ................................... 23

*Jerome's Furniture Warehouse v. Ashley Furniture Indus., Inc.,*
    No. 20-cv-1765-GPC(BGS),
    2021 WL 1541649 (S.D. Cal. Apr. 20, 2021) ................................... 24

*Julian v. TTE Tech., Inc.,*
    No. 20-cv-02857-EMC,
    2020 WL 6743912 (N.D. Cal. Nov. 17, 2020) ................................. 28

*Kaseberg v. Davis Wright Tremaine, LLP,*
    265 P.3d 777 (Or. 2011) ................................................................... 55

*Ketayi v. Health Enrollment Group,*
    --- F. Supp. 3d ---, No. 20-cv-1198-GPC-KSC,
    2021 WL 347687 (S.D. Cal. Feb. 2, 2021) ....................................... 23

*Kwikset v. Superior Court (Benson),*
    246 P.3d 877 (Cal. 2011) .................................................................. 44

*Lopez v. Smith,*
    203 F.3d 1122 (9th Cir. 2000) ......................................................... 51

*Manzarek v. St. Paul Fire & Marine Ins. Co.,*
    519 F.3d 1025 (9th Cir. 2008) ......................................................... 52

*Mayhall v. A.H. Pond Co.,*
    341 N.W.2d 268 (Mich. Ct. App. 1983) ............................................................ 39

*Nat'l Council of La Raza v. Cegavske,*
    800 F.3d 1032 (9th Cir. 2015) ...................................................................... 3, 51

*Pearson v. Philip Morris, Inc.,*
    361 P.3d 3 (Or. 2015) ............................................................................... passim

*Phan v. Sargento Foods, Inc.,*
    No. 20-cv-09251-EMC,
    2021 WL 2224260 (N.D. Cal. June 2, 2021) .................................................. 29

*Rothman v. Equinox Holdings, Inc.,*
    No. 2:20-cv-09760-CAS-MRWx,
    2021 WL 1627490 (C.D. Cal. Apr. 27, 2021) .............................................. 1, 26

*Sanders v. Francis,*
    561 P.2d 1003 (Or. 1977) ............................................................................... 47

*Sanders v. Kennedy,*
    794 F.2d 478 (9th Cir. 1986) .......................................................................... 16

*Scharfstein v. BP West Coast Products, LLC,*
    423 P.3d 757 (Or. Ct. App. 2018) ................................................................... 36

*Scott v. Western Int'l Surplus Sales, Inc.,*
    517 P.2d 661 (Or. 1973) ................................................................................. 37

*Simonsen v. Sandy River Auto, LLC,*
    413 P.3d 982 (Or. Ct. App. 2018) ............................................................. passim

*Smith v. Pacific Properties and Development Corp.,*
    358 F.3d 1097 (9th Cir. 2004) ........................................................................ 16

*Sonner v. Premier Nutrition Corp.,*
    971 F.3d 834 (9th Cir. 2020) ..................................................................... passim

*Stewart v. Kodiak Cakes, LLC,*
    --- F. Supp. 3d ---, No. 19-cv-2454-MMA (MSB),
    2021 WL 1698695 (S.D. Cal. Apr. 29, 2021) ...................................................27

*U.S. v. Corinthian Colleges,*
    655 F.3d 984 (9th Cir. 2011) ..........................................................................5, 29

*Walters v. Vitamin Shoppe Indus., Inc.,*
    701 F. App'x 667 (9th Cir. 2017) .......................................................2, 36, 43, 49

*Weigel v. Ron Tonkin Chevrolet Co.,*
    690 P.2d 488 (Or. 1984) ..........................................................................16, 38, 39

*Zeiger v. WellPet LLC,*
    --- F. Supp. 3d ---, No. 3:17-cv-04056-WHO,
    2021 WL 756109 (N.D. Cal. Feb. 26, 2021) ...................................................1, 21

## Statutes

ORS 646.608 ................................................................................................. passim

ORS 646.638 ................................................................................................. passim

## Regulations

OAR 137-020-0010 ...............................................................................................34

## Other Authorities

M.M. Schneier, "Washington Supreme Court Applies the Discovery Rule to
    Breach of Contract Claims Involving Latent Construction Defects,"
    *Construction Litigation Reporter* (Feb. 2007) .............................................55

## **INTRODUCTION AND SUMMARY OF ARGUMENT**

District courts in the Ninth Circuit are split and would benefit from clarification as to the proper application of this Court's ruling in *Sonner v. Premier Nutrition Corp.*, 971 F.3d 834 (9th Cir. 2020). A few courts, like the District Court below, have erroneously held that *Sonner* prohibits a plaintiff who prays for monetary damages for past harm from simultaneously also praying for equitable relief to prevent future harm. However, a larger number of district courts in this Circuit have correctly held that monetary damages are inadequate to protect against future harm and that a plaintiff may therefore pray for damages for past harm while simultaneously also praying for an injunction to prevent future harm. *See*, *e.g.*, *Zeiger v. WellPet LLC*, --- F. Supp. 3d ---, No. 3:17-cv-04056-WHO, 2021 WL 756109, *21–22 (N.D. Cal. Feb. 26, 2021) ("monetary damages for past harm are an inadequate remedy for the future harm"). Other courts have also correctly held that *Sonner*, which involved a case on the eve of trial, does not directly apply to a pleading challenge brought early in a civil action. *See*, *e.g.*, *Rothman v. Equinox Holdings, Inc.*, No. 2:20-cv-09760-CAS-MRWx, 2021 WL 1627490, *12 (C.D. Cal. Apr. 27, 2021) ("unlike *Sonner*, this matter is not currently on the eve of trial and . . . there is, at present, no pending motion for injunctive relief that would require the Court to determine the adequacy of plaintiff's legal remedies"). This Court should clarify the application of *Sonner* and, in the process, reverse the

1

District Court's Order dismissing with prejudice Plaintiff Susan Clark's claims for equitable relief against Defendants Eddie Bauer LLC and Eddie Bauer Parent LLC (collectively, "Eddie Bauer").

The District Court below erred in other, important ways.

Plaintiff Susan Clark alleges three different and recognized forms of "ascertainable loss of money and property" in her Complaint, as is required by the statutory language of Oregon's Unlawful Trade Practices Act ("UTPA"). But the District Court erred in ruling that she failed to allege any ascertainable loss at all.

Ms. Clark alleges first that she did not receive the bargain which was advertised; Oregon law recognizes that a consumer who does not receive the advantageous bargain which a retailer advertises has suffered an ascertainable loss under the UTPA. *Simonsen v. Sandy River Auto, LLC*, 413 P.3d 982, 983 (Or. Ct. App. 2018) ("plaintiff must be understood to have established 'ascertainable loss' in the loss of the value of the advantageous bargain"). Ms. Clark alleges second that, if she had known the truth, she would not have purchased the Eddie Bauer products at the prices she paid; a consumer who would not have purchased the product but for the retailer's misrepresentation has also suffered an ascertainable loss under the UTPA. *Walters v. Vitamin Shoppe Indus., Inc.*, 701 F. App'x 667, 670 (9th Cir. 2017) (plaintiff "would not have purchased the product but for the alleged misrepresentations. The ascertainable loss, therefore, is the monetary value

2

of a product that [plaintiff] would not otherwise have bought."). Ms. Clark alleges third that Eddie Bauer's false advertising artificially inflated demand and in turn increased the prices Eddie Bauer was able to command for its products; this "price premium/inflated demand" form of ascertainable loss has also been discussed by the Oregon courts. *See Pearson v. Philip Morris, Inc.*, 361 P.3d 3, 124 (Or. 2015). The District Court clearly erred in holding that Ms. Clark fails to allege any viable form of ascertainable loss of money and property; she alleges three (and need only allege one to survive a motion to dismiss).

Finally, the District Court dismissed Ms. Clark's Complaint with prejudice and without leave to amend, and the District Court erred by not granting her even one opportunity to amend. *See Nat'l Council of La Raza v. Cegavske*, 800 F.3d 1032, 1041 (9th Cir. 2015). The District Court's error was particularly egregious with regard to the UTPA's statutory discovery rule (Oregon Revised Statutes § 646.638(6)), because the District Court acknowledged that Ms. Clark could possibly amend the Complaint to be sufficient yet did not grant her leave to do so.

Plaintiff Susan Clark respectfully requests that this Court reverse the Order and Judgment entered by the U.S. District Court for the Western District of Washington and remand this civil action with instructions to either order the defendants to file an Answer (if this Court rules that Ms. Clark's Complaint sufficiently pleads her claims) or with instructions to grant Ms. Clark leave to

amend (if this Court rules that Ms. Clark's Complaint insufficiently pleads her claims).

## JURISDICTIONAL STATEMENT

The U.S. District Court for the Western District of Washington exercised jurisdiction over this dispute pursuant to traditional federal diversity jurisdiction (28 U.S.C. § 1332(a)(1)) and pursuant to the Class Action Fairness Act (28 U.S.C. § 1332(d)(2)). *See* Compl. ¶¶ 13–14 (ER-18). The U.S. Court of Appeals for the Ninth Circuit possesses jurisdiction over this appeal from a final decision of a district court pursuant to 28 U.S.C. § 1291. On April 1, 2021, the District Court entered the Order and the separate Judgment being appealed from—an Order and Judgment which each disposed of all parties' claims. *See* Order (ER-4–14); Judgment (ER-3). Plaintiff-Appellant Susan Clark filed her Notice of Appeal on April 29, 2021—an appeal which was timely under the 30-day filing deadline of Fed. R. App. P. 4(a)(1)(A). *See* Notice of Appeal (ER-43–46).

## STATUTORY AND REGULATORY AUTHORITIES

The most relevant statutory and regulatory authorities appear in the Addendum to this brief.

## STATEMENT OF ISSUES PRESENTED FOR REVIEW

Issue One: Does the decision in *Sonner v. Premier Nutrition Corp.*, 971 F.3d 834 (9th Cir. 2020), allow a plaintiff early in a civil action to pray for monetary remedies for past harm while simultaneously also praying for equitable relief from future harm?

Issue Two: Does Plaintiff Susan Clark's Complaint sufficiently allege an "ascertainable loss of money or property" under the Oregon Unlawful Trade Practices Act?

Issue Three: Did the District Court err by dismissing Ms. Clark's Complaint with prejudice and without allowing Ms. Clark leave to amend even once?

## STATEMENT OF THE CASE

The following allegations appear in Plaintiff Susan Clark's operative Complaint (ER-15–42), which she brings in her individual capacity and as a proposed representative of a class of consumers similarly situated. For purposes of this appeal, the following allegations are presumed to be true and are construed in the light most favorable to Ms. Clark (*U.S. v. Corinthian Colleges*, 655 F.3d 984, 991 (9th Cir. 2011)):

**Ms. Clark Alleges That Eddie Bauer Advertises False Discounts On Goods Sold In Its Outlet Stores.** For decades, Eddie Bauer has engaged in a massive false discount advertising scheme at its Eddie Bauer Outlet stores. Compl.

¶ 4 (ER-16). (Ms. Clark's personal and class claims do *not* pertain to purchases made at Eddie Bauer's conventional or mainline stores or on the Eddie Bauer website (www.eddiebauer.com). Compl. ¶ 1 (ER-16).)

Eddie Bauer is a popular retailer of clothing. Compl. ¶ 2 (ER-16). Almost all of the products (more than 90%) offered at the Eddie Bauer Outlet stores are manufactured exclusively for the outlet stores and have never been offered at the conventional Eddie Bauer retail stores, on the Eddie Bauer website, or by any other retailer. *Ibid.*

Eddie Bauer advertises perpetual discounts (typically a purported savings of 40% to 70% off) from Eddie Bauer's self-created list prices for its products. Compl. ¶ 4 (ER-16). For products purportedly on sale, Eddie Bauer represents its list prices to be the regular and normal prices of the products, and the list prices function as reference prices from which the advertised discounts and percentage-off sales are calculated. *Ibid.*[1]

---

[1] In the academic literature studying consumer behavior, the term of art "reference price" means the price to which the retailer compares the current price. *See* Complaint, ¶ 25 & n.1 (ER-22). For example, if a price tag states "~~$100~~ $70," the reference price is expressly $100. If an in-store sign states "Everything 50% Off," then an item being offered for sale at $20 has an implicit reference price of $40. Colloquially, a reference price is sometimes referred to as a "previous price," "normal price," "regular price" or "list price."

Of relevance to this appeal, Oregon Administrative Rules section 137-020-0010(5)(e) defines a "reference price" as "any price, whether stated in dollars, in terms of a percentage or f[r]action, or by any other method, to which a person compares the currently represented offering price of its own goods."

6

However, Eddie Bauer's discounts and reference prices at its outlet stores are false because Eddie Bauer rarely, if ever, offered the products at the advertised list price. Compl. ¶ 5 (ER-16–17). For the greater-than-90% of products that are manufactured exclusively for the outlet stores, Eddie Bauer never offered the products at the list price. *Ibid.* For the less-than-10% of products (which are displayed on the "Clearance" racks) that may have been previously offered in Eddie Bauer's conventional (non-outlet) retail stores and on its website, Eddie Bauer rarely, if ever, offered the products at the list price (either in its retail stores or its outlet stores)—and never in good faith.[2] *Id.*

Eddie Bauer perpetrates this illegal scheme to create the illusion of savings and to induce customers to purchase its products. Compl. ¶ 6 (ER-17). Eddie Bauer's marketing plan is to trick its customers into believing that its products are worth, and have a value equal to, the inflated list price, and that the lower advertised sale price represents a special bargain. *Ibid.* In fact, not only are the advertising savings always false, but, in many cases, the "sale" price is actually higher than Eddie Bauer's true regular selling price for the product. *Id.*

---

[2]     Although Eddie Bauer's scheme of advertising false discounts in its outlet stores presumably occurs nationwide, Ms. Clark's Complaint is limited to consumers who purchased from Eddie Bauer Outlet Stores in the State of Oregon. Compl. ¶ 79 (class definition) (ER-31).

**Plaintiff Clark Alleges She Purchased Goods At Eddie Bauer Outlet Stores In Oregon That Were Falsely Advertised As Being Offered On Sale At A Discount.** On March 22, 2017, Plaintiff Susan Clark visited the Eddie Bauer Outlet store in Troutdale, Oregon. Compl. ¶ 46 (ER-26). Ms. Clark saw prominent signs on the Eddie Bauer outlet store's windows and posted throughout the store that advertised large percentage-off discounts and savings. Compl. ¶ 47 (ER-26).

Ms. Clark saw an Eddie Bauer Men's Long Sleeve Fast Fleece ¼ Zip ("Fleece Zip") for sale. Compl. ¶ 48 (ER-26). Ms. Clark viewed signage which stated that the Fleece Zip was on sale for 50% off from the $39.99 price printed on the product tag, at a sale price of $19.99. *Ibid.*

Ms. Clark also saw an Eddie Bauer Women's Jacket Microlight Down ("Microlight Jacket") for sale. Compl. ¶ 49 (ER-26–27). Ms. Clark viewed signage which stated that the Microlight Jacket was on sale for 50% off from the $99.99 price printed on the product tag, at a sale price of $49.99. *Ibid.*

Ms. Clark reasonably believed that the list prices printed on the product tags of the Fleece Zip and the Microlight Jacket represented Eddie Bauer's regular and normal selling prices for the products. Compl. ¶ 50 (ER-27). Consequently, Ms. Clark believed that the advertised sale prices represented huge special discounts of "50% off" Eddie Bauer's normal selling prices for the products. Compl. ¶ 53 (ER-27). Relying on Eddie Bauer's discount representations and

8

advertised reference prices, Ms. Clark purchased the two products. Compl. ¶ 54 (ER-27).

On the paper receipt that Ms. Clark received at the cash register and which Ms. Clark viewed, Eddie Bauer made additional product pricing and value representations regarding the products. Compl. ¶ 55 (ER-27–28). Eddie Bauer printed on the receipt that the price for the Fleece Zip was "1 @ 39.99", and directly below that Eddie Bauer printed that Ms. Clark was enjoying an "Item Discount 50.00%" of "(20.00)". *Ibid.* Eddie Bauer printed on the receipt that the price for the Microlight Jacket was "1 @ 99.99", and directly below that Eddie Bauer printed that Ms. Clark was enjoying an "Item Discount 50.00%" of "(50.00)". *Id.* Further down on the receipt, Eddie Bauer stated "Total Discount (70.00)". *Id.*

However, Eddie Bauer's advertised discounts for these two products were false and deceptive. Compl. ¶ 56 (ER-28). Unbeknownst to Ms. Clark, Eddie Bauer had *never* offered the Fleece Zip for the purported regular price of $39.99 or the Microlight Jacket for the purported regular price of $99.99. *Id.* In fact, the products were *always* offered at discounts of between 40% to 70% off the list prices printed on their tags. *Id.* Meanwhile, both the Fleece Zip and the Microlight Jacket were Eddie Bauer Outlet-exclusive items which were never offered or sold anywhere else. Compl. ¶ 56 (ER-28).

If Ms. Clark had known the truth, she would not have purchased the products at the prices she paid. Compl. ¶ 71 (ER-30).

Ms. Clark first learned of Eddie Bauer's false advertising scheme, and that she was likely a victim of the scheme, on March 13, 2020. Compl. ¶ 73 (ER-30). Prior to then, Ms. Clark was not aware of Eddie Bauer's false discount advertising scheme and was not aware that the reference prices and discounts Eddie Bauer had previously advertised to her, and upon which she had relied in purchasing her products, were false. *Ibid.* (While Ms. Clark first learned of Eddie Bauer's false advertising scheme on March 13, 2020, almost all of the members of the class were not aware, at the time of the filing of the Complaint, of Eddie Bauer's false discount advertising scheme. *Id.*)

Ms. Clark has a legal right to rely now, and in the future, on the truthfulness and accuracy of Eddie Bauer's representations regarding the advertised reference prices and discounts at its Oregon outlet stores. Compl. ¶ 74 (ER-30). Ms. Clark would shop at one of Eddie Bauer's Oregon outlet stores again if she could have confidence regarding the truth of Eddie Bauer's prices and the value of its products. Compl. ¶ 75 (ER-30–31). Ms. Clark will be harmed if, in the future, she is left to guess as to whether Eddie Bauer is providing a legitimate sale or not, and whether products are actually worth the amount that Eddie Bauer is representing. Compl. ¶ 76 (ER-31). If Ms. Clark were to purchase again from an Oregon outlet

store without Eddie Bauer having changed its unlawful and deceptive conduct, Ms. Clark would be harmed on an ongoing basis and/or would be harmed once or more in the future. Compl. ¶ 77 (ER-31).

Ms. Clark's Complaint alleges one other purchase from an Eddie Bauer Outlet store in Oregon during which Ms. Clark relied on Eddie Bauer's advertising of false discounts. On April 5, 2018, Ms. Clark visited the Eddie Bauer Outlet Store in Woodburn, Oregon, and purchased a Women's MicroTherm StormDown Hooded Jacket ("StormDown Jacket") that Eddie Bauer falsely advertised as being on "Clearance"—which Eddie Bauer advertised as being a 50% discount off Eddie Bauer's most recent selling price (which was itself, according to Eddie Bauer, discounted from a prior list price). Compl. ¶¶ 58–62 (ER-28–29). Aside from being advertised as a "Clearance" item, Ms. Clark's purchase of the StormDown Jacket was similar to her purchases of the Fleece Zip and the Microlight Jacket in most material respects (such as the falsity of the discount, Ms. Clark's reliance on the advertised false discount, and the fact that, if Ms. Clark had known the truth, she would not have purchased the products at the prices she paid). *See* Compl. ¶¶ 49–78 (ER-26–31).

**Ms. Clark Alleges A Putative Class Of Customers In Oregon.** Ms. Clark alleges that Eddie Bauer's advertising of false discounts is "systemic and pervasive" across all of Eddie Bauer's products at its outlet stores in Oregon.

Compl. ¶ 78 (ER-31). As such, in addition to alleging her individual claims,

Ms. Clark alleges her claims as a proposed representative of a class defined as:

> All persons who, within the applicable limitations period, purchased
> from an Eddie Bauer Outlet Store located in the State of Oregon one
> or more products which were advertised or promoted by displaying or
> disseminating a reference price or discount.

Compl. ¶ 79 (ER-31).

**Procedural History.** On July 16, 2020, Plaintiff Clark filed her class action

complaint in the U.S. District Court for the Western District of Washington.

Compl., p. 1 (ER-15). The original complaint remained the operative complaint for

the remainder of the trial court proceedings. *See* Docket (ER-49–51).

On behalf of herself individually and on behalf of a class of consumers who made

purchases in Eddie Bauer Outlet stores located in Oregon, Ms. Clark's Complaint

alleges a single cause of action for violation of the Oregon Unlawful Trade

Practices Act ("UTPA"). Compl. ¶¶ 89–122 (ER-34–40). The Complaint alleges

that Eddie Bauer violated and continues to violate multiple discrete provisions of

the UTPA, including Oregon Revised Statutes ("ORS") section 646.608(1)(e), (i),

(j), (ee), ORS section 646.608(1)(u) and ORS section 646.608(4). Compl. ¶ 101

(ER-35–36). These violations are discussed in detail in Section II-A, *infra*.

On August 25, 2020, Defendant Eddie Bauer LLC and Defendant Eddie

Bauer Parent LLC filed their Motion To Dismiss Plaintiff's Complaint (the

"Motion To Dismiss"). *See* Docket (Dkt. 16) (ER-50). In addition to unsuccessful

arguments regarding Article III subject matter jurisdiction and the heightened

pleading requirements of Rule 9(b), Eddie Bauer argued that: (1) the Complaint

fails to establish Ms. Clark's basis for equitable relief, (2) Ms. Clark's UTPA claim

is time-barred, and (3) the Complaint fails to allege an ascertainable loss under the

UTPA. Order at 6:5-11 (ER-9). Plaintiff Clark filed an Opposition (Dkt. 21), and

Eddie Bauer filed a Reply (Dkt. 22). No oral argument occurred.

On April 1, 2021, the District Court granted the Motion To Dismiss. Order

(ER-4–14). Although the District Court denied the motion with regard to many of

the arguments made by the defendants, the District Court granted the motion on

two issues.

First, the District Court held that the Complaint failed to establish a basis for

equitable relief. Order at 7 (ER-10). Relying principally on this Court's decision in

*Sonner v. Premier Nutrition Corp.*, 971 F.3d 834 (9th Cir. 2020), the District Court

dismissed Ms. Clark's injunctive relief claim because the District Court believed

that her future harm had an adequate remedy at law in the form of monetary

damages. *See* Order at 7:10-13 (ER-10) ("Ms. Clark's complaint does not contain

plausible allegations explaining *why* her legal remedies are inadequate as to past

and future harms—both are financial and both can be cured by the monetary

damages, *i.e.*, *legal relief*, afforded by the UTPA."). The District Court continued,

"Even if an equitable remedy is pleaded as an alternative measure of damages, the

complaint must *first* provide sufficient allegations to plausibly explain how a legal remedy, *i.e.*, the UTPA's monetary damages, are inadequate." Order at 7:15-17 (ER-10). "The complaint provides no such plausible allegations." *Ibid.*[3]

Second, the District Court held that Ms. Clark failed to sufficiently allege that she suffered the "ascertainable loss of money or property" required by the text of the UTPA statute. Order at 8:17–10:23 (ER-11–13). *See also* ORS 646.638(1) ("a person that suffers an ascertainable loss of money or property . . . may bring an individual action"); ORS 646.638(8) ("Statutory damages . . . may be recovered on behalf of class members only if plaintiffs in the action establish that the members have sustained an ascertainable loss of money or property . . . .").

Ms. Clark, the District Court ruled, "fails to explain how this [i.e., the advertising of false discounts] amounts to a false representation as to the 'character or quality' of the garments which . . . is necessary to establish reliance on the allegedly misleading claims." Order at 9:21–10:4 (ER-12).

"The bottom line," the District Court ruled, "is Ms. Clark points the Court to no instances where another court has found that an ascertainable loss for UTPA

---

[3]    Ms. Clark's Complaint prays for several equitable remedies. *See* Compl., Prayer, ¶ (e) (disgorgement and restitution), ¶ (f) (injunction) (ER-40–41). The section of the Order titled "Equitable Relief" does not distinguish between different forms of equitable relief. (ER-10). Ms. Clark's arguments in this Brief will focus primarily upon injunctive relief—which seeks to prevent future harm— and will refer to restitution or disgorgement when appropriate.

purposes could be pled based solely on a plaintiff's failure to get as good of a deal as the plaintiff anticipated. Some misstatement as to a characteristic, quality, or feature of the product is required. Ms. Clark's complaint provides no such allegation. As a result, the Court must find that she did not adequately plead an ascertainable loss." Order at 10:16-21 (ER-13) (citation omitted).

The District Court granted the Motion To Dismiss *with* prejudice and *without* leave to amend, "as any amendment would be futile given her inability to plead an ascertainable loss." Order at 10:25–11:1 (ER-13–14). On the same day, the District Court entered a Judgment which reads, "Plaintiff's complaint is DISMISSED with prejudice." Judgment (ER-3). (The District Court also held that Ms. Clark fails to sufficiently plead the discovery rule. Order at 8:1-16 (ER-11). Ms. Clark will address the District Court's limitations ruling below when she addresses the District Court's decision to grant the Motion To Dismiss without leave to amend and with prejudice.)

On April 29, 2021, Ms. Clark timely filed her Notice of Appeal (ER-43–46).

## STANDARD OF REVIEW

With regard to Ms. Clark's appeal of the District Court's rulings that she failed to establish a basis for injunctive relief and that she failed to sufficiently allege ascertainable loss under the UTPA, the standard of review is *de novo*. "A dismissal for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6) is a ruling

on a question of law and, as such, is freely reviewable by this court." *Sanders v. Kennedy*, 794 F.2d 478, 481 (9th Cir. 1986). *See also Weigel v. Ron Tonkin Chevrolet Co.*, 690 P.2d 488, 490 & n.1 (Or. 1984) (holding that a statutory term in the UTPA—such as the term "ascertainable loss of money or property"—is "a question of law, not of jury opinion" because "here we are interpreting the legislature's use of the term[]."). "Such a dismissal cannot be upheld unless it appears to a certainty that the plaintiff would not be entitled to relief under any set of facts that could be proved. All material allegations in the complaint are to be taken as true and construed in the light most favorable to the non-moving party." *Sanders*, 794 F.2d at 481 (citations omitted).

With regard to Ms. Clark's appeal of the District Court's dismissal of the Complaint with prejudice and without leave to amend, the standard of review is abuse of discretion but with a *de novo* review of the underlying law. *Smith v. Pacific Properties and Development Corp.*, 358 F.3d 1097, 1100 (9th Cir. 2004). "Whether such a denial [of leave to amend] rests on an inaccurate view of the law and is therefore an abuse of discretion requires us to review the underlying legal determination *de novo*." *Ibid.* (citation omitted). "Dismissal with prejudice and without leave to amend is not appropriate unless it is clear on *de novo* review that the complaint could not be saved by amendment." *Eminence Capital, L.L.C. v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003).

## **ARGUMENT**

## I.   **MS. CLARK LACKS AN ADEQUATE REMEDY AT LAW FOR HER FUTURE HARM AND MAY SEEK INJUNCTIVE RELIEF.**

Ms. Clark prays for monetary damages to compensate for past harms and also for injunctive relief to prevent future harms. *See* Compl., Prayer, ¶ (c) ("Order each Defendant to pay statutory damages of $200 or actual damages, whichever is greater, to Plaintiff and to each member of the Class, pursuant to, without limitation, ORS 646.638(1) and 646.638(8)(a)") (ER-40); ¶ (f) ("Permanently enjoin Defendants from the unlawful conduct alleged herein pursuant to, without limitation, ORS 646.638(1), ORS 646.638(8)(c) and ORS 646.636") (ER-40).[4]

Ms. Clark's prayers for monetary remedies and for injunctive relief are requests for separate remedies. Ms. Clark requests money looking backward in time for past harm and an injunction looking forward in time to prevent future harm.

The District Court erred in ruling that Ms. Clark could not pray for both remedies due to the "basic principle of federal common law" which requires a plaintiff to demonstrate that she does not have an adequate remedy at law in order

---

[4]   Since Ms. Clark's lawsuit is a class action, references to her harms (past and future) are also references to each putative class member's harms (past and future). Ms. Clark's lawsuit also seeks an order for public injunctive relief to protect the general public, which enjoins Eddie Bauer from engaging in the false discount advertising practices alleged in the Complaint. Compl. ¶¶ 8, 114 (ER-17, 38).

to obtain injunctive relief. Order at 7:3-7 (ER-10). "Ms. Clark's complaint does not contain plausible allegations explaining *why* her legal remedies are inadequate as to past and future harms—both are financial and both can be cured by the monetary damages, *i.e., legal relief*, afforded by the UTPA." Order at 7:10-12 (ER-10).

The District Court grounded its Order in this Court's decision in *Sonner v. Premier Nutrition Corp.*, 971 F.3d 834 (9th Cir. 2020), but, in doing so, the District Court joined a small number of trial courts in this Circuit which have mis-applied the *Sonner* precedent. A larger number of trial courts within the Ninth Circuit have correctly applied *Sonner*, although sometimes with differing rationales. One of the reasons why Ms. Clark is bringing this appeal is to ask this Court to please rectify the split that has emerged within this Circuit.

Ms. Clark prays for monetary remedies to compensate her for past harm, i.e., for not receiving the advantageous bargain which Eddie Bauer promised her, and for being duped into purchasing products which she would not have otherwise purchased. To remedy these past harms, Ms. Clark seeks the greater of actual damages or statutory damages under the UTPA. Compl., Prayer, ¶ (c) (ER-40).

Ms. Clark alleges that her future harm is her inability to rely on Eddie Bauer's price representations in the future. Compl. ¶¶ 74–77 (ER-30–31). To prevent her future harm, Ms. Clark seeks an injunction barring Eddie Bauer's false

advertising. Compl., Prayer ¶ (f) (ER-40). *See Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 969–70 (9th Cir. 2018) ("In some cases, the threat of future harm may be the consumer's plausible allegations that she will be unable to rely on the product's advertising or labeling in the future, and so will not purchase the product although she would like to.").

Citing *Sonner*, the District Court dismissed Ms. Clark's injunctive relief claim because it believed that her future harm had an adequate remedy at law in the form of monetary damages. *See* Order at 7:10-13 (ER-10). The Court erred because the past harm suffered by Ms. Clark (paying for a product which was not as advertised or which she otherwise would not have purchased at that price) is fundamentally different than her future harm (Ms. Clark's inability to rely upon Eddie Bauer's advertising). The District Court conflated these two separate harms as well as the differing objectives of monetary damages (to compensate) and injunctive relief (to prevent).

The District Court did not explain how Ms. Clark's future harm of being unable to rely on Eddie Bauer's representations in the future was "financial" (to use the Order's term) or how money could possibly redress that harm. And nothing in *Sonner* supports the District Court's holding.

In *Sonner*, this Court applied the "adequate remedy at law" principle to prohibit the plaintiff from *seeking the same dollar sum* of equitable restitution as

19

she had originally sought in actual damages. 971 F.3d at 844 ("Sonner fails to explain how the same amount of money for the exact same harm is inadequate or incomplete, and nothing in the record supports that conclusion."). *Sonner* did not address the issue presented here: Whether monetary damages is an adequate remedy at law for *future* harm.

At the district court level, post-*Sonner* courts are split on this issue, with, as detailed below, the majority of courts in this Circuit holding that monetary damages are inadequate at protecting against future harm. These courts have found damages inadequate for one of two reasons, either because: (1) damages will not prevent a defendant from continuing its unlawful conduct; or (2) damages for future harm cannot be calculated with any certainty and thus cannot be awarded.

Meanwhile, other trial courts, as detailed below, have declined to decide the "adequate remedy at law" issue at the beginning stages of litigation—requiring instead that a plaintiff merely plausibly allege that legal remedies may be inadequate. These courts have recognized that *Sonner*'s principle applies to *securing* equitable remedies, not to *pleading* them. A plaintiff may *plead* a mix of equitable and legal remedies as alternative or separate remedies, but the plaintiff may only *secure* an equitable remedy after establishing that her legal remedies are inadequate.

This Court should clarify the application of *Sonner* by holding that monetary

remedies for past harm versus injunctive relief for future harm are two separate types of harms which may be pleaded at the same time. This Court should also clarify the difference between praying for a remedy and securing that remedy. Finally, this Court should rule that the pleading stage is too early in a litigation to dismiss requests for equitable relief merely because the complaint also contains a prayer for damages.

### A. Monetary Damages Are Inadequate Because They Will Not Prevent Eddie Bauer From Continuing Its False Advertising.

The largest number of post-*Sonner* district court decisions hold, eminently reasonably, that monetary damages are inadequate for future harm because damages will not prevent the defendant from continuing its unlawful conduct. *See Andino v. Apple, Inc.*, No. 2:20-cv-01628-JAM-AC, 2021 WL 1549667, *5 (E.D. Cal. Apr. 20, 2021) ("Money damages are an inadequate remedy for future harm, as they will not prevent Defendant from continuing the allegedly deceptive practice."); *Hubmer v. Walmart, Inc.*, No. EDCV 20-1369 JGB (KKx), 2021 WL 1537206, *5 (C.D. Cal. Feb. 16, 2021) ("Plaintiffs do not have an adequate remedy at law for the injunctive relief they seek. . . . Monetary damages cannot prevent Defendant from continuing to change its return policy in the future, nor can they compensate Plaintiffs for those future injuries."); *Zeiger v. WellPet LLC*, --- F. Supp. 3d ---, No. 3:17-cv-04056-WHO, 2021 WL 756109, *21–22 (N.D. Cal. Feb. 26, 2021) ("[Plaintiff's] remedy at law, damages, is retrospective. An injunction is

21

prospective. Damages would compensate [Plaintiff] for his past purchases. An injunction would ensure that he (and other consumers) can rely on [Defendant's] representations in the future. Accordingly, retrospective damages are not an adequate remedy for that prospective harm.") (citation omitted).

The above courts followed *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956 (9th Cir. 2018), in recognizing that a plaintiff's future harm is his or her inability to rely in the future on a defendant's advertising. The *Davidson* court described this as an "informational injury." 889 F.3d at 971 ("Davidson's alleged harm is her inability to rely on the validity of the information advertised on Kimberly-Clark's wipes despite her desire to purchase truly flushable wipes. This court recognizes a history of lawsuits based on similar informational injuries."). Since one of Ms. Clark's injuries is her inability to rely in the future on the representations contained in Eddie Bauer's advertising, an adequate remedy at law would somehow have to ensure that Eddie Bauer's future advertising is truthful. But monetary damages cannot change a defendant's future advertising practices. Only an injunction barring the false advertising can.

## B. Monetary Damages Are Inadequate Because They Cannot Be Calculated For Future Harm And Thus Cannot Be Awarded.

Some post-*Sonner* district courts have treated the future harm in a false advertising case as the purchases that would have been made in the future but for the unlawful conduct. Obviously, the number of products a person would or might

buy in the future (in the absence of false advertising) is speculative and cannot actually be calculated. Monetary damages are therefore inadequate as to future harm.

To give a concrete example, Ms. Clark would like to continue purchasing Eddie Bauer products but now cannot trust the veracity of its advertising. Compl. ¶¶ 75–77 (ER-30–31). Under this theory, Ms. Clark's harm going forward in time is that there are a number of Eddie Bauer purchases she would like to make but will not make because of her uncertainty about the advertising. It is impossible to know how many purchases Ms. Clark would make in the future but for the unlawful conduct or to know how much Eddie Bauer would charge for such purchases.

Because these factors are unknown, damages are impossible to calculate for future harm and cannot be awarded. *See IntegrityMessageBoards.com v. Facebook, Inc.*, No. 18-cv-05286-PJH, 2020 WL 6544411, *6–7 (N.D. Cal. Nov. 6, 2020) ("plaintiff has no factual basis to quantify its actual damages for future harm. At minimum, such calculation depends on how many advertisements it would purchase but-for the challenged conduct and how much defendant would charge for such purchases. Plainly, both factors are unknown."); *Ketayi v. Health Enrollment Group*, --- F. Supp. 3d ---, No. 20-cv-1198-GPC-KSC, 2021 WL 347687, *20 n.16 (S.D. Cal. Feb. 2, 2021) ("Plaintiffs here have explained that

with their claim for injunctive relief, they seek a remedy qualitatively different from their damages claim: an order preventing Defendants from using the allegedly fraudulent or unlawful business practices in the future, or in other words, from causing future harm for which damages are not calculable. Accordingly, the Court finds that Plaintiffs have plausibly alleged they lack an adequate remedy at law for the relief they seek . . . ."); *Jerome's Furniture Warehouse v. Ashley Furniture Indus., Inc.*, No. 20-cv-1765-GPC(BGS), 2021 WL 1541649, *10 (S.D. Cal. Apr. 20, 2021) (same).

Here, the District Court described Ms. Clark's future harm as "financial" (Order at 7:12 (ER-10)). But the number of missed future purchases cannot be calculated and thus cannot be awarded. The District Court did not explain how it planned on awarding damages for future harms that it could not realistically calculate.

While *Davidson* indicates that the first approach is correct—treating the harm as the plaintiff's inability to rely on the defendant's advertising in the future—damages are also an inadequate remedy for future harm for the simple reason that they cannot be calculated. Thus, no matter how the District Court defined Ms. Clark's future harm, damages are inadequate, and the District Court

24

erred in dismissing her request for injunctive relief.[5]

### C. A Plaintiff May Plead A Mix Of Equitable And Legal Remedies When The Plaintiff Plausibly Alleges That Legal Remedies May Be Inadequate And The Lawsuit Is Young.

Some district courts have correctly recognized that *Sonner*'s principle

applies to *securing* equitable remedies, not to *pleading* them. A plaintiff may plead

a mix of equitable and legal remedies as alternatives or separately but may only

secure an equitable remedy after establishing that her legal remedies are

inadequate. *See Sonner*, 971 F.3d at 844 (a plaintiff "must establish that she lacks

---

[5]      The District Court joined one other trial court in this Circuit that has applied *Sonner* to dismiss with prejudice a plaintiff's injunctive relief claim in a false advertising case. *See Banks v. R.C. Bigelow, Inc.*, --- F. Supp. 3d ---, No. 20-cv-6208 DDP (RAOx), 2021 WL 1734779, *6 (C.D. Cal. May 3, 2021) ("Plaintiffs allege that they 'may purchase Bigelow tea products in the future' and 'are susceptible to reoccurring harm.' However, Plaintiffs have failed to plausibly allege that a legal remedy for such future harm would be inadequate.").

The *Banks* court did not address the issues raised by those courts that found damages to be inadequate for remedying future harm. The *Banks* court also relied on a single, inapt case for its conclusion—a product defect case where the injunction required the defendant to repair the defective product, even though money damages would provide the same relief. *See In re MacBook Keyboard Litig.*, No. 5:18-cv-02813-EJD, 2020 WL 6047253, *3 (N.D. Cal. Oct. 13, 2020) ("Courts generally hold that monetary damages are an adequate remedy for claims based on an alleged product defect, and reject the argument that injunctive relief requiring repair or replacement is appropriate."). Unlike a product defect case— where only a past harm is alleged and where damages would provide the same remedy as a repair or replacement injunction—a false advertising case involves both a past harm and a future harm. Damages can only remedy the past harm; an injunction is necessary to remedy the future harm.

an adequate remedy at law before *securing* equitable [relief]") (emphasis added).

At the beginning of a lawsuit, a plaintiff does not always know which remedies will ultimately make her whole or exactly what she will be able to prove with admissible evidence. Thus, courts have explained, dismissing equitable remedies at the beginning of litigation is inappropriate when there is a possibility that the plaintiff will not be able to establish an adequate remedy at law. *See Rothman v. Equinox Holdings, Inc.*, No. 2:20-cv-09760-CAS-MRWx, 2021 WL 1627490, *12 (C.D. Cal. Apr. 27, 2021) ("The Court finds it premature at this stage of the litigation to determine whether plaintiff's alleged injuries have an adequate remedy at law. While acknowledging that *Sonner* was decided on the pleadings, the Court notes that, unlike *Sonner*, this matter is not currently on the eve of trial and that there is, at present, no pending motion for injunctive relief that would require the Court to determine the adequacy of plaintiff's legal remedies."); *Dahlin v. Under Armour, Inc.*, No. CV 20-3706 PA (JEMx), 2020 WL 6647733, *4–5 (C.D. Cal. July 31, 2020) ("Although Plaintiff may face significant hurdles obtaining restitution as a remedy, the Court is unable, at this stage, to conclude that Plaintiff has an adequate remedy at law. Indeed, even if Plaintiff could not obtain restitution, she might be able to obtain injunctive relief. As a result, the Court cannot conclude, at this stage, that Plaintiff has an adequate damages remedy that

forecloses all equitable relief.") (citations omitted)[6]; *Harris v. McDonald's Corp.*, No. 20-cv-06533-RS, 2021 WL 2172833, *3 (N.D. Cal. Mar. 24, 2021) ("McDonald's argument that *Sonner* . . . requires rejection of the equitable claims at the pleading stage is not persuasive."); *Stewart v. Kodiak Cakes, LLC*, --- F. Supp. 3d ---, No. 19-cv-2454-MMA (MSB), 2021 WL 1698695, *35 (S.D. Cal. Apr. 29, 2021) (same).

The approach taken by these courts comports with *Sonner*. Nowhere in *Sonner*—or in the cases relied upon by *Sonner*—is there a prohibition on a plaintiff pleading equitable and legal remedies alternatively or separately when the plaintiff does not yet know which remedies will ultimately make her whole or be available to her after the introduction of evidence. The plaintiff's only requirement at the pleading stage is to plausibly demonstrate that legal remedies *might* not be adequate. In *Sonner*, the parties were on the eve of trial after four years of litigation, and the plaintiff specifically sought the identical sum of money in restitution as she had previously requested in actual damages. *See Sonner*, 971 F.3d at 844 ("Sonner concedes that she seeks the same sum in equitable restitution as 'a full refund of the purchase price'—$32,000,000—as she requested in damages to compensate her for the same past harm."). In other words, after four years of

---

[6]     The *Dahlin* decision therefore explains why Ms. Clark can simultaneously pray for damages and restitution.

litigation involving motion practice and full discovery, the plaintiff believed that actual damages could provide her with the same relief as restitution; she only dismissed her actual damages as a litigation tactic to avoid a jury trial. The district court rejected her attempt to game the system because she plainly admitted that she had an adequate legal remedy for her alleged harm.

*Sonner* is not a groundbreaking case, although some district courts (and corporate defense counsel) seem to think it is. *Sonner* merely reiterated a principle that has always existed in American jurisprudence: A federal court cannot *award* equitable relief when an adequate legal remedy exists. *See id.* at 842 ("the principle precluding courts from *awarding* equitable relief when an adequate legal remedy exists implicates the well-established federal policy of safeguarding the constitutional right to a trial by jury in federal court") (emphasis added).

Moreover, courts that have dismissed equitable remedies have done so without prejudice and have allowed the plaintiff to amend if discovery reveals that legal remedies are inadequate. *See Julian v. TTE Tech., Inc.*, No. 20-cv-02857-EMC, 2020 WL 6743912, *5 (N.D. Cal. Nov. 17, 2020) (dismissing unjust enrichment claims without prejudice because the plaintiffs have not demonstrated the inadequacy of a legal remedy, but "should Plaintiffs uncover during discovery a basis for claiming that legal remedies do not provide for adequate relief, they may seek to amend."); *Phan v. Sargento Foods, Inc.*, No. 20-cv-09251-EMC, 2021

28

WL 2224260, *6 (N.D. Cal. June 2, 2021) (same).

Here, the District Court dismissed Ms. Clark's equitable remedies even though Ms. Clark explained in the Complaint why her legal remedies were inadequate. Worse still, the District Court did so with prejudice. The District Court refused to allow Ms. Clark the opportunity to provide a fuller explanation for why her legal remedies were inadequate or to leave open the possibility that discovery would show that legal remedies are inadequate.

The irrefutable fact is that district courts in this Circuit are having difficulty applying *Sonner*. This Court should clarify the law by holding that monetary remedies to compensate for past harm and injunctive relief to prevent future harm are two separate remedies addressing two separate harms and which therefore may be prayed for at the same time. This Court should also clarify the difference between praying for a remedy and securing that remedy. Finally, this Court should rule that the pleading stage is too early in a litigation to dismiss with prejudice requests for equitable relief.

## II.   MS. CLARK'S COMPLAINT SUFFICIENTLY PLEADS A CLAIM UNDER THE OREGON UNLAWFUL TRADE PRACTICES ACT.

"The focus of any Rule 12(b)(6) dismissal—both in the trial court and on appeal—is the complaint." *U.S. v. Corinthian Colleges*, 655 F.3d 984, 991 (2011). Given the *de novo* nature of review from an order granting a motion to dismiss, the salient question before this Court is whether Ms. Clark's Complaint sufficiently

alleges her claims, not whether the District Court erred (although it certainly did).

The three elements of a UTPA claim are that "(1) the defendant committed an unlawful trade practice; (2) plaintiff suffered an ascertainable loss of money or property; and (3) plaintiff's injury (ascertainable loss) was the result of the unlawful trade practice." *Pearson v. Philip Morris, Inc.*, 361 P.3d 3, 28 (Or. 2015). The District Court did not cite this three-element test, let alone follow it. The District Court never determined whether Ms. Clark plausibly alleged that Eddie Bauer committed one or more of the approximately 76 unlawful trade practices listed in ORS 646.608. Nor did the District Court determine whether Ms. Clark alleged an ascertainable loss of money or property that was a result of any one of the unlawful trade practices committed by Eddie Bauer.

Instead, the District Court created its own test—a test based on a narrow and incorrect reading of *Pearson*. Relying solely on the facts in *Pearson* rather than on the law enunciated by *Pearson*, the District Court held that a plaintiff must allege that she suffered an ascertainable loss as a result of "[s]ome misstatement as to a characteristic, quality, or feature of the product." Order at 10 (ER-13). This "characteristic, quality, or feature" test comes from the unlawful trade practice at issue in *Pearson*, which was subsection (e) of ORS 646.608(1). However, this test ignores more than 70 other unlawful trade practices that regulate conduct unrelated to a product's characteristic, quality, or feature. The District Court erroneously

30

reduced the breadth of Oregon's UTPA statute from more than 75 unlawful trade practices to less than 5.

As discussed below, Ms. Clark's Complaint sufficiently alleges each of the three elements of a UTPA claim as enunciated in *Pearson* and followed by Oregon courts.

## A.      Element One: Eddie Bauer Committed An Unlawful Trade Practice.

There is no doubt that Ms. Clark sufficiently pleads the first element, which is that Eddie Bauer committed an unlawful trade practice. (The District Court's Order failed to address this first element.)

To use one purchase as a factual example, Ms. Clark reasonably believed that Eddie Bauer's normal selling price for the Fleece Zip was $39.99 and that Eddie Bauer was offering the Fleece Zip for sale at a discounted price of only $19.99. Compl. ¶¶ 50, 51, 53 (ER-27). Relying on Eddie Bauer's advertising (the in-store signs and the product tags), Ms. Clark purchased the Fleece Zip. Compl. ¶ 54 (ER-27). At the cash register, Ms. Clark was handed a receipt which stated that the price for the Fleece Zip was "1 @ 39.99" and, directly below that, "Item Discount 50.00%" and "(20.00"). Compl. ¶ 55 (ER-27–28).

But the price discount which Eddie Bauer advertised regarding the Fleece Zip was false. Compl. ¶ 56 (ER-28). The Fleece Zip—which was exclusive to the Eddie Bauer Outlets—was *never* offered by Eddie Bauer for the purported regular

price of $39.99. *Ibid.* Eddie Bauer always offered the Fleece Zip at a discount of 40% to 70% off the list price. *Id.* The advertised discount of 50% was false.

These allegations satisfy the first element of a UTPA claim—that the defendant committed an unlawful trade practice. ORS 646.608 enumerates approximately 76 separate unlawful trade practices—and Ms. Clark needs to establish only one of these for her Complaint to survive. Ms. Clark's Complaint alleges that Eddie Bauer's conduct violated (and continues to violate) at least 7 of the enumerated practices:

1. Violation of ORS 646.608(1)(e), which makes it unlawful for a person to represent that goods have characteristics, benefits or qualities that the goods do not have. Compl. ¶ 101(1) (ER-35). Here, Eddie Bauer represented that the Fleece Zip had a characteristic and a quality—a value of $39.99—that the Fleece Zip did not have, and Eddie Bauer represented that the purchase of the Fleece Zip conferred a benefit—a savings of 50%—which it did not confer. Compl. ¶ 56 (ER-28) ("And in reality and unbeknownst to Ms. Clark, Eddie Bauer *never* offered the Fleece Zip for the purported regular price of $39.99 . . . .").

2. Violation of ORS 646.608(1)(i), which makes it unlawful for a person to advertise goods with intent not to provide the goods as advertised. Compl. ¶ 101(2) (ER-35–36). Here, Eddie Bauer advertised that it would sell the Fleece Zip at a 50% discount from its regular price when Eddie Bauer's intent was

32

to sell it at a price approximately equal to, or even more than, Eddie Bauer's true regular price for the item. Compl. ¶¶ 6, 56 (ER-28).

3.    Violation of ORS 646.608(1)(j), which makes it unlawful for a person to make false or misleading representations of fact concerning the reasons for, existence of, or amounts of price reductions. Compl. ¶ 101(3) (ER-36). The Oregon Supreme Court explained that "[t]he evil proscribed by this subsection is the misrepresentation of facts concerning the normal or regular price of goods, services, or real estate." *Denson v. Ron Tonkin Gran Turismo, Inc.*, 566 P.2d 1177, 1180 (Or. 1977). ORS 646.608(1)(j) is on all fours with Ms. Clark's allegations. Eddie Bauer falsely represented it was offering the Fleece Zip at a 50% discount when, in reality, it was offering the item at a price approximately equal to, or even more than, Eddie Bauer's true regular price for the item. Compl. ¶ 56 (ER-28).

4.    Violation of ORS 646.608(1)(ee), to the extent that it incorporates ORS 646.883, which makes it unlawful for a person to include a price comparison in an advertisement without clearly and conspicuously identifying in the advertisement the origin of the reference price. Compl. ¶ 101(4) (ER-36). Ms. Clark alleged that Eddie Bauer failed to comply with this requirement. *Ibid.*

5.    Violation of ORS 646.608(1)(ee), to the extent that it incorporates ORS 646.885(1), which makes it unlawful for a seller to advertise a price comparison if words such as "regular," "reduced," "sale," "usually,"

"originally," "clearance," "liquidation" and "formerly" where the reference price was not in fact the seller's own former price. Compl. ¶ 101(5) (ER-36). Here, Eddie Bauer advertised that the StormDown Jacket purchased by Ms. Clark was on "Clearance," but the reference price was not in fact Eddie Bauer's former price for the item as required by the statute. Compl. ¶¶ 59–66 (ER-28–29).

6.      Violation of ORS 646.608(1)(ee), to the extent that it incorporates ORS 646.885(2), which makes it unlawful for a seller to advertise a price comparison utilizing the words "discount," "___ percent discount," "$___ discount," "___ percent off" and "$___ off" where the reference price was not in fact the seller's former price—unless the seller states otherwise in the advertisement. Compl. ¶ 101(6) (ER-36). Here, Eddie Bauer's in-store signs and receipts advertised 50% off where the reference price was not in fact Eddie Bauer's former price for the items, and Eddie Bauer did not state in the advertisement that the "50% off" meant something else. Compl. ¶¶ 48–49, 55, 60, 65 (ER-26–29).

7.      Violation of ORS 646.608(1)(u) and ORS 646.608(4), which make it unlawful to engage in any other unfair or deceptive conduct in trade or commerce which violates a rule established by the Oregon Attorney General. Compl. ¶ 101(7) (ER-36). For all the reasons stated above and alleged in the Complaint, Eddie Bauer violated (and continues to violate) Oregon Administrative Regulation 137-020-0010(6)(a) and (6)(g)(C), which deems unlawful Eddie

Bauer's use of a reference price at which Eddie Bauer did not in good faith make

sales of the same or similar product within the preceding 30 days and also deems

unlawful Eddie Bauer's use of a represented general price reduction which is not

true as to each item offered for sale.

The first element of a UTPA claim is met if Ms. Clark sufficiently alleges

any one of the above violations. She sufficiently alleges them all. (In addition, the

District Court conceded that Ms. Clark's allegations are so specific that they satisfy

the heightened pleading requirement of Fed. R. Civ. P. 9(b). Order at 6:20–7:1

(ER-9–10).)

### B. Element Two: Ms. Clark Suffered An Ascertainable Loss Of Money Or Property.

The second element of a UTPA claim requires the plaintiff to sufficiently

allege that she suffered an "ascertainable loss of money or property." *See* ORS

646.638(1) (individual claims), (8) (class claims). The ascertainable loss element is

interpreted broadly so as to cover the gamut of monetary loss that may be incurred

by any one of the proscribed trade practices listed in ORS 646.608. Accordingly,

Ms. Clark sufficiently alleges at least three forms of ascertainable loss that have

been recognized under Oregon law: (1) she did not receive the advantageous

bargain that Eddie Bauer promised her because the value of the items was less than

represented, (2) she purchased items that she otherwise would not have purchased

but for Eddie Bauer's misrepresentations, and (3) Eddie Bauer's false advertising

35

inflated consumer demand and in turn increased the prices Eddie Bauer was able to

command for the items she purchased.[7]

---

[7]    Oregon caselaw often categorizes a plaintiff's ascertainable loss into one of several recognized "theories," usually the "diminished value theory" or the "refund of purchase price/lack of promised qualities" theory. (Other theories also exist. *See Scharfstein v. BP West Coast Products, LLC*, 423 P.3d 757, 767 (Or. Ct. App. 2018) (the "illegal charge" theory).)

These theories have little if any utility to this appeal. The theories identified by the courts are non-exhaustive; a new set of facts can create a new theory of ascertainable loss (as occurred in *Scharfstein*). More importantly, the theories are principally used to determine if a plaintiff has to prove *reliance* at the evidence stages of litigation (*Simonsen*, 413 P.3d at 987)—an issue which should be irrelevant to this appeal because Ms. Clark unquestionably pleads reliance (Compl. ¶¶ 70, 73, 118 (ER-30, 38–39)).

That being said, Ms. Clark's three forms of ascertainable loss fall into one or more of these theories.

Oregon courts have categorized Ms. Clark's first form of ascertainable loss—she did not receive the bargain promised—under the "diminished value" theory of ascertainable loss. *See Simonsen*, 413 P.3d at 984–987 (holding that a person suffers an ascertainable loss in the "loss of the value of the advantageous bargain that was represented").

Other Oregon courts have categorized Ms. Clark's second form of ascertainable loss—Ms. Clark purchasing a product she otherwise would not have purchased—under a "purchase price" theory of ascertainable loss. *See Pearson*, 361 P.3d at 26; *see also Walters v. Vitamin Shoppe Indus., Inc.*, 701 F. App'x 667, 670 (9th Cir. 2017) (ascertainable loss "is the monetary value of a product that [the plaintiff] would not otherwise have bought" but for the alleged misrepresentations).

And Oregon courts have also discussed Ms. Clark's third form of ascertainable loss—the price premium/inflated demand theory—as a form of the "diminished value" theory of ascertainable loss. *See Pearson*, 361 P.3d at 124.

It should not matter for purposes of this appeal which of these theories fits which of Ms. Clark's forms of loss.

    1.    **Ascertainable Loss is Interpreted Broadly so as to Cover the Gamut of Monetary Loss that may be Incurred by any One of the Proscribed Trade Practices in ORS 646.608.**

In the Oregon Supreme Court's first major decision interpreting the UTPA, the high court held that the word "ascertainable" can reasonably be interpreted to mean "capable of being discovered, observed or established." *Scott v. Western Int'l Surplus Sales, Inc.*, 517 P.2d 661, 663 (Or. 1973). But "the amount of the loss is immaterial" when, as here, a plaintiff seeks an award of statutory damages. *Id.* "Under the statute there is no need to allege or prove the amount of the 'ascertainable loss[.]'" *Id.* at 662. Any amount of loss will suffice as long as it is ascertainable.

The statute commands that the ascertainable loss be a loss of "money or property." *See* ORS 646.638(1), (8). The Oregon Supreme Court explained in *Pearson*: "But unlike general economic damages in a civil action, the loss required for a UTPA claim must be specifically of 'money or property, real or personal.' An ascertainable loss of some other kind—such as loss of physical ability due to a personal injury—is not cognizable in a UTPA claim. Likewise, noneconomic losses cognizable in a civil action—such as physical pain, emotional distress, or humiliation—will not satisfy a private UTPA plaintiff's burden." 361 P.3d at 22–23 (citations omitted).

That being said, the statutory phrase "ascertainable loss of money or

property" must be interpreted broadly. "[T]he legislature was concerned as much with devising sanctions for the prescribed standards of trade and commerce as with remedying private losses, and that such losses therefore should be viewed broadly. The private loss indeed may be so small that the common law likely would reject it as grounds for relief, yet it will support an action under the statute." *Weigel v. Ron Tonkin Chevrolet Co.*, 690 P.2d 488, 494 (Or. 1984). "'Ascertainable loss' under the UTPA is amorphous." *Feitler v. Animation Celection, Inc.*, 13 P.3d 1044, 1050 (Or. Ct. App. 2000) (holding that the plaintiff suffered an ascertainable loss in the broken promise of exclusivity of animation artwork sold to him).

The UTPA requires only a peppercorn of loss; common sense and ordinary consumer knowledge dictate that Ms. Clark's allegations easily satisfy this modest requirement.[8] Beyond this, Oregon law also recognizes that her allegations constitute "ascertainable loss" under the UTPA.

> 2. **Ms. Clark Suffered an Ascertainable Loss by Not Receiving the Advantageous Bargain Eddie Bauer Promised Her Because the Value of the Items She Purchased was Less than Represented.**

A plaintiff may establish an ascertainable loss in the "loss of the value of the advantageous bargain that was represented." *Simonsen v. Sandy River Auto, LLC*, 413 P.3d 982, 983 (Or. Ct. App. 2018). The measure of the loss is "the difference

---

[8]     The court or jury may employ "ordinary market assumptions" in determining the existence of ascertainable harm. *Pearson*, 361 P.3d at 26.

between the value of the [product] as represented and the value of the [product] as purchased." *Id.* at 987. The plaintiff suffers this ascertainable loss even if she got exactly what she paid for in terms of market value. *See id.* at 986 (explaining that "ascertainable loss [does] not require an objective loss in market value."); s*ee also Weigel*, 690 P.2d at 493–94 (stating that the overall structure of the UTPA supports the view that the legislature intended ascertainable loss to include "the expenditure of funds for goods that are not as desired by the customer and represented by the seller irrespective of their market value to others").

In *Weigel*, the Oregon Supreme Court reached its decision in part because other states with an "ascertainable loss" requirement in their consumer protection statutes had held that a loss occurs when the consumer did not receive the bargain that had been advertised. "Whenever a consumer has received something other than what he bargained for, he has suffered a loss of money or property." *Weigel*, 690 P.2d at 494 (quoting *Hinchliffe v. American Motors Corp.*, 440 A.2d 810, 814 (Conn. 1981) ("To satisfy the 'ascertainable loss' requirement, a plaintiff need prove only that he has purchased an item partially as a result of an unfair or deceptive practice or act and that the item is different from that for which he bargained.")). The *Weigel* court also cited *Mayhall v. A.H. Pond Co.*, 341 N.W.2d 268, 271–72 (Mich. Ct. App. 1983) ("As the frustration of the plaintiff's expectations constitutes an injury for the purposes of proving common-law fraud,

so too it constitutes a 'loss' under [Michigan's consumer protection statutes]").

Since *Weigel* was decided in 1984, at least one other state has concurred. *See Hennessey v. Kohl's Corp.*, 2020 WL 870982, *4 (E.D. Mo. Feb. 21, 2020) ("Plaintiff alleges the products she purchased were worth less than defendant's advertising evaluated them. If the actual values of the items were less than as advertised, plaintiff did not receive the benefit of her bargains and she suffered an ascertainable loss.").

In *Simonsen*, the Oregon Court of Appeals explained that the representation of "a really good deal" was an "advantageous bargain in which the buyer [was] getting a car at a *better* value than its actual price." 413 P.3d at 988. Thus, even though the jury found that the price paid by the plaintiff was the same as the value of the car received—a difference of zero—the plaintiff still suffered an ascertainable loss. *Id*. That ascertainable loss was the loss of the advantageous bargain promised. *Id*. "The precise measure of that better value did need not to be proven." *Id*.

*Simonsen*'s measurement of loss is applicable here—the measure of loss being "the difference between the value of the [product] as represented and the value of the [product] as purchased." *Id.* at 987.

This Court similarly held that a consumer may suffer an economic injury from false discount advertising where the consumer receives a product with a

lesser actual value than the value which the consumer expected based on the higher advertised reference price. *See Hinojos v. Kohl's Corp.*, 718 F.3d 1098 (9th Cir. 2013). "In fact, the deceived bargain hunter suffers a more obvious economic injury as a result of false advertising . . . because the bargain hunter's expectations about the product he just purchased is *precisely* that it has a higher perceived value and therefore has a higher resale value." *Hinojos*, 718 F.3d at 1106.

Here, Ms. Clark purchased several products from Eddie Bauer that were advertised with a list price and a "50% off" sale sign. *See* Compl. ¶¶ 48–49, 60 (ER-26–28). For example, Eddie Bauer represented the *value* of its Fleece Zip as $39.99 (the reference price on the product tag). Eddie Bauer advertised the item as on sale for $19.99—a purported discount of 50% off the regular price. Compl. ¶ 48 (ER-26). The advantageous bargain promised to Ms. Clark was that she was getting the Fleece Zip at 50% off its regular selling price. However, Ms. Clark alleges that Eddie Bauer had *never* offered the Fleece Zip at its $39.99 list price, but rather had perpetually discounted the product 40% to 70% off. Compl. ¶ 56 (ER-28). Because the Fleece Zip was perpetually discounted, the actual "regular" price (i.e., the true value) of the Fleece Zip was an amount between 40% to 70% *less* than the $39.99 value represented and advertised by Eddie Bauer. Therefore, Ms. Clark necessarily received something less than the advantageous bargain promised of 50% off the Fleece Zip's regular price. That "something less" is the

41

ascertainable loss—the precise amount does not need to be proven.

The District Court erred when it failed to apply the principles of *Weigel* and *Simonsen* to the dispute at bar. In granting the motion to dismiss, the District Court held, "The bottom line is Ms. Clark points the Court to no instances where another court has found that an ascertainable loss for UPTA purposes could be pled based *solely* on a plaintiff's failure to get as good a deal as the plaintiff anticipated. Some misstatement as to a characteristic, quality, or feature of the product is required." Order at 10:16-19 (ER-13) (citation omitted).

But *Weigel* and *Simonsen* (which were cited by Ms. Clark)—as well as the out-of-state authorities—do, in fact, hold that a UTPA claim can be pleaded based solely on a plaintiff's failure to get as good a deal as the plaintiff was promised.

### 3. Ms. Clark Suffered an Ascertainable Loss by Purchasing Products that She Would Not Otherwise have Purchased but for Eddie Bauer's Misrepresentations.

A plaintiff may establish an ascertainable loss by pleading that she would not have purchased the product but for the alleged misrepresentation. *See Pearson*, 361 P.3d at 27. Applying *Pearson*, this Court summed up a valid UTPA claim under this theory in four sentences:

> [Plaintiff] Walters adequately pleaded his UTPA claim. He alleges that [Defendant] VSI made representations that violate Or. Rev. Stat. § 646.608, and that he would not have purchased the product but for the alleged misrepresentations. The ascertainable loss, therefore, is the monetary value of a product that Walters would not otherwise have bought. Because Walters alleges that he relied on VSI's representations, he sufficiently pleaded that VSI's conduct caused his loss.

42

*Walters v. Vitamin Shoppe Indus., Inc.*, 701 F. App'x 667, 670 (9th Cir. 2017) (citing *Pearson*, 361 P.3d at 27).

As this Court recognized in *Walters*, a plaintiff may point to *any* violation of ORS 646.608 and allege that she would not have purchased the product but for the defendant's misrepresentations. As discussed above, Ms. Clark alleges that Eddie Bauer's false discount advertising violated at least seven provisions of ORS 646.608. Ms. Clark further alleges that she would not have purchased Eddie Bauer's products but for the alleged misrepresentations. Compl. ¶ 71 (ER-30) ("If Ms. Clark had known the truth, she would not have purchased the products at the prices she paid."). This is all Ms. Clark is required to plead to establish an ascertainable loss under the UTPA. *See Walters*, 701 F. App'x at 670; *Pearson*, 361 P.3d at 27.

Beside the fact that Eddie Bauer's false discount advertising expressly violates multiple provisions of ORS 646.608, this Court has also specifically explained why and how a consumer suffers a loss of money or property as a result of a defendant's false discount advertising. *See Hinojos v. Kohl's Corp.*, 718 F.3d 1098 (9th Cir. 2013). In fact, the case at bar can be read as the Oregon version of *Hinojos*.

The plaintiff in *Hinojos* made nearly identical allegations of false discount advertising and alleged that "he would not have purchased the goods in question

absent this misrepresentation"; this Court held that his allegations satisfied California's statutory requirement that a consumer must have "lost money or property" to have standing to bring two of his consumer protection claims. *See id.* at 1103–07. Indeed, the *Hinojos* court explained that a consumer incurs a "more obvious economic injury" from false price advertising than false labeling: "In fact, the deceived bargain hunter suffers a more obvious economic injury as a result of false advertising than [the consumer] who was duped into buying foreign-made goods, because the bargain hunter's expectations about the product he just purchased is *precisely* that it has a higher perceived value and therefore has a higher resale value." *Id.* at 1106.

In support of its ruling, the Court quoted the analysis of the California Supreme Court in *Kwikset v. Superior Court (Benson)*, 246 P.3d 877, 890–91 (Cal. 2011):

> From the original purchasing decision we know the consumer valued the product as labeled more than the money he or she parted with; from the complaint's allegations we know the consumer valued the money he or she parted with more than the product as it actually is; and from the combination we know that because of the misrepresentation the consumer (allegedly) was made to part with more money than he or she otherwise would have been willing to expend, i.e., that the consumer paid more than he or she actually valued the product. That increment, the extra money paid, is economic injury . . . .

The District Court in the case at hand also replicated the error which this Court reversed in *Hinojos*. In *Hinojos*, the trial court erroneously held that the

reach of the *Kwikset* precedent was limited to claims about the "composition, effects, origin, and substance of the advertised products." *Hinojos*, 718 F.3d at 1105. This Court reversed, holding that *Kwikset* was not so narrow and that "[t]he district court's test would also eliminate consumers' ability to bring . . . claims for a vast array of other misleading marketing practices that have little or nothing to do with a product's 'composition, effects, origin, and substance.'" *Id.* at 1106. The District Court's Order was similarly in error.

The District Court held that *Pearson* required a plaintiff's UTPA claim to be based on a "false representation as to the 'character or quality' of the garments." Order at 10:1-3 (ER-13). Yet, *Pearson* states the exact opposite—that the UTPA is far more comprehensive than a single category of misrepresentations:

> Oregon's UTPA, like those of many other jurisdictions, was enacted as a comprehensive statute for the protection of consumers from unlawful trade practices. The trade practices declared unlawful under the UTPA are extensive, too much so for description. *See generally* ORS 646.607 (setting forth unlawful trade practices involving unconscionable tactics and failure to deliver as promised or failure to refund for undelivered goods and services); ORS 646.608 (enumerating approximately 76 additional unlawful trade practices).

*Pearson*, 361 P.3d at 21–22 (citation omitted).

Only after explaining the breadth of the UTPA did the *Pearson* court then focus on the relevant UTPA violation in the case. "But as relevant here, under ORS 646.608(1)(e), a person engages in an unlawful trade practice if, in the course of that person's business, vocation, or occupation, the person '[r]epresents that goods

* * * have sponsorship, approval, characteristics, ingredients, uses, benefits, quantities or qualities that [they] do not have.'" *Id.*

Even though the *Pearson* court enunciated the three-element test for a UTPA claim and detailed the expansive coverage of the UTPA, the District Court focused only on the specific facts of *Pearson* when it held that "[s]ome misstatement as to a characteristic, quality, or feature of the product is required." Order at 10 (ER-13). While such misstatements are a violation of ORS 646.608(1)(e), there are approximately 75 other unlawful trade practices listed in ORS 646.608(1)—any one of which is a violation of the UTPA. Only a handful of the subsections concern misrepresentations as to a characteristic, quality, or feature. *See*, *e.g.*, ORS 646.608(1)(g) (prohibiting misrepresentations as to a good's "standard, quality, or grade"). The vast majority of subsections do not mention words like "characteristic, quality, or feature," yet they are still unlawful trade practices and are still actionable under the UTPA.

Ms. Clark alleges several violations in addition to a violation of ORS 646.608(1)(e), and the District Court erred in applying subsection (e)'s standards to Ms. Clark's other allegations.

For example, Ms. Clark alleges that Eddie Bauer violated ORS 646.608(1)(j), which prohibits "mak[ing] false or misleading representations of fact concerning the reasons for, existence of, or amounts of price reductions."

Nothing in ORS 646.608(1)(j) refers to a characteristic, quality or feature. In fact, the Oregon Supreme Court has held that subsection (j) prohibits "the misrepresentation of facts concerning the normal or regular price of goods"— i.e., what Eddie Bauer is accused of doing here—and that a plaintiff may bring a UTPA claim under subsection (j). *See Denson*, 566 P.2d at 1180 ("The evil proscribed by [subsection (j)] is the misrepresentation of facts concerning the normal or regular price of goods, services, or real estate."); *Sanders v. Francis*, 561 P.2d 1003, 1006 (Or. 1977) (holding that the plaintiff sufficiently pleaded "a forbidden representation concerning the existence or amount of a price reduction under paragraph (j)").

The District Court erred in importing the "characteristic, quality, or feature" requirement from ORS 646.608(1)(e) to Ms. Clark's six other UTPA violations.

  4. **Ms. Clark Suffered an Ascertainable Loss Because Eddie Bauer's False Advertising Inflated Consumer Demand and in Turn Increased the Prices Eddie Bauer was able to Command and Charge.**

Ms. Clark alleges that Eddie Bauer's false advertising artificially inflates consumer demand, thereby shifting the demand curve and increasing the prices that Eddie Bauer is able to command and charge for its products (enabling Eddie Bauer to charge a price premium). *See* Compl. ¶ 109 ("Eddie Bauer's false reference pricing scheme fraudulently increased demand from consumers. This fraud-on-the-market shifted the demand curve and enabled Eddie Bauer to charge higher prices

47

than it otherwise could have charged.") (ER-37); *see also* Compl. ¶ 27 (ER-22). The District Court completely missed this clearly pleaded form of ascertainable loss and did not mention it in the Order.

The Oregon Supreme Court has discussed this form of harm, stressing the need for expert evidence. "In other cases involving light cigarettes and similar allegations of loss, the plaintiffs have attempted to rely on expert testimony to establish that the tobacco industry marketing drove up demand, thus inflating the purchase price of light cigarettes, so that the plaintiffs paid more than they otherwise would have if the truth about light cigarettes had been known." *Pearson*, 361 P.3d at 124. While *Pearson* acknowledged that no other court had thus far found the theory viable, *Pearson* stressed that "plaintiffs in this case did not come forward with the evidence that they said they would produce at trial." *Id.* Ms. Clark intends to present ample evidence at trial to confirm what should be obvious: retailers engage in false advertising to artificially increase demand and prices. They do it because it works.

### C. Element Three: Ms. Clark's Ascertainable Loss Was The Result Of The Unlawful Trade Practice.

The third and final element of a UTPA claim is that the "plaintiff's injury (ascertainable loss) was the result of the unlawful trade practice." *Pearson*, 361 P.3d at 28. "That is, the unlawful trade practice must have caused the ascertainable loss that the plaintiff suffered." *Id.* at 23. The District Court erroneously required

Ms. Clark to show that her ascertainable loss be a result of "a false representation as to the 'character or quality' of the garments." Order at 10 (ER-13). But that is not the test. As *Pearson* and every Oregon court to address the issue to date have explained, the injury can be the result of *any* unlawful trade practice. All Ms. Clark must do to satisfy this element is to plead that Eddie Bauer's unlawful practices caused her ascertainable loss. She has done this for all three forms of ascertainable loss discussed above (i.e., for the loss of an advantageous bargain, for purchasing a product she otherwise would not have purchased, and for the price premium/inflated demand loss.).

For her advantageous bargain loss, Ms. Clark need only allege that she did not receive the advantageous bargain as a result of Eddie Bauer's unlawful practices. She has done this. *See*, *e.g.*, Compl., ¶¶ 56–57, 66–67 ("Eddie Bauer's reference prices and advertised discounts were false and deceptive. . . . [¶] Ms. Clark did not receive the discounts that Eddie Bauer represented to and promised her. The Fleece Zip was not worth the $39.99 price, and the Microlight Jacket was not worth the $99.99 price, that Eddie Bauer had led her to believe. . . . [¶]The StormDown Jacket was not worth either the $199.99 or the $229.00 price that Eddie Bauer had led her to believe.") (ER-28–30).

For her purchase price loss, Ms. Clark need only allege that she "would not have purchased the product but for the alleged misrepresentations." *See Walters*,

49

701 Fed. App'x at 670 (citing *Pearson*, 361 P.3d at 27). She has done this. *See*, *e.g.*, Compl. ¶ 68 ("Eddie Bauer's advertised list prices and its advertised discounts of 50% off or more were material misrepresentations and inducements to both Ms. Clark's March 22, 2017, purchase and Ms. Clark's April 5, 2018, purchase."), ¶¶ 70–72 ("Ms. Clark reasonably relied on Eddie Bauer's material misrepresentations regarding the reference prices and advertised discounts for the Fleece Zip, the Microlight Jacket, and the StormDown Jacket. [¶] If Ms. Clark had known the truth, she would not have purchased the products at the prices she paid.") (ER-30).

For her price premium/inflated demand loss, Ms. Clark alleges that Eddie Bauer's false advertising scheme artificially inflated Eddie Bauer's selling prices and that Ms. Clark paid the inflated prices. *See* Compl. ¶¶ 54, 64 (purchases), 109 (artificial inflation of demand and prices) (ER-27, 29, 37).

Ms. Clark sufficiently pleads this final causation element and sufficiently pleads the three elements of a UTPA violation.

## III. THE DISTRICT COURT ERRED BY DISMISSING THE COMPLAINT WITH PREJUDICE AND FAILING TO GRANT MS. CLARK LEAVE TO FILE A FIRST AMENDED COMPLAINT.

### A. The District Court Erred Generally In Not Granting Leave To Amend.

The District Court erred when, like a bolt from the blue, it dismissed the entire Complaint with prejudice and without leave to amend—failing to provide Ms. Clark with even one opportunity to amend her allegations. Order at 10-25–

11:2 (ER-13–14); Judgment (ER-3).

The "longstanding rule" of the Ninth Circuit is that "leave to amend should be granted if it appears at all possible that the plaintiff can correct the defect." *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000) (internal punctuation omitted). "It is black-letter law that a district court must give plaintiffs at least one chance to amend a deficient complaint, absent a clear showing that amendment would be futile." *Nat'l Council of La Raza v. Cegavske*, 800 F.3d 1032, 1041 (9th Cir. 2015). It must be "clear beyond doubt" that amendment would be futile. *Center for Biological Diversity v. Veneman*, 394 F.3d 1108, 1114 (9th Cir. 2005).

The ability to amend at least once is so important that a party is entitled to amend even if that party failed to request leave to amend. "[I]n a line of cases stretching back nearly 50 years, we have held that in dismissing for failure to state a claim under Rule 12(b)(6), a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez*, 203 F.3d at 1127.

As discussed above, Ms. Clark contends that the District Court erred as a matter of law regarding Ms. Clark's ability to pray for an injunction and as to whether she sufficiently alleged an ascertainable loss under the UTPA. If this Court agrees with Ms. Clark, then her Complaint is sufficient, and this Court

should reverse, remand, and instruct the District Court to order Eddie Bauer to file an Answer. However, if this Court disagrees with Ms. Clark and finds her Complaint to be insufficient, this Court should still reverse and remand albeit with instructions to the District Court to grant Ms. Clark leave to amend.

The factors which govern leave to amend militate in favor of Ms. Clark receiving leave. *See Foman v. Davis*, 371 U.S. 178, 182 (1962). Eddie Bauer would not be prejudiced. *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003) (reversing dismissal with prejudice). There is no indication in the record of undue delay, bad faith, a dilatory motive, or repeated failures to cure deficiencies on Ms. Clark's part. *Foman*, 371 U.S. at 182. Similar to the situation in *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1034–35 (9th Cir. 2008) (reversing trial court's dismissal with prejudice and denial of leave to amend), Ms. Clark's case had been in federal court for only a few months at the time of the dismissal, trial was not approaching, the District Court did not explain at a hearing (or even hold a hearing) or otherwise that it intended to dismiss the Complaint with prejudice, and the District Court did not allow Ms. Clark a chance to explain how she would amend the Complaint if allowed to do so in response to the District Court's ruling. This Court should follow *Manzarek* and reverse the District Court's ruling.

Due to the posture of this case, Ms. Clark is generally handicapped in

proffering to this Court examples of how she would amend her Complaint if granted leave. Ms. Clark contends in the first instance that her Complaint properly prays for equitable relief and sufficiently alleges ascertainable loss; if this Court agrees, Ms. Clark does not need to file an amended complaint. But, until this Court rules on the exact contours of what Ms. Clark must allege to maintain her claims, Ms. Clark cannot know which facts are relevant to the District Court to proffer for an amendment.[9]

### B. The District Court Erred Specifically When It Failed To Grant Leave To Amend As To The UTPA's Statutory Discovery Rule.

On the issue of the UTPA's statutory discovery rule, the District Court admitted that Ms. Clark could possibly cure a perceived defect by amendment, but the court did not grant leave—which was an abuse of discretion. The District Court held (erroneously) that the discovery rule did not expand Ms. Clark's limitation periods because "the complaint fails to include the circumstances associated with

---

[9]    Ms. Clark can, however, proffer additional allegations regarding ascertainable loss which Ms. Clark would allege if granted leave to do so. For example, the StormDown Jacket which Ms. Clark purchased at "Clearance" for $99.99 (from a supposed regular price of $229.99) was consistently offered by Eddie Bauer during the previous 60 days for between $89.99 and $91.60—less than the $99.99 she actually paid. In other words, Eddie Bauer utilized a false discount to trick Ms. Clark into paying *more* than the regular price for the StormDown Jacket.
    Ms. Clark also proffers that, if granted leave, she can allege facts further fleshing out the "price premium/inflated demand" form of ascertainable loss, including how the loss would be calculated and what research (and defendant business records) would establish the loss.

her discovery." The District Court stated, "While this deficiency could possibly be cured through an amended complaint, Ms. Clark's UTPA claims, as pleaded, are time-barred." Order at 8:15-16 (ER-11). The Court did not address the *Foman* factors or otherwise explain why it did not allow Ms. Clark to amend—which is a reversible error. *Eminence Capital, LLC*, 316 F.3d at 1052 ("A simple denial of leave to amend without any explanation by the district court is subject to reversal.").

The discovery rule in the UTPA is part of the statute itself. "Actions brought under this section must be commenced within one year *after the discovery* of the unlawful method, act or practice." ORS 646.638(6) (emphasis added). The statute's plain language implies that a plaintiff seeking the benefit of the rule must or should plead the time of discovery so that the court can establish that the discovery occurred no more than one year before the lawsuit was filed. Ms. Clark satisfied the statute by alleging that she first learned of Eddie Bauer's false discounting scheme on March 13, 2020 (which was less than one year before she filed the Complaint). Compl. ¶ 73 (ER-30). This is all that the statute requires of Ms. Clark.

The District Court erred when it ruled that Ms. Clark was required to also plead the circumstances under which she discovered the false advertising. ORS 646.638(6) does not contain a circumstances-of-discovery requirement, and that

should be the end of the matter. The federal court should apply a state statutory discovery rule as written. "Maturation of the discovery rule meant that it passed exclusively from the realm of judge-made law, into the hands of the legislature; the role of the courts correspondingly changed from judicial innovator to statute interpreter." M.M. Schneier, "Washington Supreme Court Applies the Discovery Rule to Breach of Contract Claims Involving Latent Construction Defects," *Construction Litigation Reporter* (Feb. 2007). When a plaintiff is asserting a right under a state statute, the federal pleading rules cannot demand that the plaintiff must, upon pain of dismissal, plead extraneous information about the discovery rule which is not required by that statute. This is particularly true under Oregon law, where the application of the discovery rule is an issue of fact reserved to the jury. *See Kaseberg v. Davis Wright Tremaine, LLP*, 265 P.3d 777, 782 (Or. 2011).

The District Court's Order is passing strange in that it identifies what it considers to be a deficiency in Ms. Clark's pleading of the discovery rule, admits that Ms. Clark may be able to amend her Complaint, but then dismisses the Complaint with prejudice and without allowing Ms. Clark even one chance to amend. "While this deficiency could possibly be cured through an amended complaint, Ms. Clark's UTPA claims, as pleaded, are time-barred." Order at 8:15-16 (ER-11). On this point, the District Court's Order is not merely erroneous; it is unfair.

Finally, on this discrete issue, if required do so, Ms. Clark can proffer how she would amend her complaint. The circumstances of her discovery were that, on March 13, 2020, Ms. Clark first learned of the scheme through her counsel, who have been investigating Eddie Bauer's unlawful pricing practices for several years. Ms. Clark should be granted leave to allege these and any other relevant facts in a First Amended Complaint.

## **CONCLUSION**

For the reasons stated, Plaintiff Susan Clark respectfully requests that this Court reverse the Judgment and Order entered in this civil action and remand the civil action to the U.S. District Court for the Western District of Washington with instructions that the District Court either order Eddie Bauer to file an Answer or grant Ms. Clark leave to amend.

Dated: June 28, 2021                    HATTIS & LUKACS

                                                  By: *s/ Paul Karl Lukacs*
                                                          Paul Karl Lukacs
                                                  Daniel M. Hattis
                                                  Paul Karl Lukacs
                                                  Che Corrington
                                                  400 108th Avenue NE, Suite 500
                                                  Bellevue, WA 98004
                                                  Telephone: (425) 233-8650
                                                  *Attorneys for Plaintiff-Appellant Susan Clark*

## STATEMENT OF RELATED CASES

Plaintiff is not aware of any related cases pending in this Court.

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

## Form 8. Certificate of Compliance for Briefs

**9th Cir. Case Number:** 21-35334 _____

I am the attorney or self-represented party.

**This brief contains 13,956 words,** excluding the items exempted by Fed. R.

App. P. 32(f). The brief's type size and typeface comply with Fed. R. App. P.

32(a)(5) and (6).

I certify that this brief *(select only one)*:

[**X**] complies with the word limit of Cir. R. 32-1.

[ ] is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

[ ] is an **amicus** brief and complies with the word limit of Fed. R. App. P. 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

[ ] is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

[ ] complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one)*:
    [ ] it is a joint brief submitted by separately represented parties;
    [ ] a party or parties are filing a single brief in response to multiple briefs; or
    [ ] a party or parties are filing a single brief in response to a longer joint brief.

[ ] complies with the length limit designated by court order dated _____.

[ ] is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature** *s/ Paul Karl Lukacs* _____ **Date** June 28, 2021 _____

58

# ADDENDUM

🟨 KeyCite Yellow Flag - Negative Treatment
Proposed Legislation

West's Oregon Revised Statutes Annotated
    Title 50. Trade Regulations and Practices
        Chapter 646. Trade Practices and Antitrust Regulation (Refs & Annos)
            Unlawful Trade Practices (Refs & Annos)

O.R.S. § 646.608

# 646.608. Attorney General's rules; unlawful business; trade practices; proof

Effective: January 2, 2020
Currentness

(1) A person engages in an unlawful practice if in the course of the person's business, vocation or occupation the person does any of the following:

    (a) Passes off real estate, goods or services as the real estate, goods or services of another.

    (b) Causes likelihood of confusion or of misunderstanding as to the source, sponsorship, approval, or certification of real estate, goods or services.

    (c) Causes likelihood of confusion or of misunderstanding as to affiliation, connection, or association with, or certification by, another.

    (d) Uses deceptive representations or designations of geographic origin in connection with real estate, goods or services.

    (e) Represents that real estate, goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, quantities or qualities that the real estate, goods or services do not have or that a person has a sponsorship, approval, status, qualification, affiliation, or connection that the person does not have.

    (f) Represents that real estate or goods are original or new if the real estate or goods are deteriorated, altered, reconditioned, reclaimed, used or secondhand.

    (g) Represents that real estate, goods or services are of a particular standard, quality, or grade, or that real estate or goods are of a particular style or model, if the real estate, goods or services are of another.

    (h) Disparages the real estate, goods, services, property or business of a customer or another by false or misleading representations of fact.

(i) Advertises real estate, goods or services with intent not to provide the real estate, goods or services as advertised, or with intent not to supply reasonably expectable public demand, unless the advertisement discloses a limitation of quantity.

(j) Makes false or misleading representations of fact concerning the reasons for, existence of, or amounts of price reductions.

(k) Makes false or misleading representations concerning credit availability or the nature of the transaction or obligation incurred.

(L) Makes false or misleading representations relating to commissions or other compensation to be paid in exchange for permitting real estate, goods or services to be used for model or demonstration purposes or in exchange for submitting names of potential customers.

(m) Performs service on or dismantles any goods or real estate if the owner or apparent owner of the goods or real estate does not authorize the service or dismantling.

(n) Solicits potential customers by telephone or door to door as a seller unless the person provides the information required under ORS 646.611.

(*o*) In a sale, rental or other disposition of real estate, goods or services, gives or offers to give a rebate or discount or otherwise pays or offers to pay value to the customer in consideration of the customer giving to the person the names of prospective purchasers, lessees, or borrowers, or otherwise aiding the person in making a sale, lease, or loan to another person, if earning the rebate, discount or other value is contingent upon an event occurring after the time the customer enters into the transaction.

(p) Makes any false or misleading statement about a prize, contest or promotion used to publicize a product, business or service.

(q) Promises to deliver real estate, goods or services within a certain period of time with intent not to deliver the real estate, goods or services as promised.

(r) Organizes or induces or attempts to induce membership in a pyramid club.

(s) Makes false or misleading representations of fact concerning the offering price of, or the person's cost for real estate, goods or services.

(t) Concurrent with tender or delivery of any real estate, goods or services fails to disclose any known material defect or material nonconformity.

(u) Engages in any other unfair or deceptive conduct in trade or commerce.

(v) Violates any of the provisions relating to auction sales, consignment sales, auctioneers, consignees or auction marts under ORS 698.640, whether in a commercial or noncommercial situation.

(w) Manufactures mercury fever thermometers.

(x) Sells or supplies mercury fever thermometers unless the thermometer is required by federal law, or is:

    (A) Prescribed by a person licensed under ORS chapter 677; and

    (B) Supplied with instructions on the careful handling of the thermometer to avoid breakage and on the proper cleanup of mercury should breakage occur.

(y) Sells a thermostat that contains mercury unless the thermostat is labeled in a manner to inform the purchaser that mercury is present in the thermostat and that the thermostat may not be disposed of until the mercury is removed, reused, recycled or otherwise managed to ensure that the mercury does not become part of the solid waste stream or wastewater. For purposes of this paragraph, "thermostat" means a device commonly used to sense and, through electrical communication with heating, cooling or ventilation equipment, control room temperature.

(z) Sells or offers for sale a motor vehicle manufactured after January 1, 2006, that contains mercury light switches.

(aa) Violates the provisions of ORS 803.375, 803.385 or 815.410 to 815.430.

(bb) Violates ORS 646A.070 (1).

(cc) Violates any requirement of ORS 646A.030 to 646A.040.

(dd) Violates the provisions of ORS 128.801 to 128.898.

(ee) Violates ORS 646.883 or 646.885.

(ff) Violates ORS 646.569.

(gg) Violates the provisions of ORS 646A.142.

(hh) Violates ORS 646A.360.

(ii) Violates ORS 646.553 or 646.557 or any rule adopted pursuant thereto.

(jj) Violates ORS 646.563.

(kk) Violates ORS 759.680 or any rule adopted pursuant thereto.

(LL) Violates the provisions of ORS 759.705, 759.710 and 759.720 or any rule adopted pursuant thereto.

(mm) Violates ORS 646A.210 or 646A.214.

(nn) Violates any provision of ORS 646A.124 to 646A.134.

(oo) Violates ORS 646A.095.

(pp) Violates ORS 822.046.

(qq) Violates ORS 128.001.

(rr) Violates ORS 646A.800 (2) to (4).

(ss) Violates ORS 646A.090 (2) to (5).

(tt) Violates ORS 87.686.

(uu) Violates ORS 646A.803.

(vv) Violates ORS 646A.362.

(ww) Violates ORS 646A.052 or any rule adopted under ORS 646A.052 or 646A.054.

(xx) Violates ORS 180.440 (1) or 180.486 (1).

(yy) Commits the offense of acting as a vehicle dealer without a certificate under ORS 822.005.

(zz) Violates ORS 87.007 (2) or (3).

(aaa) Violates ORS 92.405 (1), (2) or (3).

(bbb) Engages in an unlawful practice under ORS 646.648.

(ccc) Violates ORS 646A.365.

(ddd) Violates ORS 98.853, 98.854, 98.856 or 98.858 or a rule adopted under ORS 98.864.

(eee) Sells a gift card in violation of ORS 646A.276.

(fff) Violates ORS 646A.102, 646A.106 or 646A.108.

(ggg) Violates ORS 646A.430 to 646A.450.

(hhh) Violates a provision of ORS 744.318 to 744.384.

(iii) Violates a provision of ORS 646A.702 to 646A.720.

(jjj) Violates ORS 646A.530 30 or more days after a recall notice, warning or declaration described in ORS 646A.530 is issued for the children's product, as defined in ORS 646A.525, that is the subject of the violation.

(kkk) Violates a provision of ORS 697.612, 697.642, 697.652, 697.662, 697.682, 697.692 or 697.707.

(LLL) Violates the consumer protection provisions of the Servicemembers Civil Relief Act, 50 U.S.C. 3901 et seq., as in effect on January 1, 2010.

(mmm) Violates a provision of ORS 646A.480 to 646A.495.

(nnn) Violates ORS 646A.082.

(ooo) Violates ORS 646.647.

(ppp) Violates ORS 646A.115.

(qqq) Violates a provision of ORS 646A.405.

(rrr) Violates ORS 646A.092.

(sss) Violates a provision of ORS 646.644.

(ttt) Violates a provision of ORS 646A.295.

(uuu) Violates ORS 646A.564.

(vvv) Engages in the business of, or acts in the capacity of, an immigration consultant, as defined in ORS 9.280, in this state and for compensation, unless federal law authorizes the person to do so or unless the person is an active member of the Oregon State Bar.

(www) Violates ORS 702.012, 702.029 or 702.054.

(xxx) Violates ORS 646A.806.

(yyy) Violates ORS 646A.810 (2).

(zzz) Violates ORS 443.376.

(aaaa) Violates a provision of ORS 646A.770 to 646A.787.

(2) A representation under subsection (1) of this section or ORS 646.607 may be any manifestation of any assertion by words or conduct, including, but not limited to, a failure to disclose a fact.

(3) In order to prevail in an action or suit under ORS 336.184 and 646.605 to 646.652, a prosecuting attorney need not prove competition between the parties or actual confusion or misunderstanding.

(4) An action or suit may not be brought under subsection (1)(u) of this section unless the Attorney General has first established a rule in accordance with the provisions of ORS chapter 183 declaring the conduct to be unfair or deceptive in trade or commerce.

(5) Notwithstanding any other provision of ORS 336.184 and 646.605 to 646.652, if an action or suit is brought under subsection (1)(xx) of this section by a person other than a prosecuting attorney, relief is limited to an injunction and the prevailing party may be awarded reasonable attorney fees.

**Credits**

Added by Laws 1971, c. 744, § 7 (enacted in lieu of 646.615). Amended by Laws 1973, c. 235, § 2; Laws 1973, c. 513, § 1; Laws 1975, c. 437, § 1; Laws 1977, c. 195, § 2; Laws 1979, c. 503, § 4; Laws 1983, c. 404, § 5; Laws 1985, c. 251, § 10a; Laws 1985, c. 538, § 3; Laws 1985, c. 694, § 8; Laws 1985, c. 729, § 22; Laws 1987, c. 626, § 5; Laws 1989, c. 273, § 7; Laws 1989, c. 451, § 4; Laws 1989, c. 458, § 3; Laws 1989, c. 621, § 4; Laws 1989, c. 622, § 7; Laws 1989, c. 623, § 3; Laws 1989, c. 913, § 1; Laws 1991, c. 532, § 25; Laws 1991, c. 672, § 8; Laws 1993, c. 58, § 3; Laws 1993, c. 283, § 10; Laws 1993, c. 582, § 11;

Laws 1993, c. 645, § 10; Laws 1993, c. 700, § 2; Laws 1995, c. 713, § 6; Laws 1995, c. 788, § 2; Laws 1997, c. 132, § 6; Laws 1997, c. 806, § 2; Laws 1999, c. 194, § 9; Laws 1999, c. 400, § 4; Laws 1999, c. 669, § 3; Laws 1999, c. 719, § 3; Laws 1999, c. 875, § 3; Laws 2001, c. 924, §§ 11, 13; Laws 2001, c. 969, § 5; Laws 2003, c. 133, §§ 1, 2; Laws 2003, c. 486, §§ 2, 3; Laws 2003, c. 778, §§ 4, 5; Laws 2003, c. 801, §§ 18, 19, eff. Sept. 24, 2003; Laws 2005, c. 42, §§ 1, 2; Laws 2005, c. 799, §§ 2, 3; Laws 2007, c. 304, § 2, eff. Jan. 1, 2008; Laws 2007, c. 772, § 4, eff. Jan. 1, 2008; Laws 2007, c. 538, § 18, eff. Jan. 1, 2008; Laws 2007, c. 820, § 8, eff. Jan. 1, 2008; Laws 2007, c. 823, § 5, eff. Jan. 1, 2008; Laws 2007, c. 685, § 13, eff. July 1, 2008; Laws 2008, c. 19 (1st Sp. Sess.), §§ 7, 8, eff. March 11, 2008; Laws 2008, c. 31 (1st Sp. Sess.), §§ 5, 6, eff. May 1, 2008; Laws 2009, c. 448, § 11, eff. Sept. 21, 2009; Laws 2009, c. 717, § 26, eff. Sept. 28, 2009; Laws 2009, c. 133, § 6, eff. Jan. 1, 2010; Laws 2009, c. 150, § 1, eff. Jan. 1, 2010; Laws 2009, c. 170, § 1, eff. Jan. 1, 2010; Laws 2009, c. 197, § 1, eff. Jan. 1, 2010; Laws 2009, c. 215, § 3, eff. Jan. 1, 2010; Laws 2009, c. 310, § 2, eff. Jan. 1, 2010; Laws 2009, c. 604, § 23, eff. Jan. 1, 2010; Laws 2009, c. 711, § 21, eff. Jan. 1, 2010; Laws 2011, c. 57, § 2, eff. Jan. 1, 2012; Laws 2011, c. 502, § 3, eff. Jan. 1, 2012; Laws 2011, c. 509, § 4, eff. Jan. 1, 2012; Laws 2012, c. 52, § 6, eff. Jan. 1, 2013; Laws 2013, c. 54, § 8, eff. Jan. 1, 2014; Laws 2013, c. 77, § 1, eff. Jan. 1, 2014; Laws 2013, c. 330, § 2, eff. Jan. 1, 2014; Laws 2013, c. 493, § 5, eff. Jan. 1, 2014; Laws 2014, c. 19, § 3, eff. March 3, 2014, operative June 2, 2014; Laws 2015, c. 523, § 9, eff. Jan. 1, 2016; Laws 2015, c. 523, § 10, eff. Jan. 1, 2016, operative Jan. 2, 2020; Laws 2017, c. 656, §§ 5, 6, eff. Aug. 8, 2017, operative Jan. 2, 2020; Laws 2017, c. 113, §§ 14, 15, eff. Jan. 1, 2018, operative Jan. 2, 2020; Laws 2017, c. 241, §§ 2, 3, eff. Jan. 1, 2018, operative Jan. 2, 2020; Laws 2017, c. 480, §§ 15,16, eff. Jan. 1, 2018, operative Jan. 2, 2020; Laws 2019, c. 13, §§ 59, 60, eff. Jan. 1, 2020, operative Jan. 2, 2020; Laws 2019, c. 175, § 2, eff. Jan. 1, 2020, operative Jan. 2, 2020.

Notes of Decisions (182)

O. R. S. § 646.608, OR ST § 646.608

Current through laws of the 2021 Regular Session of the 81st Legislative Assembly, which convened January 22, 2021, in effect through June 7, 2021, pending classification of undesignated material and text revision by the Oregon Reviser. See ORS 173.160. Some statute sections may be more current, see credits for details.

**End of Document**

© 2021 Thomson Reuters. No claim to original U.S. Government Works.

KeyCite Yellow Flag - Negative Treatment
Proposed Legislation

West's Oregon Revised Statutes Annotated
    Title 50. Trade Regulations and Practices
        Chapter 646. Trade Practices and Antitrust Regulation (Refs & Annos)
            Unlawful Trade Practices (Refs & Annos)

O.R.S. § 646.638

# 646.638. Civil action by private party

## Currentness

(1) Except as provided in subsections (8) and (9) of this section, a person that suffers an ascertainable loss of money or property, real or personal, as a result of another person's willful use or employment of a method, act or practice declared unlawful under ORS 646.608, may bring an individual action in an appropriate court to recover actual damages or statutory damages of $200, whichever is greater. The court or the jury may award punitive damages and the court may provide any equitable relief the court considers necessary or proper.

(2) A person that brings an action under subsection (1) of this section shall mail a copy of the complaint or other initial pleading to the Attorney General at the time the action commences and, upon entry of any judgment in the action, shall mail a copy of the judgment to the Attorney General. Failure to mail a copy of the complaint is not a jurisdictional defect, but a court may not enter judgment for the plaintiff until proof of mailing is filed with the court. Proof of mailing may be by affidavit or by return receipt of mailing.

(3) The court may award reasonable attorney fees and costs at trial and on appeal to a prevailing plaintiff in an action under this section. The court may award reasonable attorney fees and costs at trial and on appeal to a prevailing defendant only if the court finds that an objectively reasonable basis for bringing the action or asserting the ground for appeal did not exist.

(4) The court may not award attorney fees to a prevailing defendant under the provisions of subsection (3) of this section if the action under this section is maintained as a class action pursuant to ORCP 32.

(5) Any permanent injunction or final judgment or order the court makes under ORS 646.632 or 646.636 is prima facie evidence in an action brought under this section that the respondent used or employed a method, act or practice declared unlawful under ORS 646.608, but an assurance of voluntary compliance, whether or not approved by the court, is not evidence of the violation.

(6) Actions brought under this section must be commenced within one year after the discovery of the unlawful method, act or practice. Notwithstanding this limitation, if a prosecuting attorney filed a complaint to prevent, restrain or punish a violation of ORS 646.608, the complaint tolls the statute of limitations with respect to every private right of action under this section that is based in whole or in part on any matter set forth in the prosecuting attorney's complaint for the period of time in which the proceeding that the prosecuting attorney initiated is pending.

(7) Notwithstanding subsection (6) of this section, in any action that a seller or lessor brings against a purchaser or lessee of real estate, goods or services, the purchaser or lessee may assert any counterclaim that the purchaser or lessee has arising out of a violation of ORS 336.184 and 646.605 to 646.652.

(8) A class action may be maintained under this section. In any class action under this section:

(a) Statutory damages under subsection (1) of this section may be recovered on behalf of class members only if the plaintiffs in the action establish that the members have sustained an ascertainable loss of money or property as a result of a reckless or knowing use or employment by the defendant of a method, act or practice declared unlawful by ORS 646.608;

(b) The trier of fact may award punitive damages; and

(c) The court may award appropriate equitable relief.

(9) This section does not apply to:

(a) Any method, act or practice described in ORS 646.608 (1)(aa). Actions for violation of laws relating to odometers are provided under ORS 815.410 and 815.415.

(b) A violation of ORS 86.726 (1)(a) or (2), 86.729 (4) or 86.732 (1) or (2).

**Credits**

Laws 1971, c. 744, § 13; Laws 1973, c. 235, § 5; Laws 1975, c. 437, § 4; Laws 1977, c. 195, § 9; Laws 1981, c. 897, § 78; Laws 1985, c. 251, § 10b; Laws 1995, c. 696, § 35; Laws 2001, c. 917, § 3; Laws 2001, c. 924, §§ 16, 18; Laws 2005, c. 42, §§ 3, 4; Laws 2009, c. 552, § 6, eff. June 25, 2009; Laws 2009, c. 327, § 1, eff. Jan. 1, 2010; Laws 2013, c. 304, § 14, eff. June 4, 2013, operative Aug. 4, 2013.

Notes of Decisions (132)

O. R. S. § 646.638, OR ST § 646.638

Current through laws of the 2021 Regular Session of the 81st Legislative Assembly, which convened January 22, 2021, in effect through June 7, 2021, pending classification of undesignated material and text revision by the Oregon Reviser. See ORS 173.160. Some statute sections may be more current, see credits for details.

| West's Oregon Revised Statutes Annotated |
| --- |
|    Title 50. Trade Regulations and Practices |
|       Chapter 646. Trade Practices and Antitrust Regulation (Refs & Annos) |
|          Price Comparison Advertising |

O.R.S. § 646.883

## 646.883. Prohibition of price comparison in advertisement; exceptions

Currency

It shall be unlawful for a seller to include a price comparison in an advertisement unless:

(1) The seller clearly and conspicuously identifies in the advertisement the origin of the price that the seller is comparing to the seller's current price. The origin of the price that the seller is comparing to the seller's current price includes but is not limited to the seller's former selling price, a manufacturer's list price or a competitor's price for the same real estate, goods or services.

(2) The price comparison is in compliance with ORS 646.608 (1)(j) and the rules adopted under ORS 646.608 (4) and compliance is established based on facts provable by the seller.

**Credits**

Laws 1987, c. 626, § 3.

O. R. S. § 646.883, OR ST § 646.883

Current through laws of the 2021 Regular Session of the 81st Legislative Assembly, which convened January 22, 2021, in effect through June 7, 2021, pending classification of undesignated material and text revision by the Oregon Reviser. See ORS 173.160. Some statute sections may be more current, see credits for details.

End of Document

© 2021 Thomson Reuters. No claim to original U.S. Government Works.

West's Oregon Revised Statutes Annotated
　　Title 50. Trade Regulations and Practices
　　　　Chapter 646. Trade Practices and Antitrust Regulation (Refs & Annos)
　　　　　　Price Comparison Advertising

O.R.S. § 646.885

# 646.885. Terms containing price comparison in advertisement

## Currentness

(1) The use of terms such as "regular," "reduced," "sale," "usually," "originally," "clearance," "liquidation" and "formerly" shall identify the origin of the price that the seller is comparing to the seller's current price as the seller's own former price, or in the case of introductory advertisements, the seller's future price.

(2) Unless the seller states otherwise in the advertisement, use of terms such as "discount," "_____ percent discount," "$_____ discount," "_____ percent off" and "$_____ off" shall be considered to identify the origin of the price that the seller is comparing to the seller's current price as the seller's former price, or in the case of introductory advertisements, the seller's future price.

**Credits**
Laws 1987, c. 626, § 4.

O. R. S. § 646.885, OR ST § 646.885
Current through laws of the 2021 Regular Session of the 81st Legislative Assembly, which convened January 22, 2021, in effect through June 7, 2021, pending classification of undesignated material and text revision by the Oregon Reviser. See ORS 173.160. Some statute sections may be more current, see credits for details.

**End of Document** 　　　　　　　　　　　　　　　© 2021 Thomson Reuters. No claim to original U.S. Government Works.

```
Oregon Administrative Rules Compilation
    Chapter 137. Department of Justice
        Division 20. Misleading Price Representations
```

OAR 137-020-0010

## 137-020-0010. Trade Practices Act

Currentness

(1) Purpose: It is the purpose of this rule to declare as an unlawful trade practice certain representations relating to price reductions.

(2) Scope: At present, it is unlawful under ORS 646.608(1)(j) to make "false or misleading representations of fact concerning the reasons for, existence of, or amounts of price reductions." This rule is intended to define types of price comparisons which are in violation of that section, by establishing permissible types of reference price advertising. The rule does not address misrepresentations regarding the "reasons for" price reductions. The Examples provided in this rule are for illustrative purposes only.

(3) Authority: This rule is adopted pursuant to ORS Chapter 183 on authority granted to the Attorney General by ORS 646.608(1)(s) and (4).

(4) Effective Date: This rule applies to all advertisements (other than catalogues) printed, distributed, or broadcast, or offers for sale made, after September 1, 1976. Subsection (6)(e) of this rule applies to all catalogues distributed in Oregon after January 1, 1977.

(5) Definitions: As used in this rule:

(a) The definitions of terms set forth in ORS 646.605(1975) are applicable;

(b) "Catalogue" means a multi-page solicitation in which a person offers more than one specific type of goods for sale from which a consumer can order goods directly without going to the seller's place of business, and which is distributed to consumers by means other than by inclusion in a newspaper;

(c) "Competitor" means a retail outlet in the person's geographic market area with whom the person in fact competes for sales;

(d) "Offering Price" means the price at which a person represents that goods will be sold or leased, whether stated as a definite sum of money or as a determinate reduction from a reference price;

(e) "Reference Price" means any price, whether stated in dollars, in terms of a percentage or faction, or by any other method, to which a person compares the currently represented offering price of its own goods. Examples of "reference prices" include manufacturer's suggested list or suggested retail prices; a competitor's offering price for the same or similar goods; a price at which the person formerly offered for sale or sold the same or similar goods; and an unspecified price at which the person formerly offered for sale or sold the same or similar goods suggested by the use of terms such as "on sale," "reduced to," "_____% off," or the like;

(f) "Readily Ascertainable Reference Price" means a reference price which is capable of being determined, from a stated offering price, by means of a simple arithmetic computation;

(g) "Similar Goods" mean goods associated with a reference price which are similar in each significant aspect, including size, grade, quality, quantity, ingredients, utility and operating characteristics, to the offered goods.

(6) Unfair or Deceptive Use of Reference Prices: A person engages in conduct which unfair or deceptive in trade or commerce when it represents that goods are available for sale or lease by it at an offering price less than a reference price unless such reference price comes within any one of the following exceptions:

(a) The reference price is stated or readily ascertainable, and is a price at which the person, in the regular course of its business, made good faith sales of the same or similar goods or, if no sales were made, offered in good faith to make sales of the same or similar goods, either:

(A) Within the preceding 30 days; or

(B) At any other time in the past which is identified.

**EXAMPLE:** This exception is intended to identify the most common price comparison -- to a former price charged by the seller himself. The former price must be one which was used in good faith to make or offer to make sales. Good faith is absent if the person raises his price for the purpose of subsequently claiming reductions. Comparisons to "a" legitimate former price are allowed. Thus, if a chain store reduces its price in one or two outlets to meet localized competition, its price throughout the rest of the chain can be used as a reference price. Seasonal comparisons from year-to-year are also permitted.

(b) The reference price is the price at which the person will offer the same or similar goods for sale in the future, provided that:

(A) The reference price is stated or readily ascertainable; and

(B) If the reference price will not be put into effect for more than 90 days after the representation, the effective date of the reference price is stated; and

(C) Such reference price is actually put into effect for the purpose of offering in good faith to make sales.

**EXAMPLE**: This exception permits introductory offering prices and the like.

(c) The reference price is stated or readily ascertainable, and is a price at which an identified or identifiable competitor is or has in the recent regular course of its business offered to make good faith sales of the same or similar goods.

**EXAMPLE**: A person may rely upon the recent advertised price of a competitor for the same or similar goods, if he reasonably believes the competitor was attempting to make sales at that price. Alternatively, a person can "shop" his competitor to determine the latter's recent offering price.

(d) The reference price is stated or readily ascertainable, and is required by federal or Oregon law to be affixed to the goods, and clear disclosure is made in the same representation that all sales of such goods are not necessarily made at such reference price, if such is in fact the case.

**EXAMPLE**: This rule is directed at claimed price reductions from the "sticker prices" of automobiles. If a person makes such a price comparison and in fact similar automobiles are sold at less than the "sticker price," that fact must be disclosed clearly in the same representation.

(e) The reference price is stated in a catalogue, so long as the person employing such reference price includes a statement, printed in a manner which a reader of the catalogue is likely to notice, explaining:

(A) The source of the reference price; and

(B) That the reference prices may not continue to be in effect during the entire life of the catalogue, if such is in fact the case. The requirements of this section are satisfied by a single disclosure statement, which applies to the catalogue as a whole, made in conjunction with the explanation to the reader of how to make a purchase from the catalogue.

(f) The reference price is stated and is a price, such as a manufacturer's list price, which the person can document as having been employed in good faith offers to sell the same or similar goods within his market area during the preceding 30 days.

**EXAMPLE**: Comparing one's current offering price to a manufacturer's list price is valid if the offerer can substantiate that goods have been offered or sold, in good faith, at that list price during the preceding 30 days.

(g) Notwithstanding subsections (6)(a) through (f) of this rule, a person may represent a general price reduction on a variety of merchandise without using a stated or readily ascertainable reference price, so long as:

(A) The amount of reduction is stated expressly, either in terms of a dollar amount or a percentage;

(B) The reduction is from a price or prices at which the person made good faith sales of the same or similar goods at a time in the past which is identified; and

(C) The represented reduction is true as to each item offered for sale.

**EXAMPLE**: This would permit advertising seasonal clearance sales and the like by means of a general representation as to price reductions, without stating specifically either the reference price or the offering price.

**Credits**

Statutory/Other Authority: ORS 646

Stats. Implemented: ORS 646.608(1)(u)

History: 1 AG 16, f. 7-21-76, ef. 9-1-76

Current with rules filed through June 15, 2021. Some sections may be more current; see credits for details.

OAR 137-020-0010, OR ADC 137-020-0010

---

**End of Document**                                © 2021 Thomson Reuters. No claim to original U.S. Government Works.

## <u>CERTIFICATE OF SERVICE</u>

***Susan Clark v. Eddie Bauer LLC and Eddie Bauer Parent LLC***

**Ninth Circuit Case No. 21-35334**

I hereby certify that I electronically filed the foregoing/attached document,

titled **Plaintiff and Appellant Susan Clark's Opening Appellate Brief**, on this

date with the Clerk of the Court for the United States Court of Appeals for the

Ninth Circuit using the Appellate Electronic Filing system.

By doing so, an electronic copy was served on:

Stephanie Sheridan, Esq.
Anthony Anscombe, Esq.
Meegan Brooks, Esq.
STEPTOE & JOHNSON LLP

Marc C. Levy, Esq.
Thomas Arthur Shewmake, Esq.
SEED INTELLECTUAL PROPERTY LAW GROUP LLP

*Counsel for Defendants and Appellees*
*Eddie Bauer LLC and Eddie Bauer Parent LLC*

Signature:  /s/ *Che Corrington*          Date: June 28, 2021

60