**Docket No. 21-35334**

*In the*

# United States Court of Appeals

*For the*

# Ninth Circuit

———◆———

SUSAN CLARK,

for herself and/or on behalf of all others similarly situated,

*Plaintiff-Appellant,*

v.

EDDIE BAUER LLC and EDDIE BAUER PARENT LLC,

*Defendants-Appellees*

———————————

*Appeal from a Decision of the United States District Court for the Western District of Washington,*
*No. 2:20-cv-01106-JCC · Honorable John C. Coughenour*

## ANSWERING BRIEF

MICHAEL VATIS, ESQ.
STEPTOE & JOHNSON LLP
1114 6th Avenue
New York, New York 10036
(212) 506-3927 Telephone

STEPHANIE A. SHERIDAN, ESQ.
ANTHONY J. ANSCOMBE, ESQ.
MEEGAN B. BROOKS, ESQ.
STEPTOE & JOHNSON LLP
One Market Plaza
Spear Tower, Suite 3900
San Francisco, California 94105
(415) 365-6700 Telephone

*Attorneys for Appellees Eddie Bauer LLC and Eddie Bauer Parent LLC*

 

## **CORPORATE DISCLOSURE STATEMENT**

Pursuant to Federal Rule of Appellate Procedure 26.1(a), Defendants and Appellees Eddie Bauer LLC and Eddie Bauer Parent LLC (collectively, "Eddie Bauer") make the following disclosure:

Prior to June 1, 2021, Defendant Appellees each were wholly-owned subsidiaries under common control of PSEB LLC, a Delaware Limited Liability Company. Effective June 1, 2021, Defendant Appellee Eddie Bauer LLC became a privately held limited liability company wholly owned by ABG-AERO, LLC and Simon Blackjack Holdings, LLC, each of which owns 10% or more of its membership interests, while Defendant Appellee Eddie Bauer Parent LLC remains a wholly-owned subsidiary of PSEB LLC.

# **TABLE OF CONTENTS**

REQUEST FOR ORAL ARGUMENT ....................................................1

JURISDICTIONAL STATEMENT ........................................................2

STATEMENT OF THE ISSUES............................................................3

STATEMENT OF THE CASE...............................................................4

    I.     Clark's Purchases from Eddie Bauer ...................................4

    II.    Proceedings Below ..............................................................4

SUMMARY OF ARGUMENT ..............................................................8

ARGUMENT ......................................................................................10

    I.     The Standard of Review ....................................................10

    II.    This Court Should Affirm the District Court's Denial of Clark's Request for Equitable Relief ..............................................12

        A.    Clark Lacks Article III Standing to Seek Injunctive Relief...............................................................................13

            1.    Clark has Not Plausibly Alleged Imminent Harm..........13

            2.    Clark Also Lacks Standing Because Eddie Bauer Stopped Listing Former Prices Well Before this Suit Was Filed....................................................18

        B.    Clark Fails to Plausibly Allege that She Lacks an Adequate Remedy at Law ............................................22

    III.   Clark Failed to Allege Facts Sufficient to Maintain a UTPA Claim.......................................................................29

        A.    A UTPA Claim Based on Deceptive Advertising Requires a Distinct Ascertainable Loss ......................................29

        B.    Clark Fails to Allege any Ascertainable Loss Under the UTPA ......................................................................29

            1.    Clark Has Not Alleged a "Diminished Value" in the Items She Purchased.....................................30

            2.    The District Court Correctly Rejected Clark's "Purchase Price" Theory ...............................38

            3.    *Hinojos v. Kohl's* is Irrelevant to Plaintiff's UTPA Claims ................................................................39

            4.    Clark's "Consumer Demand" Theory Also Fails..........43

IV.    Clark's Lawsuit is Time-Barred .......................................................44

V.    The District Court Did Not Abuse its Discretion in Not *Sua Sponte* Granting Clark Leave to Amend Her Complaint ...................45

CONCLUSION ..............................................................................................49

CERTIFICATE OF COMPLIANCE ..............................................................50

STATEMENT OF RELATED CASES ............................................................51

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*3WL, LLC v. Master Protec., LP*,
  851 Fed. Appx. 4 (9th Cir. 2021)....................................................47, 48

*Adams v. Cole Haan LLC*,
  No. 20-cv-913 JVS, 2020 WL 5648605 (C.D. Cal. Sept. 3, 2020).............24, 26

*Alaska v. United States*,
  201 F.3d 1154 (9th Cir. 2000)........................................................47

*Alaska Wilderness League v. Jewell*,
  637 F. App'x 976 (9th Cir. 2015) ....................................................18

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)..................................................................11

*In re Avandia Litig.*,
  639 F. App'x 866 (3d Cir. 2016) ..................................................37, 41

*Beiersdorfer v. Larose*,
  No. 20-3557, No. 2021 WL 3702211 (6th Cir. Aug. 20, 2021) ........................15

*Belcastro v. Burberry Ltd.*,
  No. 16-CV-1080 (VEC), 2017 WL 744596
  (S.D.N.Y. Feb. 23, 2017)..........................................................36, 42

*Bell Atlantic v. Twombly*,
  550 U.S. 544 (2007)...............................................................10, 11

*Benson v. Fannie May Confections Brands, Inc.*,
  944 F.3d 639 (7th Cir. 2019) ........................................................41

*Bruton v. Gerber Prod. Co.*,
  No. 12-CV-02412-LHK, 2018 WL 1009257
  (N.D. Cal. Feb. 13, 2018) ...........................................................19

*In re California Gas. Spot Mkt. Antitrust Litig.*,
No. 20-CV-03131-JSC, 2021 WL 1176645
(N.D. Cal. Mar. 29, 2021)...............................................................23, 24

*Camarillo v. Carrols Corp.*,
518 F.3d 153 (2d Cir.2008) ................................................................16

*Camasta v. Jos. A. Bank Clothiers, Inc.*,
761 F.3d 732 (7th Cir. 2014) .............................................................36

*Carney v. Adams*,
141 S. Ct. 493 (2020)..........................................................................14

*Carter v. Alcon Labs., Inc.*,
No. 13-CV-00977 AGF, 2014 WL 989002
(E.D. Mo. Mar. 13, 2014) ...................................................................37

*Chavez v. United States*,
683 F.3d 1102 (9th Cir. 2012) ............................................................11

*Chowning v. Kohl's Dept. Stores, Inc.*,
735 F. App'x 924 (9th Cir. 2018) .......................................................36

*City of Los Angeles v. Lyons*,
461 U.S. 95 (1983)........................................................................14, 25

*Clapper v. Amnesty Int'l USA*,
568 U.S. 398, 133 S.Ct. 1138, 185 L.Ed.2d 264 (2013) ....................13

*Clark v. Am. Honda Motor Co., Inc.*,
No. 20-cv-03147-AB, --- F.Supp.3d ---, 2021 WL 1186338
(C.D. Cal. Mar. 25, 2021)...............................................................23, 26

*Corcoran v. CVS Health*,
No. 15-cv-03504-YGR, 2017 WL 1065135
(N.D. Cal. Mar. 21, 2017)....................................................................21

*Cumulus Media, Inc. v. Donovan*,
No. Civ.04–6413–TC, 2004 WL 2958416 (D. Or. Dec. 20, 2004)....................26

*D'Lil v. Best W. Encina Lodge & Suites*,
538 F.3d 1031 (9th Cir.2008) .............................................................15

v

*DaCorta v. AM Retail Group, Inc.*,
 No. 16-CV-01748 (NSR), 2018 WL 557909
 (S.D.N.Y. Jan. 23, 2018)..............................................................................36, 37

*Dahlin v. Under Armour, Inc*.,
 No. CV 20-3706 PA, 2020 WL 6647733 (C.D. Cal. July 31, 2020) ................25

*Daniels v. Arcade, L.P.*,
 477 Fed.Appx. 125 (4th Cir.2012).....................................................................16

*Davidson v. Kimberly-Clark Corp.*,
 889 F. 3d 956 (9th Cir.), *cert denied*,
 139 S. Ct. 640, 202 L. Ed. 2d 492 (2018)...................................16, 17, 19, 27, 28

*Des Roches v. Cal. Physicians' Serv.*,
 320 F.R.D. 486 (N.D. Cal. 2017).......................................................................19

*DiCicco v. PVH Corp.*,
 No. 19 CIV. 11092 (ER), 2020 WL 5237250
 (S.D.N.Y. Sept. 2, 2020).....................................................................................42

*Dotster, Inc. v. Internet Corp.*,
 296 F. Supp. 2d 1159 (C.D. Cal. 2003) .............................................................26

*Drake v. Toyota Motor Corp*.,
 No. 2:20-CV-01421-SB-PLA, 2021 WL 2024860
 (C.D. Cal. May 17, 2021) ............................................................................23, 24

*Ebner v. Fresh, Inc.*,
 No. 13-56644, 2016 WL 5389307 (9th Cir. Sept. 27, 2016).............................10

*Elend v. Basham*,
 471 F.3d 1199 (11th Cir. 2006) .........................................................................15

*Ellis v. Costco Wholesale Corp*.,
 657 F.3d 970 (9th Cir. 2011) .............................................................................19

*Eminence Capital, LLC v. Aspeon, Inc.*,
 316 F.3d 1048 (9th Cir. 2003) ...........................................................................45

*Eurosemillas, S.A. v. Uttarwar*,
  No. 19-16203, 2021 WL 1108611 (9th Cir. Mar. 23, 2021) ............................11

*Franklin v. Gwinnett Cnty. Pub. Sch.*,
  503 U.S. 60 (1992)..........................................................................................22

*Gardner v. Martino*,
  563 F.3d 981 (9th Cir. 2009) .........................................................................46

*Gaston v. Parsons*,
  318 Or. 247 (1994)..........................................................................................44

*Gaylor v. Hamilton Crossing CMBS*,
  582 Fed. Appx. 576 (6th Cir. 2014)................................................................16

*Gerboc v. ContextLogic, Inc.*,
  867 F.3d 675 (6th Cir. 2017) .........................................................................36

*Gibson v. Jaguar Land Rover N. Am., LLC*,
  No. 20-CV-769-CJC, 2020 WL 5492990 (C.D. Cal. Sep. 9, 2020)...................23

*Gilberto v. Walgreen Co.*,
  No. 3:18-cv-01003-AC, 2020 WL 1890538 (D. Or. Apr. 16, 2020) .................33

*Gilberto v. Walgreen Co.*,
  No. 3:18-cv-01003-AC, 2019 WL 9441666 (D. Or. Oct. 20, 2019)..................33

*Guzman v. Polaris Industries Inc.*,
  No. 819CV01543FLAKESX, 2021 WL 2021454
  (C.D. Cal. May 12, 2021) ...............................................................................24

*Harty v. Greenwich Hosp. Group, LLC*,
  536 Fed. Appx. 154 (2d Cir. 2013)............................................................15, 16

*Haskins v. Symantec Corp.*,
  654 F. App'x 338 (9th Cir. 2016)....................................................................21

*Hennessey v. Kohl's Corp.*,
  No. 4:19 CV 1866 DDN, 2020 WL 870982
  (E.D. Mo. Feb. 21, 2020)................................................................................37

*Hines v. Youseff*,
  914 F.3d 1218 (9th Cir. 2019) ........................................................................10

*Hinojos v. Kohl's Corp.*,
    718 F.3d 1098 (9th Cir. 2013) ........................................................39, 40, 41, 42

*Hip Hop Bev. Corp. v. Michaux*,
    729 F. App'x. 599 (9th Cir. 2018) ........................................................44

*Holloway v. Clackamas River Water*,
    739 Fed. 868 (9th Cir. 2018) ................................................................11

*Ice v. Hobby Lobby Stores, Inc.*,
    No. 1:14CV744, 2015 WL 5731290 (N.D. Ohio Sept. 29, 2015)......................36

*Irving Firemen's Relief & Ret. Fund v. Uber Techs., Inc.*,
    998 F.3d 397 (9th Cir. 2021) ................................................................12

*Johnson v. Jos. A. Bank Clothiers*,
    No. 2:13–cv–756, 2014 WL 4129576 (S.D. Ohio 2014) .......................36, 37, 42

*Joseph v. Carnes*,
    566 Fed. Appx. 530 (7th Cir. 2014)........................................................26

*Julian v. TTE Tech., Inc.*,
    No. 20-CV-02857-EMC, 2020 WL 6743912
    (N.D. Cal. Nov. 17, 2020)....................................................................23

*Kasey v. Molybdenum Corp. of Am.*,
    336 F.2d 560 (9th Cir. 1964) ................................................................44

*Kearney v. Equilon Enterprises, LLC*,
    65 F.Supp.3d 1033 (D. Or. 2014) ..........................................................11

*Kearns v. Ford Motor Co.*,
    567 F.3d 1120 (9th Cir. 2009) ..........................................................10, 11

*Kennedy v. Floridian Hotel, Inc.*,
    998 F.3d 1221 (11th Cir. 2021) ............................................................16

*Kim v. Carter's Inc.*,
    598 F.3d 362 (7th Cir. 2010) ................................................................36

*Kreisler v. Second Ave. Diner Corp.*,
    731 F.3d 184 (2d Cir. 2013) ................................................................15

*Krommenhock v. Post Foods, LLC*,
No. 16-CV-4958-WHO, 2020 WL 6074107
(N.D. Cal. Sep. 29, 2020) ....................................................................23

*Kwikset Corp. v. Superior Ct. (Benson)*,
51 Cal. 4th 310 (Cal. 2011).............................................................40, 41

*Lanovaz v. Twinings N. Am., Inc.*,
726 F. App'x. 590 (9th Cir. 2018) ......................................................14

*Leigh-Pink v. Rio Properties, LLC*,
989 F.3d 735 (9th Cir. 2021) ........................................................40, 41

*Levin v. Harleston*,
966 F.2d 85 (2d Cir. 1992) ...................................................................19

*Lofton v. Verizon Wireless (VAW) LLC*,
586 F. App'x 420 (9th Cir. 2014) ......................................................19

*Loo v. Toyota Motor Sales, USA, Inc.*,
No. 8:19-cv-00750-VAP, 2020 WL 4187918
(C.D. Cal. Apr. 10, 2020) .....................................................................24

*Loving v. U.S.*,
125 F.3d 862 (10th Cir. 1997) .............................................................15

*Lujan v. Defenders of Wildlife*,
504 U.S. 555 (1992).............................................................13, 14, 15

*In re MacBook Keyboard Litig.*,
No. 5:18-cv-02813-EJD, 2020 WL 6047253
(N.D. Cal. Oct. 13, 2020)......................................................................24

*Mayweathers v. Woodford*,
393 Fed. Appx. 425 (9th Cir. 2010)....................................................18

*McGee v. S-L Snacks Natl.*,
982 F.3d 700 (9th Cir. 2020) ...............................................................33

*Meyer v. Sprint Spectrum L.P.*,
45 Cal. 4th 634 (2009) ..........................................................................28

ix

*Mikhlin v. Johnson & Johnson*,
   No. 14-cv-881 (RLW), 2014 WL 6084004
   (E.D. Mo. Nov. 13, 2014) ......................................................................37

*Morales v. Trans World Airlines, Inc.*,
   504 U.S. 374 (1992) ..............................................................................22

*Mulder v. Kohl's Dep't Stores, Inc.*,
   No. 15-11377-FDS, 2016 WL 393215 (D. Mass., Feb. 1, 2016) .....................37

*Mulder v. Kohl's Dep't Stores, Inc.*,
   865 F.3d 17 (1st Cir. 2017) ....................................................................36

*Mullins v. Premier Nutrition Corp.*,
   No. 13-CV-01271-RS, 2018 WL 510139 (N.D. Cal. Jan. 23, 2018) ...............24

*N.L.R.B. v. Don Burgess Const. Corp.*,
   596 F.2d 378 (9th Cir. 1979) .................................................................44

*N.W. Nat. Ins. Co. of Milwaukee, Wisconsin v. Joslyn*,
   53 F.3d 331 (6th Cir. 1995) ...................................................................45

*Naimi v. Starbucks Corp.*,
   798 Fed. Appx. 67 (9th Cir. 2019) .........................................................41

*Naruto v. Slater*,
   888 F.3d 418 (9th Cir. 2018) .................................................................10

*O'Shea v. Littleton*,
   414 U.S. 488 (1974) ........................................................................13, 25

*Oregon Pub. Employees Ret. Fund v. Apollo Group Inc.*,
   774 F.3d 598 (9th Cir. 2014) .................................................................11

*Paul v. Providence Health System-Oregon*,
   237 Or. App. 584 (Or. App. 2010) .........................................................31

*Pearson v. Philip Morris, Inc.*,
   358 Or. 88 (2015) ........................................................................*passim*

*Pearson v. Philip Morris, Inc.*,
   361 P.3d 3 (Or. 2015) .............................................................................7

*Philips v. Ford Motor Co.*,
726 F. App'x 608 (9th Cir. 2018) ...............................................................23, 25

*Philips v. Ford Motor Co.*,
726 Fed. Appx. 608 (9th Cir. 2018).....................................................................24

*Rhynes v. Stryker Corp.*,
No. 10–5619 SC, 2011 WL 2149095 (N.D. Cal. May 31, 2011).......................24

*Robey v. PVH Corp.*,
495 F.Supp.3d 311 (S.D.N.Y. 2020) ...................................................................42

*State ex rel. Rosenblum v. Johnson & Johnson*,
275 Or. App. 23 (Or. App. 2015) ........................................................................34

*Sagastume v. Psychemedics Corp.*,
No. 20-cv-6624DSFGJSX, 2020 WL 8175597
(C.D. Cal. Nov. 30, 2020)....................................................................................24

*Salem Sand & Gravel Co. v. City of Salem*,
260 Or. 630 (1971)...............................................................................................44

*Savage v. Glendale Union High School*,
343 F.3d 1036 (9th Cir. 2003) .............................................................................19

*Schaller v. U.S. Soc. Sec. Admin.*,
844 Fed. Appx. 566 (3d Cir. 2021) (unpublished) ............................................14

*Schell v. OXY USA, Inc.*,
822 F.Supp.2d 1125 (D. Kan. 2011)....................................................................26

*Scherr v. Marriott Int'l, Inc.*,
703 F.3d 1069 (7th Cir.2013) ..............................................................................16

*Schertzer v. Samsonite Co. Stores, LLC*,
No. 19-cv-639 JLS, 2020 WL 4281990 (S.D. Cal. Feb. 25, 2020)....................23

*Schroeder v. United States*,
569 F.3d 956 (9th Cir. 2009) ...............................................................................23

*Scott v. Western Int. Sales, Inc.*,
267 Or. 512, 517 P.2d 661 (1973) .......................................................................40

xi

*Shaulis v. Nordstrom Inc.*,
865 F.3d 1 (1st Cir. 2017)....................................................................36

*Shay v. Apple Inc.*,
No. 20-cv-1629-GPC(BLM), 2021 WL 1733385
(S.D. Cal. May 3, 2021)........................................................................24

*Silva v. Unique Bev. Co.*, *LLC*,
No. 3:17-cv-00391-HZ, 2017 WL 2642286 (D. Or. June 15, 2017).................33

*Simonsen v. Sandy River Auto, LLC*,
290 Or. App. 80 (2018)..........................................................................35

*Small v. Lorillard Tobacco Co.*,
94 N.Y.2d 43, 698 N.Y.S.2d 615, 720 N.E.2d 892 (1999) ...............................41

*Sonner v. Premier Nutrition Corp.*,
971 F.3d 834 (9th Cir. 2020) ...........................................................22, 23, 24, 25

*Steel Co. v. Citizens for a Better Env't*,
523 U.S. 83 (1998)...................................................................................19

*Steger v. Franco, Inc.*,
228 F.3d 889 (8th Cir.2000) .................................................................16

*Stover v. Experian Holdings, Inc.*,
978 F.3d 1082 (9th Cir. 2020) .............................................................47

*Sturgis v. Asset Acceptance, LLC*,
No. 3:15-CV-00122-AC, 2016 WL 223708 (D. Or. Jan. 19, 2016)..................44

*Summers v. Earth Island Inst.*,
555 U.S. 488, 129 S.Ct. 1142, 173 L.Ed.2d 1 (2009)....................................13, 14

*Tandy v. City of Wichita*,
380 F.3d 1277 (10th Cir.2004) .............................................................16

*TRW, Inc. v. F.T.C.*,
647 F.2d 942 (9th Cir. 1981) ...............................................................18

*Waldron v. Jos. A. Bank Clothiers, Inc.*,
No. 12-CV-02060 (DMC), 2013 WL 12131719
(D.N.J. Jan. 28, 2013) ...........................................................................36

xii

*Walters v. Vitamin Shoppe Indus., Inc.*,
    701 F. App'x. 667 (9th Cir. 2017) ............................................... 38, 39

*Watkins v. MGA Ent., Inc*.,
    No. 21-CV-00617-JCS, --- F.Supp.3d ----, 2021 WL 3141218
    (N.D. Cal. July 26, 2021) .......................................................... 23

*Wessel v. City of Albuquerque*,
    299 F.3d 1186 (10th Cir. 2002) ............................................... 19

*Williams v. Apple, Inc.*,
    No. 19-CV-04700-LHK, 2020 WL 6743911
    (N.D. Cal. Nov. 17, 2020) ......................................................... 27

*Zaback v. Kellogg Sales Co*.,
    No. 20-00268 BEN MSB, 2020 WL 6381987
    (S.D. Cal. Oct. 29, 2020) .......................................................... 23

**Statutes**

Cal. Civ. Code §1780 ....................................................................... 28

Or. Rev. Stat. Ann. § 646.638 .............................................. 28, 29, 44

Or. Rev. Stat. § 31.710 ..................................................................... 40

Or. Rev. Stat. § 646.885 ............................................................. 6, 21

**Other Authorities**

16 CFR §233.2(c) ............................................................................ 20

Wright & Miller, 11A Fed. Prac. & Proc. Civ. § 2944 (3d ed.) ............. 26

Better Business Bureau Code of Advertising §2.1.3, *available at*
    https://www.bbb.org/code-of-
    advertising#Comparative_Price_Value_And_Savings ..................... 20

U.S. Constitution Article III .......................................................... *passim*

## **REQUEST FOR ORAL ARGUMENT**

Eddie Bauer respectfully requests oral argument pursuant to Rule 34(a) of the Federal Rules of Appellate Procedure on the ground that argument of counsel may contribute to final resolution of the dispositive issues.

## **JURISDICTIONAL STATEMENT**

The District Court had subject matter jurisdiction pursuant to 28 U.S.C. § 1332(d). The District Court entered final judgment disposing of all claims in favor of Eddie Bauer on April 1, 2021. No post-judgment motions were filed. Plaintiff Susan Clark ("Clark") filed her Notice of Appeal on April 29, 2021.

This Court has appellate jurisdiction pursuant to 28 U.S.C. § 1291. For the reasons set forth below, however, Clark has not established subject matter jurisdiction over her claims for injunctive relief because she has not demonstrated that she has standing to seek such relief under Article III of the U.S. Constitution.

## **STATEMENT OF THE ISSUES**

1.     Does Clark have Article III standing to seek injunctive relief where Eddie Bauer has ceased the pricing practices at issue, and also where Clark does not allege specific facts showing that future harm is "certainly impending"?

2.     Did the District Court properly dismiss Clark's claims for equitable relief in light of her failure to allege why damages would not provide an adequate remedy for either past or future injuries?

3.     Did the District Court properly dismiss Clark's claims under the Oregon Unlawful Trade Practices Act ("UTPA"), where Clark makes no allegation that the items she purchased were different from what she expected to buy or worth less than what she paid?

4.     Did the District Court properly dismiss Clark's claims under the UTPA, where Clark admits that her purchases occurred outside the one-year statute of limitations period and does not allege any facts as to why she could not have reasonably discovered the alleged misconduct sooner?

5.     Did the District Court properly deny Clark leave to amend her UTPA claims, where leave to amend would be futile because Clark does not have standing to seek equitable relief and cannot allege "ascertainable loss"?

## STATEMENT OF THE CASE

**I.    Clark's Purchases from Eddie Bauer**

Clark purchased three items from Eddie Bauer outlet stores in Oregon: on March 22, 2017, she purchased a Men's Long Sleeve Fast Fleece ¼ Zip ("Fleece Zip") and Women's Jacket Microlight Down Jacket ("Microlight Jacket"), and on April 5, 2018, she returned the Microlight Jacket and applied her store credit toward the purchase of a Women's MicroTherm StormDown Hooded Jacket ("StormDown Jacket").  Excerpts of Record ("ER") at 26–27 ¶¶ 46–64.  All three items were offered for 50% off the ticketed price.  *Id.*  For example, the Fleece Zip was 50% off the ticketed price of $39.99, such that Clark paid $19.99 for the item.  *Id.*

The gravamen of Clark's claims is that the three items were "Eddie Bauer Outlet-exclusive items" not "sold anywhere else," and that their ticketed prices were "false because Eddie Bauer rarely, if ever, offered the products at the advertised list price."  ER–16 ¶ 5; ER–28–29 ¶¶ 56, 66.  Clark, however, does not allege that the items she purchased were in any way different from what she had expected, or that they were not worth the amounts that she paid for them.

**II.    Proceedings Below**

Clark filed this lawsuit on July 16, 2020 in the United States District Court for the Western District of Washington.  She brings a putative class action asserting a single claim under the UTPA on behalf of "[a]ll persons who, within the applicable

4

limitations period, purchased from an Eddie Bauer Outlet Store located in the State of Oregon one or more products which were advertised or promoted by displaying or disseminating a reference price or discount." ER–31 ¶ 79. Clark seeks statutory damages of $200 per alleged violation or actual damages under the UTPA, plus punitive damages, for every putative class member. ER–37 ¶ 111. She also seeks equitable relief, including disgorgement or restitution and a permanent injunction. ER–40–41.

Clark admits that the UTPA has a one-year statute of limitations, and that she did not make any purchases from Eddie Bauer within the year prior to filing the lawsuit. ER–38 ¶ 115. She claims, however, that she can still bring claims under the "discovery rule"—which can toll a limitations period until the plaintiff knows or should have known of the alleged fraud—because she did not "learn" of Eddie Bauer's allegedly deceptive conduct until March 13, 2020. ER–30 ¶ 73, ER–31 ¶ 79(a), ER–33 ¶ 88, ER–38 ¶¶ 115–118. She fails to allege how she "learned" of Eddie Bauer's pricing practices, much less why she could not have discovered Eddie Bauer's allegedly deceptive practices sooner. Clark asserts that the class period should extend backwards, in perpetuity, because "almost" all class members are still "not aware" of the allegedly deceptive practices at issue. ER–30 ¶ 73.

Eddie Bauer moved to dismiss Clark's Complaint under Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6) on August 25, 2020. Supplemental Excerpts of

Record ("SER") at 3 (the "Motion" or "Motion to Dismiss"). On April 1, 2021, the District Court granted Eddie Bauer's Rule 12(b)(6) Motion and dismissed Clark's Complaint without leave to amend. ER–4. The Court held that Clark had standing to sue, both in general and with respect to her claims for injunctive relief. ER–6–9. As to injunctive relief, the Court held that even though Eddie Bauer had stopped advertising former prices and started referring to "Comparable Value" prices instead, Clark was still at risk of future injury because "[a]n inflated reference price, regardless of the source, may still cause a consumer such as Ms. Clark confusion in that she may still believe she is getting a deal when, in fact, she is not." ER–9. The District Court further opined that Eddie Bauer's new "Comparable Value" pricing does not satisfy Or. Rev. Stat. § 646.885(2), which it summarized as requiring retailers to "provide the *origin* of any such reference price." ER–8 (emphasis in original).

Nevertheless, the District Court held that Clark failed to state a claim under the UTPA for two reasons:

First, the District Court held that Clark's claims were time-barred. The District Court refused to apply the "discovery rule," because "the complaint fails to include the circumstances associated with her discovery." ER–11.

Second, the District Court held that Clark did not allege an ascertainable loss, an essential element of a claim under the UTPA. The District Court analyzed the

6

two forms of loss alleged in the Complaint—"(1) the monetary loss from purchasing a product that she would not have otherwise purchased but for Eddie Bauer's allegedly misleading pricing and (2) the loss of the bargain she thought she was receiving"—under *Pearson v. Philip Morris, Inc.*, 361 P.3d 3, 10 (Or. 2015), which concerned the same two theories of loss. ER–11–13. The District Court held that Clark could not establish loss under either theory because Clark "fails to explain how [Eddie Bauer's allegedly deceptive reference pricing] amounts to a false representation as to the 'character or quality' of the garments which, as discussed in *Pearson*, is necessary to establish reliance on the allegedly misleading claims." ER–13.

The District Court also held that Clark could not pursue equitable relief (disgorgement, restitution, or injunctive relief) because she was pursuing statutory damages for the exact same conduct, and had failed to explain why damages would not provide an adequate remedy for her alleged injury. ER–10.

Although the District Court noted that the statute of limitations issue "could possibly be cured through an amended complaint," the District Court granted Eddie Bauer's Motion to Dismiss without leave to amend because "any amendment would be futile given [Clark's] inability to plead an ascertainable loss." ER–11, ER–13–14.

Judgment for Eddie Bauer was entered that same day.

7

## SUMMARY OF ARGUMENT

In order to have Article III standing to seek injunctive relief, Clark must plead facts showing that she faces a real and immediate threat of suffering the same injury in the future. But Clark pleads no facts plausibly suggesting that she will shop at an Eddie Bauer outlet in Oregon in the near future and see false reference prices that will cause her to buy items that she would not otherwise buy. Moreover, even if she had made such allegations, Eddie Bauer offered unrebutted evidence below that it has ceased using former prices in its outlet stores, so she has no risk of being subjected to the same alleged deception. Eddie Bauer's current use of "Comparable Value" reference prices—a practice cited approvingly by the Federal Trade Commission and Better Business Bureau—has not been challenged by Clark, and so is not part of this case.

Clark's prayer for injunctive relief, in addition to her prayers for restitution and disgorgement, must also be dismissed because she has not pled facts to show that damages would fail to fully compensate her for her alleged injury. Contrary to Clark's assumption, a plaintiff seeking injunctive relief must show not only that damages are inadequate to compensate for past injury, but also that any future injury is not reparable through an award of damages. The "informational injury" Clark alleges is not cognizable under the UTPA, which provides a private right of action only to redress an ascertainable loss of money or property.

Clark also fails to state a claim under the UTPA, because she has not alleged that Eddie Bauer's purported misrepresentations caused her to sustain an ascertainable loss. The District Court correctly explained that a plaintiff cannot establish ascertainable loss "based solely on a plaintiff's failure to get as good of a deal as the plaintiff anticipated." ER–13. Instead, she must allege facts showing "[s]ome misstatement as to a characteristic, quality, or feature of the product." *Id*. Clark has failed to allege any such facts.

Clark alleges that she visited Eddie Bauer's outlet, found clothing items she wanted, and bought them for an agreed upon price. She does not claim the items are damaged or defective, and does not dispute that they are worth the amounts she paid. Where, as here, Clark makes no claim that the goods she received were worth less than what she paid, or that the products differed from what she expected, she cannot establish ascertainable loss.

The statute of limitations provides an independent basis to affirm dismissal. It is undisputed that the UTPA has a one-year statute of limitations, and that Clark did not make a purchase within this period. Clark argues that she can trigger the "discovery rule" merely by specifying the date that she learned of the alleged misconduct, without any other facts. Appellant's Opening Brief ("AOB") at 9. This is incorrect. Under Oregon law and Rule 9(b), Clark was required to allege factual

support for her claim that the discovery rule applies. Her failure to do so here renders her claims time-barred, which is an independent basis for dismissal.

Finally, the Court should affirm the District Court's denial of leave to amend the Complaint. Any amendment to the Complaint would be futile because Clark has not suffered any ascertainable loss and any non-economic loss she may allege is not cognizable under the UTPA. No amendment could cure these defects in her Complaint.

## **ARGUMENT**

### I. The Standard of Review

This Court reviews dismissals under Rule 9(b), Rule 12(b)(1), and Rule 12(b)(6) *de novo*. *See Naruto v. Slater*, 888 F.3d 418, 421 (9th Cir. 2018); *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009). Denial of leave to amend is reviewed for abuse of discretion. *Hines v. Youseff*, 914 F.3d 1218, 1227 (9th Cir. 2019). The Court may affirm the dismissal on any ground supported by the record below, even if it was not the basis for the district court's opinion. *Ebner v. Fresh, Inc.*, No. 13-56644, 2016 WL 5389307, at *2 (9th Cir. Sept. 27, 2016).

At the most basic level, "Rule 8(a)(2) ... requires a showing, rather than a blanket assertion, of entitlement to relief." *Bell Atlantic v. Twombly*, 550 U.S. 544, 556 n.3 (2007) (internal citations and quotations omitted). In ruling on a motion to dismiss for failure to state a claim, a court should follow a "two-pronged approach":

(1) first, discount conclusory statements, which are not presumed to be true; and then, assuming any well-pleaded factual allegations are true, (2) determine "whether they plausibly give rise to entitlement to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 678–80 (2009) (citing *Twombly*, 550 U.S. at 551); *see also Chavez v. United States*, 683 F.3d 1102, 1108 (9th Cir. 2012). It is not enough for allegations to be "merely consistent with" a defendant's liability. *Twombly*, 550 U.S. at 547, 555. Instead, they must "be enough to raise a right to relief above the speculative level." *Id*. Determining whether a complaint states a plausible claim for relief is a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. *Iqbal*, 556 U.S. at 679.

Clark's UTPA claim is also subject to Rule 9(b), which requires her to plead the circumstances constituting the alleged fraud with particularity. *Kearney v. Equilon Enterprises, LLC*, 65 F.Supp.3d 1033, 1041–43 (D. Or. 2014); *see also Kearns v. Ford Motor Co*., 567 F.3d 1120, 1125 (9th Cir. 2009) (Rule 9(b) applies to consumer protection claims that "sound in fraud"). To satisfy Rule 9(b), "a plaintiff must plead and prove in full, factually and specifically, all of the elements of the cause of action." *Eurosemillas, S.A. v. Uttarwar*, No. 19-16203, 2021 WL 1108611, at *1 (9th Cir. Mar. 23, 2021) (quotation omitted); *see also Holloway v. Clackamas River Water*, 739 Fed. 868, 869 (9th Cir. 2018); *Oregon Pub. Employees Ret. Fund v. Apollo Group Inc.*, 774 F.3d 598, 605 (9th Cir. 2014). "Because

11

allegations of fraud inescapably carry a degree of moral turpitude, Rule 9(b) imparts a heightened note of seriousness, requiring a greater degree of pre-discovery investigation by the plaintiff, followed by the plaintiff's required particular allegations, thereby protecting a defendant's reputation from frivolous and unfounded allegations." *Irving Firemen's Relief & Ret. Fund v. Uber Techs., Inc.*, 998 F.3d 397, 404 (9th Cir. 2021) (affirming dismissal where plaintiff failed to allege damage with sufficient particularity).

## II. This Court Should Affirm the District Court's Denial of Clark's Request for Equitable Relief

Contrary to Clark's initial argument, the District Court correctly held that Clark has not pled an entitlement to equitable relief because she has not alleged why damages would not provide adequate relief for either past or future injuries ostensibly caused by Eddie Bauer. This issue is discussed in Section II.B, below.

There is an additional, independent reason to affirm the District Court's dismissal of Clark's claim to injunctive relief, which should be addressed as a threshold matter since it pertains to the Court's subject matter jurisdiction: Clark lacks standing under Article III of the Constitution to seek such relief, since her allegations of future injury are purely conjectural and do not show that any such injury is imminent or "certainly impending." Moreover, months before this suit was filed, Eddie Bauer ceased the pricing practices that Clark seeks to enjoin, rendering any future injury even more speculative and unlikely.

12

## A.    Clark Lacks Article III Standing to Seek Injunctive Relief

### 1.    Clark has Not Plausibly Alleged Imminent Harm

A party seeking to invoke the Court's jurisdiction bears the burden of demonstrating that it has standing to sue. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992). In the context of a request for injunctive relief, the "threatened injury must be *certainly impending* to constitute injury in fact" and "allegations of *possible* future injury are not sufficient." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409, 133 S.Ct. 1138, 185 L.Ed.2d 264 (2013) (internal quotation marks and alteration omitted) (emphases added); *see also Summers v. Earth Island Inst.*, 555 U.S. 488, 493, 129 S.Ct. 1142, 173 L.Ed.2d 1 (2009) (the injury must be "actual and imminent, not conjectural or hypothetical"); *City of Los Angeles v. Lyons*, 461 U.S. 95, 102, 111 (1983); *O'Shea v. Littleton*, 414 U.S. 488, 496 (1974) (plaintiff seeking injunction must show a "real and immediate threat of repeated injury").

In the landmark case on this issue, *Lujan v. Defenders of Wildlife*, the Supreme Court considered whether plaintiffs had standing to seek an injunction against the funding of activities that threatened certain species' habitats. The Supreme Court held that the plaintiffs' allegation that they would visit affected project sites in Egypt and Sri Lanka "some day" did not meet the requirement that their injury be "imminent." *Id*. at 563–64 (their "profession of an inten[t] ... is simply not enough."). Moreover, even the fact that the plaintiffs had traveled to these areas

13

previously was not enough, because "[p]ast exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief ... if unaccompanied by any continuing, present adverse effects." *Id.* (*quoting Lyons*, 461 U.S., at 102, 103 S.Ct., at 1665).

Since *Lujan*, the Supreme Court has repeatedly made clear that a plaintiff seeking an injunction to prevent future injury must describe "concrete plans," and not merely a "vague desire," to engage in conduct that may expose the plaintiff to injury. *Summers v. Earth Island Inst.*, 555 U.S. 488, 496, 129 S.Ct. 1142 (2009) (*quoting Lujan*) (plaintiff could not establish standing merely by alleging that she "want[s] to" return to the forest); *Carney v. Adams*, 141 S. Ct. 493, 502 (2020) ("a bare statement of intent alone" is insufficient).

Applying this well-established principle, courts across the country have held that boilerplate allegations about plaintiffs' intent to engage in activity that might make them vulnerable to alleged injury are insufficient to show that such injury is imminent and "certainly impending." *See, e.g.*, *Lanovaz v. Twinings N. Am., Inc.*, 726 F. App'x. 590, 591 (9th Cir. 2018) (no standing despite plaintiff's allegation that she would "consider buying" product in the future); *Schaller v. U.S. Soc. Sec. Admin.*, 844 Fed. Appx. 566, 571–72 (3d Cir. 2021) (unpublished) (plaintiff lacked standing to challenge SSA policy based on claim that it would injure her in the case of future travel where her "alleged trip and alleged permanent move are

14

hypotheticals that may never materialize."); *Beiersdorfer v. Larose*, 20-3557, No. 2021 WL 3702211, at \*7 (6th Cir. Aug. 20, 2021) ("generalized statements of future intent do not suffice to ground standing."); *Loving v. U.S.*, 125 F.3d 862 (10th Cir. 1997) ("Although plaintiff 'makes clear his intent to pursue the information made illegal by the [Act],' and states that he 'has used or will use the information which will be subject to the restraints imposed by the [Act],' he fails to allege with any specificity or particularity any conduct he may undertake which would subject him to a credible threat of prosecution."); *Elend v. Basham*, 471 F.3d 1199, 1208 (11th Cir. 2006) ("Plaintiffs' avowed intention to protest in a similar manner in the future is akin to the plaintiff in *Lujan* who declared, 'I intend to go back to Sri Lanka,' but confessed that she had no current plans").

In the context of claims under the Americans with Disabilities Act (ADA), this Court and other Circuits have consistently required plaintiffs seeking injunctive relief to allege facts plausibly suggesting a likelihood that they would soon return to the defendant's establishment in order to establish Article III standing—such as the frequency of past visits, the proximity of the defendant's establishment to the plaintiff's home, or a concrete plan to visit the defendant's establishment at a specific time in the future. Clark has alleged nothing of the sort here. *See, e.g., D'Lil v. Best W. Encina Lodge & Suites*, 538 F.3d 1031, 1037 (9th Cir.2008); *Kreisler v. Second Ave. Diner Corp.*, 731 F.3d 184, 188 (2d Cir. 2013); *Harty v. Greenwich Hosp.*

15

*Group, LLC*, 536 Fed. Appx. 154, 155 (2d Cir. 2013); *Scherr v. Marriott Int'l, Inc.*, 703 F.3d 1069, 1074 (7th Cir.2013); *Daniels v. Arcade, L.P.,* 477 Fed.Appx. 125, 130 (4th Cir.2012); *Camarillo v. Carrols Corp.*, 518 F.3d 153, 157–58 (2d Cir.2008); *Gaylor v. Hamilton Crossing CMBS*, 582 Fed. Appx. 576, 580–81 (6th Cir. 2014); *Tandy v. City of Wichita*, 380 F.3d 1277, 1284 (10th Cir.2004); *Steger v. Franco, Inc.*, 228 F.3d 889, 892 (8th Cir.2000); *Kennedy v. Floridian Hotel, Inc.*, 998 F.3d 1221, 1234 (11th Cir. 2021).

Clark's bare, conclusory, and conditional assertion that she "would shop at one of Eddie Bauer's Oregon Outlet Stores again if she could have confidence regarding the truth of Eddie Bauer's prices" (ER–30 ¶ 75) is plainly insufficient to plausibly establish that Clark is at risk of imminent future injury that is certainly impending. Indeed, according to the Complaint, Clark has visited Eddie Bauer outlets only twice in the last four years—once to shop, and once to return one of the previously purchased items and use the credit to buy something else. ER–5; ER–26 ¶ 46; ER–28 ¶ 58. She does not allege that she is a frequent Eddie Bauer customer; she does not allege that she lives near an Eddie Bauer outlet; and she does not profess any concrete plans to visit an Eddie Bauer outlet in the near future.

*Davidson v. Kimberly-Clark Corp.*, 889 F. 3d 956 (9th Cir.), *cert denied*, 139 S. Ct. 640, 202 L. Ed. 2d 492 (2018), on which Clark relies to support her allegation of future "informational injury," underscores this fatal flaw in Clark's Complaint.

16

There, the Ninth Circuit reiterated the principle that injunctive relief is only appropriate where the plaintiff "adequately alleged that she faces an imminent or actual threat of future harm caused by [the defendant's] allegedly false advertising." *Id*. at 970. Unlike Clark, the plaintiff in *Davidson* alleged several facts that the Court found rendered it just plausible enough that she would be subjected to imminent injury if an injunction were not issued to prevent the Kimberly-Clark Corp. from falsely advertising that its wipes were "flushable." The plaintiff there alleged not only that she "'continues to desire to purchase wipes that are suitable for disposal in a household toilet'" and "'would purchase truly flushable wipes manufactured by [Kimberly-Clark] if it were possible,'" but also that she "'regularly visits stores . . . where [Kimberly-Clark's] "flushable" wipes are sold'" and "is continually presented with Kimberly-Clark's flushable wipes packaging but has 'no way of determining whether the representation "flushable" is in fact true.'" *Id*. at 970–71. Although the Court "recognize[d] it is a close question," it found that these allegations sufficed to show an imminent threat of future harm. *Id*. at 971.

If the allegations in *Davidson* created a "close question," then Clark's claims clearly fall short of the line. She does not claim that she regularly visits Eddie Bauer outlet stores; indeed, the Complaint indicates that she rarely shopped there even

before learning about Eddie Bauer's alleged pricing practices. Nor does she allege that she is continually presented with Eddie Bauer's outlet prices, or any other Eddie Bauer advertising for that matter. She does not allege *any* facts whatsoever that would render it even minimally plausible that, without an injunction, she would imminently be faced with deceptive Eddie Bauer pricing that would subject her to the alleged "informational injury" she posits. Her conclusory assertion that she "would" visit an Eddie Bauer again at some indeterminate time "if" she could trust its advertising is clearly insufficient to establish an imminent, clearly impending injury.

### 2. Clark Also Lacks Standing Because Eddie Bauer Stopped Listing Former Prices Well Before this Suit Was Filed

Moreover, the conduct that Clark seeks to enjoin *has already ceased*; Eddie Bauer terminated its reference to former prices seven months before the Complaint was filed. Where the conduct at issue has ended, a plaintiff plainly cannot establish that the risk of injury from that conduct is imminent and certainly impending. *See, e.g.*, *Alaska Wilderness League v. Jewell*, 637 F. App'x 976, 979–80 (9th Cir. 2015) (no standing where oil company "announced that it would 'cease further exploration activity . . . for the foreseeable future'"); *Mayweathers v. Woodford*, 393 Fed. Appx. 425, 427 (9th Cir. 2010) (no standing for injunctive relief where prison changed policy at issue); *TRW, Inc. v. F.T.C.*, 647 F.2d 942, 953–54 (9th Cir. 1981) (FTC abused its discretion in issuing cease and desist order where defendant implemented

procedures to ensure future compliance); *Lofton v. Verizon Wireless (VAW) LLC*, 586 F. App'x 420, 421 (9th Cir. 2014); *Wessel v. City of Albuquerque*, 299 F.3d 1186, 1194 (10th Cir. 2002) (affirming refusal to grant injunction after defendant union corrected deficiencies in the "fair share" notice of payments required from plaintiff non-union employees).[1] Nothing in *Davidson* "suggests the Ninth Circuit created a freestanding right to seek injunctive relief based on conduct that has ended." *Bruton v. Gerber Prod. Co.*, No. 12-CV-02412-LHK, 2018 WL 1009257, at *7 (N.D. Cal. Feb. 13, 2018); *see also* AOB at 22; SER–57.

Here, Eddie Bauer submitted a corporate affidavit stating that the company replaced the practice of referring to former prices at issue with references to "Comparable Value" prices seven months before this suit was filed.[2] SER–40 ¶¶ 9– 10. Eddie Bauer's "Comparable Value" prices are based on prices of competing

---

[1] *See also Levin v. Harleston*, 966 F.2d 85, 90 (2d Cir. 1992); *Des Roches v. Cal. Physicians' Serv.*, 320 F.R.D. 486, 510–11 (N.D. Cal. 2017) (no standing where defendants no longer used the challenged policy and plaintiffs failed to demonstrate a "sufficient likelihood" defendants would return to the challenged policy); *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 109 (1998) ("[i]t is an immense and unacceptable stretch" to use the voluntary cessation exception to mootness as a substitute for the plaintiff's burden to establish a risk of future injury); Cf. *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 979 (9th Cir. 2011) (finding standing "because Costco's challenged promotion practices for GM and AGM positions have not changed").

[2] In a factual challenge to Article III standing, a defendant may dispute the facts pled in the complaint by supplying evidence that demonstrates the lack of subject matter jurisdiction. *Savage v. Glendale Union High School*, 343 F.3d 1036, 1040 n.2 (9th Cir. 2003).

products of similar value and style in the market. *Id.* ¶10. The change could not have been in response to this suit, and Eddie Bauer has no intention of returning to its past practice of referring to former prices. *Id.* Both the Federal Trade Commission and Better Business Bureau have specifically recognized that the designation of "Comparable Value" is a permissible way to tell consumers that a reference price is based on "prices being charged either by the advertiser or by others in the advertiser's trade area for other merchandise of like grade and quality—in other words, comparable or competing merchandise." 16 CFR §233.2(c); *see also* Better Business Bureau Code of Advertising §2.1.3, *available at* https://www.bbb.org/code-of-advertising#Comparative_Price_Value_And_Savings.

Clark has not challenged Eddie Bauer's evidence or disputed that Eddie Bauer changed to "Comparable Value" references before this suit was ever filed. Instead, she argues that "Eddie Bauer's false discount advertisements continue to violate the UTPA." SER–56. The District Court denied Eddie Bauer's Motion to dismiss the claim for equitable relief on this basis. ER–8 ("An inflated reference price, regardless of the source, may still cause a consumer such as Ms. Clark confusion in that she may still believe she is getting a deal when, in fact, she is not.").

Eddie Bauer respectfully submits that the District Court erred. Eddie Bauer has changed its reference pricing practices, and the use of "Comparable Value" references is not challenged in the Complaint. Clark's lawsuit claims that Eddie

20

Bauer's past references to false former prices were deceptive, and she seeks to enjoin the use of that practice. ER–40 (asking the District Court to "[p]ermanently enjoin Defendants from the unlawful conduct alleged herein"). But there is no risk of imminent, certainly impending harm from such reference to former prices, as Eddie Bauer no longer uses them. Clark cannot now seek to enjoin the use of "Comparable Value" references when such references have not been litigated below. *See Haskins v. Symantec Corp.*, 654 F. App'x 338, 339 (9th Cir. 2016) (affirming dismissal of UCL and CLRA claims where plaintiff "did not allege that she read and relied on a specific misrepresentation by Symantec"); *see also Corcoran v. CVS Health*, No. 15-cv-03504-YGR, 2017 WL 1065135, at *5 n.8 (N.D. Cal. Mar. 21, 2017) ("Plaintiffs' attempt to save their claims for injunctive relief by claiming that defendants have established a new, but identical, program does not persuade, given that the new program is not at issue here").

The District Court also erred in suggesting that "Comparable Value" would not satisfy ORS § 646.885(2). ER–8. Again, the legality of "Comparable Value" references simply has not been litigated in this case. Clark offered no facts to suggest that Eddie Bauer's "Comparable Value" prices are inaccurate, deceptive, or likely to cause customer confusion, nor did the District Court cite any. Regardless, this statute expressly allows retailers to offer discounts from prices other than the retailer's own former price. ORS § 646.885(2) ("***Unless the seller states otherwise***

*in the advertisement*, use of terms such as "discount," … shall be considered to identify the origin of the price that the seller is comparing to the seller's current price as the seller's former price.") (emphasis added).

### B. Clark Fails to Plausibly Allege that She Lacks an Adequate Remedy at Law

Clark's request for injunctive relief, in addition to her prayer for restitution, should also be dismissed for the independent reason that she has failed plausibly to allege that she lacks an adequate remedy at law for any injury she has suffered or will suffer. This is the basis on which the District Court found that Clark was not entitled to equitable relief, including an injunction.

"It is a 'basic doctrine of equity jurisprudence that courts of equity should not act . . . when the moving party has an adequate remedy at law and will not suffer irreparable injury if denied equitable relief.'" *Morales v. Trans World Airlines, Inc*., 504 U.S. 374, 381 (1992) (quoting *O'Shea v. Littleton,* 414 U.S. 488, 499 (1974); *Younger v. Harris*, 401 U.S. 37, 43–44 (1971)); *see also Franklin v. Gwinnett Cnty. Pub. Sch*., 503 U.S. 60, 75–76 (1992) ("it is axiomatic that a court should determine the adequacy of a remedy in law *before* resorting to equitable relief.") (emphasis added). This Court and many others have repeatedly reiterated that in order for claims for equitable relief to proceed in federal court, "a plain, adequate and complete remedy at law must be wanting." *Sonner v. Premier Nutrition Corp.*, 971 F.3d 834, 840 (9th Cir. 2020) (quoting *Guar. Tr. Co. of N.Y. v. York*, 326 U.S.

22

99, 105–06 (1945)); *see also Schroeder v. United States*, 569 F.3d 956, 963 (9th Cir. 2009) ("equitable relief is not appropriate where an adequate remedy exists at law"). [3]

In accordance with this basic principle, this Court has made clear that plaintiffs are "required to plead the inadequacy of their legal remedies to state a

---

[3] Clark argues that the litigation in *Sonner* was more advanced than her case and all that the requirement that a plaintiff establish the inadequacy of legal remedies should not be applied in the motion to dismiss context. AOB at 20, 25–27. However, *Sonner* itself was decided on a Rule 12(b)(6) motion to dismiss, after the plaintiff amended her complaint on the eve of trial to drop her request for damages. There, this Court pointed out that the amended complaint did not allege that the plaintiff lacked an adequate legal remedy. *See Sonner*, 971 F.3d at 838, 844. Even before *Sonner*, this Court affirmed the dismissal at the pleading stage of claims for injunctive relief based on the same reasoning. *See Philips v. Ford Motor Co.*, 726 F. App'x 608, 609 (9th Cir. 2018) ("Appellants were required to plead the inadequacy of their legal remedies to state a claim for injunctive relief."). Numerous decisions since *Sonner* have similarly applied the "adequate remedy" requirement at the pleading stage. *See, e.g., Watkins v. MGA Ent., Inc.*, 21-CV-00617-JCS, --- F.Supp.3d ----, 2021 WL 3141218, at *17 (N.D. Cal. July 26, 2021); *Clark v. Am. Honda Motor Co., Inc.*, 20-cv-03147-AB (MRWx), ---F.Supp.3d ---, 2021 WL 1186338, at *8 (C.D. Cal. Mar. 25, 2021) ("nothing about the [*Sonner*] opinion suggests its reasoning applies only late in the case"); *Drake v. Toyota Motor Corp.*, 2:20-CV-01421-SB-PLA, 2021 WL 2024860, at *7 (C.D. Cal. May 17, 2021); *Zaback v. Kellogg Sales Co.*, No. 20-00268 BEN MSB, 2020 WL 6381987, at *4 (S.D. Cal. Oct. 29, 2020) (collecting cases that have "applied *Sonner* to dismiss complaints in cases involving similar claims at the more familiar early stages of litigation"); *In re California Gas. Spot Mkt. Antitrust Litig.*, 20-CV-03131-JSC, 2021 WL 1176645, at *7–8 (N.D. Cal. Mar. 29, 2021); *Krommenhock v. Post Foods, LLC*, Case No. 16-CV-4958-WHO, 2020 WL 6074107, at *1 (N.D. Cal. Sep. 29, 2020); *Gibson v. Jaguar Land Rover N. Am., LLC*, Case No. 20-CV-769-CJC, 2020 WL 5492990, at *3 (C.D. Cal. Sep. 9, 2020); *Julian v .TTE Tech., Inc.*, 20-CV-02857-EMC, 2020 WL 6743912, at *4–5 (N.D. Cal. Nov. 17, 2020); *Schertzer v. Samsonite Co. Stores, LLC*, No. 19-cv-639 JLS, 2020 WL 4281990, at *10 (S.D. Cal. Feb. 25, 2020); *see also id.*, at *9.

claim for injunctive relief." *Philips v. Ford Motor Co.*, 726 Fed. Appx. 608, 609 (9th Cir. 2018); *see also Adams v. Cole Haan LLC*, No. 20-cv-913 JVS, 2020 WL 5648605, at *2 (C.D. Cal. Sept. 3, 2020) ("The clear rule in *Sonner* [is] that plaintiffs must plead the inadequacy of legal remedies before requesting equitable relief.").[4]

Clark contends that she has adequately pled that she lacks an adequate legal remedy because damages would not remedy her future harm. AOB 22–24. But she

---

[4] Clark argues that she "may plead a mix of equitable and legal remedies as alternative or separate remedies." AOB at 20. However, pleading in the alternative does not relieve a plaintiff seeking equitable relief of the obligation to allege that damages will not provide an adequate remedy. *In re MacBook Keyboard Litig.*, 2020 WL 6047253, at *2 (N.D. Cal. Oct. 13, 2020); *Adams*, 2020 WL 5648605, at *3; *Drake v. Toyota Motor Corp.*, 2:20-CV-01421-SB-PLA, 2020 WL 7040125, at *14 (C.D. Cal. Nov. 23, 2020) (while it is "no doubt true" that plaintiffs are "entitled to plead legal and equitable remedies in the alternative," "a party does not avoid federal equitable principles merely because the equitable claim is pled in the alternative"); *Loo v. Toyota Motor Sales, USA, Inc.*, No. 8:19-cv-00750-VAP (ADSx), 2020 WL 4187918, at *8 (C.D. Cal. Apr. 10, 2020) ("Plaintiffs may seek alternative forms of relief ... however, in order to avail themselves of ... equitable remedies, Plaintiffs must allege that their legal remedies are inadequate")*; Guzman v. Polaris Industries Inc.*, 819CV01543FLAKESX, 2021 WL 2021454, at *12 (C.D. Cal. May 12, 2021) (same); *In re California Gas. Spot Mkt. Antitrust Litig.*, 20-CV-03131-JSC, 2021 WL 1176645, at *7-8 (N.D. Cal. Mar. 29, 2021) (same); *Sagastume v. Psychemedics Corp.*, CV206624DSFGJSX, 2020 WL 8175597, at *7 (C.D. Cal. Nov. 30, 2020) (same).

Nor does the potential success of Clark's claim for damages determine whether she can pursue equitable relief. *See* AOB at 26. "The relevant test is whether an adequate damages remedy is available, not … whether she will be successful in that pursuit." *Mullins v. Premier Nutrition Corp.*, No. 13-CV-01271-RS, 2018 WL 510139, at *2 (N.D. Cal. Jan. 23, 2018), aff'd sub nom. *Sonner v. Premier Nutrition Corp.*, 971 F.3d 834, 840 (9th Cir. 2020); *see also Shay v. Apple Inc.*, 20CV1629-GPC(BLM), 2021 WL 1733385, at *4 (S.D. Cal. May 3, 2021); *Rhynes v. Stryker Corp.*, 2011 WL 2149095, at *4 (N.D. Cal. May 31, 2011).

offers no rationale for why any future harm cannot be remedied with damages, other than to posit that she does not yet know what Eddie Bauer products she might purchase in the future or what Eddie Bauer might charge for them. AOB at 23 ("It is impossible to know how many purchases Ms. Clark would make in the future but for the unlawful conduct or to know how much Eddie Bauer would charge for such purchases."). Clark's argument appears to be based on the erroneous belief that damages must be available *now* to remedy *future* injury in order for those damages to provide adequate relief—but that is nonsensical, and it is also clearly not the law. What matters is whether an award of damages in the future would be inadequate to remedy future injury from any purchases Clark might make.[5] *See, e.g., O'Shea v. Littleton*, 414 U.S. 488, 501 (1974) ("[Plaintiffs] have failed, moreover, to establish the basic requisites of the issuance of equitable relief in these circumstances—the likelihood of substantial and immediate irreparable injury, and the inadequacy of remedies at law. . . . [I]f any of the [plaintiffs] are ever prosecuted and face trial, or if they are illegally sentenced, there are available state and federal procedures which could provide relief from the wrongful conduct alleged."); *City of Los Angeles v. Lyons*, 461 U.S. 95, 113 (1983) ("If Lyons has suffered an injury barred by the

---

[5] Clark's sole argument as to why she should be awarded the equitable relief of restitution consists of a single vague sentence in a footnote. AOB 27 n.6 The unpublished district court decision on which she relies, *Dahlin v. Under Armour, Inc.*, No. CV 20-3706 PA (JEMx), 2020 WL 6647733, *4–5 (C.D. Cal. July 31, 2020), is contrary to *Philips* and *Sonner*. See, e.g., *Sonner*, 971 F.3d at 844.

Federal Constitution [in the future], he has a remedy for damages"); *Joseph v. Carnes*, 566 Fed. Appx. 530, 534–35 (7th Cir. 2014) ("plaintiffs do not explain why monetary damages could not adequately remedy any future violations of the SCA by the defendants").[6] Clark has pled nothing in her Complaint to suggest that future damages would not adequately remedy any future injury. Indeed, courts have repeatedly recognized that damages generally do provide an adequate remedy for future harms in cases like this.[7]

---

[6] *See also Clark v. Am. Honda Motor Co., Inc.*, 20-cv-03147-AB (MRWx), --- F.Supp.3d ---, 2021 WL 1186338, at *8 (C.D. Cal. Mar. 25, 2021) ("Plaintiffs' argument about future purchasers is also unavailing: nothing suggests that damages will not be adequate for future purchasers simply because they have not purchased their vehicles yet. Once those future purchasers purchase their vehicles, damages will be as adequate a remedy for them as it will be for currently-existing purchasers."); *Dotster, Inc. v. Internet Corp.*, 296 F. Supp. 2d 1159, 1163 (C.D. Cal. 2003) (dismissing injunctive relief claim where plaintiffs "have not shown an 'actual and imminent' injury … 'for which monetary damages cannot adequately compensate'"); *Schell v. OXY USA, Inc.*, 822 F.Supp.2d 1125, 1142 (D. Kan. 2011) (declining to impose a permanent injunction because "plaintiffs have failed to show that money damages would not be sufficient to compensate any potential future injury" resulting from the defendants' termination of free gas to the plaintiffs; "If defendant terminates plaintiffs' supply of free gas at a later date, they may bring a damages claim to recoup their loss of free gas.").

[7] *See, e.g.*, *Cumulus Media, Inc. v. Donovan*, 2004 WL 2958416, at *1 (D. Or. Dec. 20, 2004) ("When the party seeking injunctive relief has an adequate remedy at law, such as money damages, it is generally unnecessary for the court to exercise its equitable power of injunction.") (citing *Sampson v. Murray*, 415 U.S. 61, 90 (1974)); *Adams*, 2020 WL 5648605, at *3 ("legal damages … seem to be an adequate remedy"); *see also* Wright & Miller, 11A Fed. Prac. & Proc. Civ. § 2944 (3d ed.) ("if plaintiff [] can bring a legal action and seek damages that will provide full compensation . . . the alternative remedy is adequate").

In an attempt to avoid the obvious flaw in her argument about the inadequacy of damages to prevent future economic injury, Clark recasts her future injury—for purposes of her request injunctive relief—as consisting not of the money she would lose as a result of allegedly deceptive price references, but rather of her "inability to rely in the future on the representations contained in Eddie Bauer's advertising." AOB 22. She relies on this Court's decision in *Davidson* to support her claim of "informational injury." AOB 19, 22.

*Davidson*, however, did not address the question of whether the plaintiff there had pled the inadequacy of remedies at law (i.e., damages). Rather, the Court's consideration was limited to whether the plaintiff had Article III standing to seek injunctive relief. *See Davidson*, 889 F.3d at 965-971; *see also Williams v. Apple, Inc.*, 19-CV-04700-LHK, 2020 WL 6743911, at *9 (N.D. Cal. Nov. 17, 2020) ("[*Davidson*] had nothing to do with the viability of equitable claims despite the availability of adequate remedies at law. …[It] was simply about Article III standing."). *Davidson* therefore clearly did not overturn decades of jurisprudence reiterating the requirement that a plaintiff seeking equitable relief, including an injunction, must plausibly plead that damages would not adequately redress future injury.

In any event, Clark cannot rely on the theory of "informational injury" to sustain her request for injunctive relief because such injury is not cognizable under

Oregon law. Clark's sole claim was brought under Oregon's UTPA, which provides a private right of action only to persons who have suffered "an ascertainable loss of money or property" as a result of an unlawful act. Or. Rev. Stat. Ann. § 646.638(1). The "informational injury" Clark cites is simply not a legally cognizable injury under the UTPA, and so cannot be the basis for injunctive relief. While the UTPA does permit a court to award "any equitable relief the court considers necessary or proper," *id.*, such relief can only be awarded to redress the loss of money or property, not some other form of injury that the Oregon legislature chose not to provide redress for in the UTPA. *Pearson v. Philip Morris, Inc.*, 358 Or. 88, 117 (2015) ("noneconomic losses . . . will not satisfy a private UTPA plaintiff's burden;" "the loss required for a UTPA claim must be specifically of 'money or property, real or personal.'") (quoting ORS 646.638(1)).[8]

---

[8] *Davidson* did not address the question whether injunctive relief to address noneconomic harm was appropriate under the UCL or FAL, since the issue apparently was not raised. But, in any event, in contrast to this case, one of the statutes under which the plaintiff in *Davidson* sought injunctive relief (the CLRA) does provide a private right of action to redress non-economic harm. *See* Cal. Civ. Code §1780 (CLRA) ("Any consumer who suffers *any* damage as a result of" an unlawful act may bring private action) (emphasis added); *see also Meyer v. Sprint Spectrum L.P.*, 45 Cal.4th 634, 640 (2009) ("'any damage' may encompass harms other than pecuniary damages").

28

## III. Clark Fails to Allege Facts Sufficient to Maintain a UTPA Claim

### A. A UTPA Claim Based on Deceptive Advertising Requires a Distinct Ascertainable Loss

Clark brings one cause of action, under the UTPA, which provides:

"[A] person that **suffers an ascertainable loss** of money or property, real or personal, as a result of another person's willful use or employment of a method, act or practice declared unlawful under ORS 646.608, may bring an individual action…"

Or. Rev. Stat. Ann. § 646.638(1) (emphasis added). "What a plaintiff must prove is that (1) the defendant committed an unlawful trade practice; (2) plaintiff suffered an ascertainable loss of money or property; and (3) plaintiff's injury (ascertainable loss) was the result of the unlawful trade practice." *Pearson v. Philip Morris, Inc.*, 358 Or. 88, 127 (2015).[9] The UTPA allows individual plaintiffs to seek $200 in statutory penalties or actual damages, but only where they have suffered "ascertainable loss." Or. Rev. Stat. § 646.638(8)(a).

### B. Clark Fails to Allege any Ascertainable Loss Under the UTPA

On appeal, Clark relies on three theories of loss: "(1) she did not receive the advantageous bargain that Eddie Bauer promised her because the value of the items was less than represented, (2) she purchased items that she otherwise would not have

---

[9] "The UTPA has both public and private enforcement provisions. . . A public action does not require proof that any consumer has suffered economic loss or other injury as a result of the unlawful practice." *Pearson v. Philip Morris, Inc.*, 358 Or. 88, 116 (2015). Thus, if a company engages in deceptive advertising, the state can bring an enforcement action even if there is no ascertainable loss by any consumer.

purchased but for Eddie Bauer's misrepresentations, and (3) Eddie Bauer's false advertising inflated consumer demand and in turn increased the prices Eddie Bauer was able to command for the items she purchased." AOB at 35–36. These theories, however, at most amount to allegations of deception by Eddie Bauer. They do not explain how Clark suffered "ascertainable loss" within the meaning of Oregon law as a result.

By way of example, Clark bought a Fleece Jacket that was advertised as a Fleece Jacket, and paid the advertised price of $19.99. She does not claim that the Fleece Jacket was worth less than the $19.99 she paid, or that it did not contain features or qualities that she expected it to have. The same is true of her other two purchases. She does not allege, for example, that Eddie Bauer falsely advertised the items as made of superior materials, or that she could have purchased them for less somewhere else. She identifies no defect or deficiency in the products she purchased. Absent such allegations, Clark has not alleged any loss of money or property that is ascertainable. She got what she paid for, and the products that she expected, even if she alleges that she was persuaded to make the purchases by allegedly deceptive reference prices.

### 1. Clark Has Not Alleged a "Diminished Value" in the Items She Purchased

Clark argues that she suffered an ascertainable loss in the form of "the difference between the value of the [products] as represented and the value of the

30

[products] as purchased." AOB. at 38–39 (quoting *Simonsen v. Sandy River Auto, LLC*, 413 P.3d 982, 983, 987 (Or. Ct. App. 2018) (brackets in original)). But the value of the products as represented by Eddie Bauer was precisely the same as the value of the products as purchased by Clark. In other words, Eddie Bauer represented the value of each product as being the price for which it was selling them, and that is the price that Clark paid.

That Eddie Bauer also represented the products as *formerly* being valued at a higher price is irrelevant to the loss analysis, since Clark did not *pay* the former prices. She paid the current offer price, and so there was no ascertainable diminution in value between what she thought she was getting and what she got. Clark may have thought she was getting an "advantageous bargain" because the products were represented as once selling for a higher price. Or she may have subjectively thought the products must be worth more than she paid for them as a result of the former price listings. But a disappointment in subjective expectations about "getting a bargain" does not constitute an ascertainable loss if there is no diminution in the value of the actual product. *See*, *e.g.*, *Paul v. Providence Health System-Oregon*, 237 Or. App. 584, 602 (Or. App. 2010), *aff'd on other grounds*, 351 Or. 587 (2012) ("Under the typical UTPA scenario, the loss is evidenced by the difference in value between the product as represented by the defendant and as actually received by the plaintiff.")

31

The Oregon Supreme Court's decision in *Pearson* makes this clear. In that case, the plaintiffs claimed that the "[d]efendant both affirmatively misrepresented that its light cigarettes would inherently deliver low tar and nicotine and failed to disclose that, in order to receive lower tar and nicotine, the smoker would have to smoke the light cigarettes in a particular way." 358 Or. at 117–18 (internal quotation marks omitted). As a result, the plaintiffs thought they were buying light cigarettes, but ended up getting what amounted to regular cigarettes because they did not know that the cigarettes had to be smoked in a certain manner in order for the user to receive less tar and nicotine. As the Oregon Supreme Court explained, the "plaintiffs' claim was that they and the class members bought a product that was worth less than they paid for it, and their damages were the difference in the value of the product as represented versus the value of the product they actually received." *Id.* at 118.

The *Pearson* Court found that the plaintiffs had not actually established an ascertainable loss under this "diminished value" theory, because light cigarettes and regular cigarettes sold for the same price, meaning that there was no ascertainable diminution in the value of the product they purchased:

> [W]hen there is no price difference for a good with a particular feature and the same good without it, a plaintiff has not paid any extra for the represented quality that the plaintiff did not receive. In other words, the plaintiff is not out of pocket any additional money based on the purchase; ... the fact that the product costs the same with or without a

32

represented characteristic defeats a logical inference that the product without the feature is worth less.

*Id*. at 122. The Court concluded that the "plaintiffs' theory of diminished value provide[d] no logically viable theory on which class-wide economic losses can be established" because there was "no difference in the price between a product with the represented feature [of lightness] and one without." *Id*. at 124.

Similarly, in this case, Clark offers no logically viable theory of establishing an ascertainable loss because there is no difference in the price between the products with the represented discount (*e.g*., a Fleece Zip marked down from $39.99 to $19.99 for the item) and the products without that represented discount (*e.g*., a Fleece Zip simply offered at $19.99). Under *Pearson,* then, Clark's subjective disappointment that the products allegedly once did not cost more than she paid for them cannot establish an ascertainable loss under Oregon's UTPA. *See also Silva v. Unique Bev. Co*., *LLC*, No. 3:17-cv-00391-HZ, 2017 WL 2642286, at *12 (D. Or. June 15, 2017) ("there must be an allegation … that the price of the good as represented with a particular coconut water feature is not the same as the price of the good lacking such a feature. Otherwise, as *Pearson* explained, there is no way to establish that the plaintiff has suffered a loss."); *Gilberto v. Walgreen Co.*, No. 3:18-cv-01003-AC, 2019 WL 9441666, at *15 (D. Or. Oct. 20, 2019), *adopted in relevant part in Gilberto v. Walgreen Co.*, 2020 WL 1890538, at *1 (D. Or. Apr. 16, 2020). *Cf. McGee v. S-L Snacks Natl*., 982 F.3d 700, 706 (9th Cir. 2020) ("A plaintiff, however,

must do more than allege that she 'did not receive the benefit she *thought* she was obtaining.' The plaintiff must show that she did not receive a benefit for which she actually bargained.") (emphasis in original, quotations omitted).[10]

The cases relied on by Clark to prove her "diminished value" theory of loss are all inapposite because each one involves situations where the plaintiffs received something worth less than what they had bargained and paid for. As the District Court explained:

> The cases Ms. Clark [cites]… all involve misrepresentations of the character or quality of the items being sold. (*See* Dkt. No. 21 at 25 (citing *Weigel v. Ron Tonkin Chevrolet Co.*, 690 P.2d 488 (Or. 1984) (used car that was advertised as new); *Walters v. Vitamin Shoppe Indus., Inc.*, 701 F. App'x. 667 (9th Cir. 2017) (lower quantity of supplement than advertised); *Silva v. Unique Bev. Co.*, LLC, 2017 WL 4896097, slip op. (D. Or. 2017) (product lacked the advertised ingredient)). Similarly, in *Simonsen v. Sandy River Auto, LLC*, on which Ms. Clark relies for her diminished value argument, the car was allegedly advertised as being in "good running order" when, in fact, it

---

[10] Clark argues that *Pearson* does not apply here because the plaintiff in that case brought claims under ORS 646.608(1)(e) (concerning misrepresentation of a product's characteristics, qualities, etc.), whereas she brings her claim under ORS 646.608(1)(e) in addition to other sub-sections of the UTPA. AOB at 30–31. As a result, she contends, she is not required to identify characteristics or qualities that she expected but did not receive, because only ORS 646.608(1)(e) concerns misrepresentations about a product's characteristics. AOB at 30–31. But Clark is wrong. As the Oregon Court of Appeal has recognized, "The UTPA's 'misrepresentation' provisions encompass a wide array of factual misrepresentations about the nature of a product…Those terms encompass a multitude of facts about a product's inherent qualities." *State ex rel. Rosenblum v. Johnson & Johnson*, 275 Or. App. 23, 33 (Or. App. 2015). Although Clark purports to bring her UTPA claim under many sub-sections of ORS 646.608(1), her claim rests on the singular theory that Eddie Bauer tricked Clark into buying items by advertising allegedly false or deceptive former prices. *Pearson* therefore clearly applies here.

was far from it. 413 P.3d 982, 988 (Or. App. 2018). Finally, in *Feitler v. Animation Celection, Inc.*, the ascertainable loss was the lack of exclusivity, *i.e.*, that the item was not as rare as advertised, not simply that it was not as *valuable* as advertised. *See* 13 P.3d 1044, 1049–50 (Or. App. 2000). Value was derived from scarcity—a characteristic separate from value. *Id.*

ER–13.

*Simonsen v. Sandy River Auto, LLC*, 290 Or. App. 80 (2018), on which Clark places great reliance, is particularly instructive. There, the plaintiff alleged that the defendant represented that a car's valve cover gasket had been replaced and that the car was in good condition, when in fact the valve cover gasket was leaking and the car had several defects that needed immediate repair (which the plaintiff only discovered after purchase). *Id.* at 82; *see also id.* at 92 (noting that plaintiffs' theory of loss was "consistent with existing law, including *Pearson* which recognized the potential for relief in the form of a refund of a purchase price based on reliance on misrepresented qualities."). Here, by contrast, Clark does not allege that the products she purchased had any undisclosed defects, or had qualities that were misrepresented.

The District Court's decision also is in conformity with decisions from the First, Sixth, and Seventh Circuits, along with district courts in the Second and Third Circuits, involving state consumer protection statutes that, like the UTPA, require

ascertainable loss.[11]   In *Shaulis v. Nordstrom Inc.*, for example, the First Circuit explained that the flaw in the plaintiff's theory of injury – "that the mere purchase of an item may constitute cognizable injury, regardless of the item's specific qualities" – "is that it merges the alleged deception with the injury."  865 F.3d 1 (1st Cir. 2017).  As a result, the plaintiff did not allege an "identifiable harm" as required to state a claim.  *Id*.  at 10-11.

The First Circuit continued:

Shaulis "arguably got exactly what she paid for, no more and no less,"… Shaulis's alleged "injury" is only that Nordstrom tricked her into believing that she was getting a bargain, and not … that the product itself was deficient in some objectively identifiable way. That perceived adverse impact…" the subjective belief as to the nature of the value [Shaulis] received" -- does not state a legally cognizable economic injury.

*Id*. at 12; *see also Gerboc v. ContextLogic, Inc*., 867 F.3d 675, 681 (6th Cir. 2017)

---

[11] *See Mulder v. Kohl's Dep't Stores, Inc*., 865 F.3d 17 (1st Cir. 2017); *Gerboc v. ContextLogic, Inc*., 867 F.3d 675, 681 (6th Cir. 2017); *Kim v. Carter's Inc*., 598 F.3d 362, 365-366 (7th Cir. 2010); *Camasta v. Jos. A. Bank Clothiers, Inc*., 761 F.3d 732, 740 (7th Cir. 2014); *DaCorta v. AM Retail Group, Inc.*, 2018 WL 557909, at *7-9 (S.D.N.Y. Jan. 23, 2018); *Belcastro v. Burberry Ltd.*, 2017 WL 744596, at *6 (S.D.N.Y. Feb. 23, 2017); *Waldron v. Jos. A. Bank Clothiers, Inc.*, 2013 WL 12131719, at *4 (D.N.J. Jan. 28, 2013); *see also Johnson v. Jos. A. Bank Clothiers*, 2014 WL 4129576, at *9 (S.D. Ohio 2014); *Ice v. Hobby Lobby Stores, Inc.*, 2015 WL 5731290, at *7 (N.D. Ohio Sept. 29, 2015).  And while ascertainable loss is not a pleading requirement under California's consumer protection law, this Court has granted summary judgment to the defendant where the plaintiff was unable to show that she paid more than the items were worth.  *Chowning v. Kohl's Dept. Stores, Inc*., 735 F. App'x 924, 925 (9th Cir. 2018), *amended on denial of reh'g*, 733 F. App'x 404 (9th Cir. 2018).

(no "actual damages" because "[plaintiff] got what he paid for: a $27 item that was offered as a $27 item and that works like a $27 item."); *Mulder v. Kohl's Dep't Stores, Inc*., No. 15-11377-FDS, 2016 WL 393215, at *6 (D. Mass., Feb. 1, 2016) ("The fact that plaintiff may have been manipulated into purchasing the items because she believed she was getting a bargain does not necessarily mean she suffered economic harm."), *aff'd*, 865 F.3d 17 (1st Cir. 2017); *In re Avandia Litig*., 639 F. App'x 866, 869 (3d Cir. 2016) (interpreting Missouri law: "Laurino received the drug she was prescribed, the drug did the job it was meant to do … and it caused no apparent physical injuries. Under such circumstances, there could be no ascertainable loss.");[12] *DaCorta v. AM Retail Group, Inc.*, No. 16-CV-01748 (NSR), 2018 WL 557909, at *8 (S.D.N.Y. Jan. 23, 2018) ("In the absence of facts related to the value of the purchased product, or how the product fell short of what it purported to be, the [] Complaint only reflects Plaintiff's subjective disappointment."); *Johnson v. Jos. A. Bank Clothiers*, No. 2:13-cv-756, 2014 WL 4129576, at *9 (dismissing claim for false pricing under Ohio's consumer protection statute where

---

[12] Clark cites *Hennessey v. Kohl's Corp*., 2020 WL 870982, *4 (E.D. Mo. Feb. 21, 2020) (*see* AOB at 40), but Eddie Bauer respectfully submits that unpublished decision was incorrectly decided and that *Avandia* sets forth the proper standard for claims under the Missouri Merchandising Practices Act. *See also Mikhlin v. Johnson & Johnson*, No. 14-cv-881 (RLW), 2014 WL 6084004, at *3 (E.D. Mo. Nov. 13, 2014) (no ascertainable loss where the product at issue "fulfilled its originally anticipated function" such that the plaintiffs "obtained the full anticipated benefit of the bargain") (citation omitted); *Carter v. Alcon Labs., Inc*., 13-CV-00977 AGF, 2014 WL 989002, at *2, *4 (E.D. Mo. Mar. 13, 2014) (same).

the plaintiffs did not allege that they "did not receive four suits in exchange for payment of $795, nor…that the four suits actually received by them were worth, collectively, less than $795 or that they could have obtained four suits of similar quality elsewhere for less than $795").

### 2. The District Court Correctly Rejected Clark's "Purchase Price" Theory

The District Court also correctly rejected Clark's alternate theory of ascertainable loss—that she would not have made her purchases at the price she paid but for the alleged misrepresentations. As the Oregon Supreme Court explained in *Pearson*, this theory is "based on [Plaintiffs'] and the class members' alleged failure to receive what defendant's representation led them to believe they were buying." 358 Or. at 124. That is, "they did not get what they believed they were buying." *Id*. at 127; *see also id*. at 124 n.19 (using as an example a regular cola that was misrepresented as being cherry flavored). However, in this case, as the District Court explained, Clark did not identify any "character or quality" that she had expected to get in the items she purchased but did not actually receive. ER–13. Clark received the exact products that were advertised, and paid no more than the price listed on the products.

In *Walters v. Vitamin Shoppe Indus., Inc*., 701 F. App'x 667, 670 (9th Cir. 2017), by contrast, the plaintiff alleged with "ample showing" that he "paid for what he reasonably believed was a certain quantity of supplement, but instead received

half as much product." *Walters*, 2015 WL 3916972, at *8 (D. Or. June 25, 2015). Clark makes no such allegation here.

Thus, while the full price of each product Clark bought may be "ascertainable" in the sense that one can put a determinate number on it, those prices cannot logically constitute the amount of her "loss," since she received precisely the products that she thought she was getting (and used them for a considerable time). Any loss Clark experienced was based on her subjective disappointment in not receiving as much of a bargain as she thought she was getting. But any such loss is not "ascertainable" under Oregon law.

### 3. *Hinojos v. Kohl's* is Irrelevant to Plaintiff's UTPA Claims

Clark relies heavily on this Court's decision in *Hinojos v. Kohl's Corp.*, 718 F.3d 1098 (9th Cir. 2013), which held that plaintiffs had standing to sue under California's Unfair Competition Law (UCL) and False Advertising Law (FAL) over purchases they made in reliance on allegedly false reference prices. The Court held that plaintiffs could satisfy those laws' requirement to allege "lost money or property" by claiming that they would not have purchased the products at issue absent the misrepresentation. *Id*. at 1105.

Clark invites this Court to treat this "as the Oregon version of *Hinojos*." AOB at 43–45. But *Hinojos* involves California's UCL and FAL, which require only a showing of "lost money or property," not "ascertainable loss" as in Oregon.

39

Moreover, *Hinojos* was based on a California Supreme Court decision, *Kwikset Corp. v. Superior Ct. (Benson*), 51 Cal. 4th 310 (Cal. 2011), which found that "[a] consumer who relies on a product label and challenges a misrepresentation contained therein can satisfy the standing requirement of section 17204 by alleging ... that he or she would not have bought the product but for the misrepresentation." *Id* at 320. The Oregon Supreme Court, in contrast, has interpreted the Oregon UTPA's "ascertainable loss" as requiring something more: "The nature of the 'ascertainable loss' that the private plaintiff must prove distinguishes a UTPA claim from any other claims or remedies that a plaintiff might pursue through other actions. The requirement that the loss be 'ascertainable' connotes generally that it is one 'capable of being discovered, observed, or established.'" *Scott v. Western Int. Sales, Inc*., 267 Or. 512, 515, 517 P.2d 661 (1973). Thus, the loss must be "objectively verifiable…." *Id*.; *see also* ORS 31.710(2)(a) (defining "economic damages" as "objectively verifiable monetary losses").

Indeed, this Court in *Leigh-Pink v. Rio Properties, LLC*, 989 F.3d 735 (9th Cir. 2021) recently recognized that the loss requirements under California's UCL and FAL are less exacting than the loss requirements in other states' consumer protection laws. In that case, the Court was faced with the question of whether a plaintiff suffers damages within the meaning of Nevada's consumer protection law "when, due to the defendant's misrepresentation, the plaintiff purchases a product or

service that the plaintiff would not otherwise have purchased, even though the product or service was not worth less than what the plaintiff paid." *Id*. at 737. The Court could have followed its normal practice of looking to California "to inform [its] analysis" of Nevada law and applied the approach of *Kwikset* and *Hinojos* to Nevada law. It declined to do so, however, instead certifying the question to the Nevada Supreme Court, because it recognized that the interpretation of California's loss requirement in *Kwikset* and *Hinojos* "do[es] not reflect a consensus, for courts in other jurisdictions have rejected plaintiffs' theory." *Id*; *see also Naimi v. Starbucks Corp.*, 798 Fed. Appx. 67, 70 (9th Cir. 2019) (distinguishing California law: "Under New York law, a plaintiff's allegation that she would not have purchased a product but for a deceptive act, standing alone, is not a cognizable injury because it conflates the deceptive act with the injury"); *Small v. Lorillard Tobacco Co.*, 94 N.Y.2d 43, 698 N.Y.S.2d 615, 720 N.E.2d 892, 898 (1999) (rejecting the idea that, without more, "consumers who buy a product that they would not have purchased, absent a manufacturer's deceptive commercial practices" have suffered an injury under the state's consumer fraud statute); *see also Benson v. Fannie May Confections Brands, Inc.*, 944 F.3d 639, 648 (7th Cir. 2019) (reaching the same conclusion under Illinois law); *In re Avandia*, 639 F. App'x at 869 (same, under Missouri law).

41

District courts around the country have similarly recognized that "*Hinojos* is in tension with decisions from other federal courts . . . which have held that disappointed bargain-hunters do not allege any 'actual injury' simply because they did not get as good a deal as they had hoped." *Belcastro v. Burberry Ltd*., No. 16-CV-1080 (VEC), 2017 WL 744596, at *3 (S.D.N.Y. Feb. 23, 2017); *see also Robey v. PVH Corp.*, 495 F.Supp.3d 311, 321 (S.D.N.Y. 2020) ("irrespective of what California law may require, the [New Jersey Consumer Fraud Act] requires plaintiffs to demonstrate an 'ascertainable loss' based on more than 'subjective assertions' or disappointment"); *DiCicco v. PVH Corp.*, No. 19 CIV. 11092 (ER), 2020 WL 5237250, at *6 n.8 (S.D.N.Y. Sept. 2, 2020) ("unlike California law, New Jersey law does not recognize a plaintiff's subjective disappointment as an actionable form of injury"); *Johnson v. Jos. A. Bank Clothiers, Inc*., No. 2:13-CV-756, 2014 WL 4129576, at *7 (S.D. Ohio Aug. 19, 2014) (rejecting the reasoning of *Hinojos* as "improperly conflating the concepts of causation and damages": "even assuming that plaintiffs are able without unreasonable speculation to assign a dollar amount to their claimed actual damages, recognition of plaintiffs' claim would leave each plaintiff with four suits that are worth, collectively, no less than the amount paid for them, plus some additional amount in claimed damages").

While Clark may be disappointed to learn that she did not save as much money as she thought she had, the fact that she spent money is insufficient to establish an ascertainable loss under Oregon's UTPA.

### 4. Clark's "Consumer Demand" Theory Also Fails

Clark's brief also mentions a third theory of ascertainable loss: "Eddie Bauer's false advertising artificially inflates consumer demand, thereby shifting the demand curve and increasing the prices that Eddie Bauer is able to command and charge for its products (enabling Eddie Bauer to charge a price premium)." AOB at 47–48 (citing ER–37 ¶ 109).[13]

Clark acknowledges that this theory is just another spin on the "diminished value" theory discussed above. ER–12–13; AOB at 36 n.7 ("Oregon courts have also discussed Ms. Clark's third form of ascertainable loss—the price premium/inflated demand theory—as a form of the 'diminished value' theory of ascertainable loss."). It should be rejected for the same reasons. Indeed, the Oregon Supreme Court specifically rejected this theory in *Pearson*. 358 Or. at 124.

---

[13] Clark argues that the District Court "completely missed this clearly pleaded form of ascertainable loss and did not mention it in the Order." AOB at 48. To the extent the District Court did not discuss this alleged theory, it is because Clark failed to bring it to the Court's attention—this theory is only mentioned in passing in the Complaint (ER–22 ¶ 27; ER–37 ¶ 109), and, despite being mentioned in Eddie Bauer's Motion to Dismiss (SER–25), is wholly absent from Clark's Opposition. Moreover, as noted below, the theory is just another version of Clark's flawed "diminished value" theory, which the District Court thoroughly analyzed.

## IV. Clark's Lawsuit is Time-Barred

Clark made her alleged purchases in 2017 and 2018, well beyond the UTPA's one-year statute of limitations. ORS 646.638(6). The District Court correctly recognized that Clark's lawsuit is time-barred, and that her vague claim that she "was not aware of Eddie Bauer's false discount advertising scheme" prior to March 13, 2020 (ER–30 ¶ 73) was insufficient to trigger the "discovery rule." ER–11.

Under Oregon law, a statute of limitations begins to run "when the plaintiff knows or in the exercise of reasonable care should have known facts which would make a reasonable person aware of a substantial possibility" that the elements of their claim existed. *Gaston v. Parsons*, 318 Or. 247, 256 (1994); *see also Salem Sand & Gravel Co. v. City of Salem*, 260 Or. 630, 636-37 (1971) ("'Discovery' means from the time the fraud was known or could have been discovered through exercise of reasonable care."). "[Plaintiff] bears the burden of pleading facts which show she is entitled to the benefit of the discovery rule." *Sturgis v. Asset Acceptance, LLC*, No. 3:15-CV-00122-AC, 2016 WL 223708, at *7 (D. Or. Jan. 19, 2016) (citing *FDIC v. Smith*, 328 Or. 420, 432 (1999).[14] Moreover, under Rule 9(b), the date of

---

[14] *See also Hip Hop Bev. Corp. v. Michaux*, 729 F. App'x. 599, 600 (9th Cir. 2018) (vague allegation that "[o]n or about May 19, 2012, Plaintiff became aware of records that indicated additional Company accounts were maintained at Bank of America and Chase" was insufficient to trigger the discovery rule under California law); *N.L.R.B. v. Don Burgess Const. Corp.*, 596 F.2d 378, 383 n.2 (9th Cir. 1979); *Kasey v. Molybdenum Corp. of Am.*, 336 F.2d 560, 575 (9th Cir. 1964).

delayed discovery of the alleged fraud and an explanation for why it was not discovered must be pled with particularity, "especially when the face of the complaint reveals that the complaint is filed after the applicable statute of limitations has run and the viability of the claim is totally dependent on a late discovery rule." *N.W. Nat. Ins. Co. of Milwaukee, Wisconsin v. Joslyn*, 53 F.3d 331, 1995 WL 270995, at *3 (6th Cir. 1995); *see also Hip Hop Bev. Corp. v. Michaux*, CV 16-03275-MWF-AGR, 2016 WL 8578912, at *6 (C.D. Cal. Nov. 30, 2016), aff'd, 729 Fed. Appx. 599 (9th Cir. 2018) (unpublished).

Clark does not claim that she should not have known the alleged truth about Eddie Bauer's pricing sooner, much less allege the facts required under the discovery rule and Rule 9(b).

## V. The District Court Did Not Abuse its Discretion in Not *Sua Sponte* Granting Clark Leave to Amend Her Complaint

The "most important" consideration in deciding whether to grant leave to amend is whether "it appears that plaintiffs had a reasonable chance of successfully stating a claim if given another opportunity." *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1053 (9th Cir. 2003). Nothing in Clark's Complaint, her Opposition to Eddie Bauer's Motion to Dismiss, or her Opening Brief on appeal suggests that Clark will be able to state a claim if given leave to amend.

Clark's Opening Brief identifies only one change that she would make in an amended Complaint:

> [O]n this discrete issue, if required do so, Ms. Clark can proffer how she would amend her complaint. The circumstances of her discovery were that, on March 13, 2020, Ms. Clark first learned of the scheme through her counsel, who have been investigating Eddie Bauer's unlawful pricing practices for several years. Ms. Clark should be granted leave to allege these and any other relevant facts in a First Amended Complaint.

AOB at 55. This addition, Clark argues, would solve the problem that her UTPA was time-barred. *Id*. at 53-54.

This new allegation was in front of the District Court when it granted Eddie Bauer's Motion to Dismiss, as Clark included it verbatim in her Opposition brief. SER–67. Even with this new allegation, however, Clark's vague allegations about how she learned of Eddie Bauer's deceptive conduct would not be sufficient to excuse her untimely lawsuit.

Moreover, as the District Court held, "any amendment would be futile given her inability to plead an ascertainable loss." ER–14–15. Where, as here, "a proposed amendment would be futile, there is no need to prolong the litigation by permitting further amendment." *Gardner v. Martino*, 563 F.3d 981, 990 (9th Cir. 2009) (quoting *Chaset v. Fleer/Skybox Int'l, LP,* 300 F.3d 1083, 1088 (9th Cir. 2002)). Clark repeats many times that she is entitled to leave to amend (*see, e.g*., AOB at 52), but she does not explain how any amendment would help her state a claim. *Gardner*, 563 F.3d at 991 (no abuse of discretion in denying leave to amend where "Appellants did not propose any new facts or legal theories for an amended

46

complaint and therefore gave the Court no basis to allow an amendment."). The face of the Complaint makes clear that Clark has not suffered ascertainable loss, because she received the exact items she wanted and the exact price she agreed to pay. Regardless of how she frames her allegations, her UTPA claim will fail. Similarly, while Clark requests leave to amend to allege that she lacks an adequate remedy at law, she does not specify how any changes could help her state a claim for equitable relief.

Clark's repeated failures to request leave to amend further support dismissal with prejudice. Clark never requested leave to amend, let alone submit a copy of her proposed amended Complaint as required by Civil Local Rule 15-1. *Stover v. Experian Holdings, Inc.*, 978 F.3d 1082, 1086–88 (9th Cir. 2020) ("Because Stover did not request leave to amend her complaint in the district court, it would not be appropriate for this court to grant it."); *Alaska v. United States*, 201 F.3d 1154, 1163–64 (9th Cir. 2000) ("Where a party does not ask the district court for leave to amend, the request on appeal to remand with instructions to permit amendment comes too late.") (internal quotation marks and alteration omitted). Clark did not amend her Complaint as a matter of right in response to Eddie Bauer's Motion to Dismiss, and her Opposition did not request leave to amend. SER–39–70. When the District Court dismissed her Complaint, Clark chose to appeal rather than moving to reopen the judgment and amend her Complaint. *See also 3WL, LLC v.*

*Master Protec., LP*, 851 Fed. Appx. 4 (9th Cir. 2021) ("It [is] not incumbent on the district court to create some basis for vacating the judgment when [the plaintiff] itself [has] not offered any.").

Clark should not now be given the chance to amend her Complaint when she has repeatedly failed to ask for leave to do so, and has not identified any amendments that could save her case.

## **CONCLUSION**

For all of the foregoing reasons, this Court should affirm the District Court's

dismissal with prejudice.

Dated: August 27, 2021      Respectfully submitted,

STEPTOE & JOHNSON LLP


By  /s/ Stephanie A. Sheridan      
      STEPHANIE A. SHERIDAN
      MICHAEL VATIS
      ANTHONY J. ANSCOMBE
      MEEGAN B. BROOKS

*Attorneys for Defendants and Appellees*
*EDDIE BAUER LLC and EDDIE BAUER*
*PARENT LLC*

49

## **CERTIFICATE OF COMPLIANCE**

Pursuant to Federal Rules of Appellate Procedure 32(a)(7)(C), I certify that this Answering Brief is printed in a 14-point proportionally spaced typeface and is 12,5661 words long, exclusive of the tables and certificates. Accordingly, this Brief complies with Rule 32(a)(7)(B).

Dated: August 27, 2021    Respectfully submitted,

STEPTOE & JOHNSON LLP

By  /s/ Stephanie A. Sheridan
      STEPHANIE A. SHERIDAN
      MICHAEL VATIS
      ANTHONY J. ANSCOMBE
      MEEGAN B. BROOKS

*Attorneys for Defendants and Appellees*
*EDDIE BAUER LLC and EDDIE BAUER*
*PARENT LLC*

## <u>STATEMENT OF RELATED CASES</u>

Appellees are aware of no related cases currently pending before the Court.

Dated: August 27, 2021   Respectfully submitted,

         STEPTOE & JOHNSON LLP


         By  /s/ Stephanie A. Sheridan
          STEPHANIE A. SHERIDAN
          MICHAEL VATIS
          ANTHONY J. ANSCOMBE
          MEEGAN B. BROOKS

         *Attorneys for Defendants and Appellees*
         *EDDIE BAUER LLC and EDDIE BAUER*
         *PARENT LLC*

## **<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on August 27, 2021, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system.

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

  /s/ Kirstin E. Largent