No. 21-35334

IN THE UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

SUSAN CLARK, for herself and/or
on behalf of all others similarly situated,

*Plaintiff-Appellant*,

v.

EDDIE BAUER LLC, and
EDDIE BAUER PARENT, LLC,

*Defendants-Appellees.*

On Appeal from the United States District Court
for the Western District of Washington
No. 2:20-cv-01106-JCC
Hon. John C. Coughenour

PLAINTIFF-APPELLANT'S
REPLY BRIEF

HATTIS & LUKACS
Daniel M. Hattis
Paul Karl Lukacs
Che Corrington
400 108th Avenue NE, Suite 500
Bellevue, WA 98004
Telephone: (425) 233-8628
*Attorneys for Plaintiff-Appellant*

# TABLE OF CONTENTS

**Page**

I.     MS. CLARK HAS PLAUSIBLY ALLEGED IMMINENT HARM..............1

II.    MS. CLARK POSSESSES STANDING BECAUSE EDDIE BAUER CONTINUES ITS ILLEGAL FALSE DISCOUNT ADVERTISING PRACTICES THAT WILL CAUSE THE SAME HARM...........................7

III.   MS. CLARK LACKS AN ADEQUATE REMEDY AT LAW...................13

     A.     Money Damages Do Not Afford A "Complete" Remedy. ................ 13

     B.     *Sonner* Allows Damages To Compensate For Past Harm And Injunctive Relief To Prevent Future Harm......................................... 17

     C.     *Sonner* Allows Ms. Clark To Pray For Alternative Remedies........... 18

     D.     Ms. Clark Satisfies *Sonner* By Alleging A Lack Of Adequate Legal Remedies. .................................................................................. 20

     E.     Ms. Clark Should Be Granted Leave To Amend. ............................. 20

IV.   MS. CLARK ALLEGES THREE FORMS OF "ASCERTAINABLE LOSS" UNDER OREGON LAW. ...........................21

     A.     Ms. Clark Alleges The Loss Of An Advantageous Bargain. ............. 21

     B.     Ms. Clark Alleges The Loss Of Her Purchase Price.......................... 25

         1.     Ascertainable Loss May Be A Result Of *Any* Violation Of ORS 646.608............................................................................25

         2.     This Court Should Rely Upon *Hinojos v. Kohl's Corporation*............................................................................26

     C.     Ms. Clark Alleges Ascertainable Loss Because Eddie Bauer's False Advertising Allowed Eddie Bauer To Charge Higher Prices For Its Products.......................................................................... 29

V.     CONCLUSION...............................................................................................29

i

# TABLE OF AUTHORITIES

**Cases**                                                                                                                   **Pages**

*Alaska Wilderness League v. Jewell,*
   37 Fed. Appx 976 (9th Cir. 2015)........................................................................12

*Audrey Heredia v. Sunrise Senior Living LLC,*
   No. 8:18-CV-01974-JLS-JDE,
   2021 WL 819159 (C.D. Cal. Feb. 10, 2021) ........................................................19

*Boyce's Executors v. Grundy,*
   28 U.S. 210 (1830)............................................................................16

*Brown v. Madison Reed, Inc.,*
   No. 21-CV-01233-WHO,
   2021 WL 3861457 (N.D. Cal. Aug. 30, 2021) ..................................................20

*Bruton v. Gerber Products Co.,*
   No. 12-CV-02412-LHK,
   2018 WL 1009257 (N.D. Cal. Feb. 13, 2018) ..................................................12

*Carney v. Adams,*
   141 S. Ct. 493 (2020)..........................................................................5

*Carrillo v. City of Los Angeles,*
   798 F.3d 1210 (9th Cir. 2015) ..............................................................5

*Cepelak v. HP Inc.,*
   No. 20-CV-02450-VC,
   2021 WL 5298022 (N.D. Cal. Nov. 15, 2021) ..................................................18

*Clark v. American Honda Motor Co.,*
   528 F. Supp. 3d 1108 (C.D. Cal. 2021) ............................................................15

*Corcoran v. CVS Health,*
   No. 15-CV-03504-YGR,
   2017 WL 1065135 (N.D. Cal. March 21, 2017)..................................................10

*D'Lil v. Best Western Encina Lodge & Suites,*
    538 F.3d 1031 (9th Cir. 2008) ..............................................................6

*Davidson v. Kimberly-Clark Corp.,*
    889 F.3d 956 (9th Cir. 2018) ...........................................1, 2, 10, 28

*Edleson v. Travel Insured Int'l, Inc.,*
    No. 21-CV-323-WQH-AGS,
    2021 WL 4334075 (S.D. Cal. Sept. 23, 2021)...................................19

*Guthrie v. Transamerica Life Ins. Co.,*
    No. 3:21-CV-04688-WHO,
    2021 WL 4314909 (N.D. Cal. Sept. 23, 2021)..................................20

*Haas v. Travelex Ins. Servs. Inc.,*
    No. 20-CV-06171O-DWP-LAX,
    2021 WL 3682309 (C.D. Cal. Aug. 19, 2021) ..................................19

*Haskins v. Symnatec Corp.,*
    654 Fed. Appx. 338 (9th Cir. 2016)...................................................11

*Hinojos v. Kohl's Corp.,*
    718 F.3d 1098 (9th Cir. 2013) ...............................................23, 26, 27

*In re Juul Labs, Inc., Antitrust Litig.,*
    No. 20-CV-02345-WHO,
    2021 WL 3675208 (N.D. Cal. Aug. 19, 2021) .................................21

*In re: Coca-Cola Products Marketing And Sales Practices Litigation,*
    2021 WL 3878654 (9th Cir. Aug. 31, 2021) .......................................6

*Kohler v. Presidio Int'l, Inc.,*
    782 F.3d 1064 (9th Cir. 2015) ............................................................4

*Lanovaz v. Twinings North America, Inc.,*
    726 Fed. Appx. 590 (9th Cir. 2018)....................................................5

*Lofton v. Verizon Wireless (VAW) LLC,*
    586 Fed. Appx. 420 (9th Cir. 2014)..................................................12

iv

*Maeda v. Pinnacle Foods Inc.,*
   390 F. Supp. 3d 1231 (D. Hawaii 2019)...............................................3

*Mayweather v. Woodford,*
   393 Fed. Appx. 425 (9th Cir. 2010)....................................................12

*Nacarino v. Chobani, LLC,*
   No. 20-CV-07437-EMC,
   2021 WL 3487117 (N.D. Cal. Aug. 9, 2021) ....................................17

*Northern California Power Agency v. Grace Geothermal Corp.,*
   469 U.S. 1306 (1984).........................................................................13

*Pearson v. Phillip Morris, Inc.,*
   361 P.3d 3 (Or. 2015) ...................................................25, 26, 27, 29

*Polo Fashions, Inc. v. Dick Bruhn, Inc.,*
   793 F.2d 1132 (9th Cir. 1986) ..........................................................10

*Scilex Pharmaceuticals Inc. v. Sanofi-Aventis U.S. LLC,*
   --- F. Supp. 3d ---, No. 21-CV-01280-JST,
   2021 WL 3417590 (N.D. Cal. Aug. 5, 2021) ....................................17

*Simonsen v. Sandy River Auto, LLC,*
   413 P.3d 982 (Or. Ct. App. 2018)........................................21, 22, 23

*Sonner v. Premier Nutrition Corp.,*
   971 F.3d 834 (9th Cir. 2020) ............................................................13

*Stewart v. Kodiak Cakes, LLC,*
   --- F. Supp. 3d ---, No. 19-cv-2454-MMA (MSB),
   2021 WL 1698695 (S.D. Cal. Apr. 29, 2021) ......................................3

*TRW, Inc. v. F.T.C.,*
   647 F.2d 942 (9th Cir. 1981) ............................................................11

*United States v. Bajakajian,*
   84 F.3d 334 (9th Cir. 1996) ................................................................9

*Walters v. Vitamin Shoppe Indus., Inc.,*
 701 Fed App'x 667 (9th Cir. 2017) ..........................................25, 26, 27

*Weigel v. Ron Tonkin Chevrolet Co.,*
 690 P.2d 488 (1984)..........................................................................28

*Wessel v. City of Albuquerque,*
 299 F.3d 1186 (9th Cir. 2002) ...........................................................12

*Zeiger v. WellPet LLC,*
 526 F. Supp. 3d 652 (N.D. Cal. 2021) ...............................................19

## Statutes

Judiciary Act of 1789 ..............................................................................14

ORS 646.636 ................................................................................... 18, 19

ORS 646.638 ................................................................................... 19, 26

ORS 646.883 ...........................................................................................9

## Treatises

Joseph Story, *Commentaries On Equity Jurisprudence As
 Administered In England And America* (1st ed. 1836)...................15

POMEROY'S EQUITY JURISPRUDENCE (3rd ed. 1905)................................16

Restatement (Second) of Torts (1979)....................................................15

## Regulations

16 C.F.R. § 233.1 ....................................................................................7

OAR 137-020-0010.......................................................................... 22, 23

## Constitutional Provisions

U.S. CONST. ART III, § 2 ..........................................................................14

## REPLY BRIEF

Plaintiff and Appellant Susan Clark hereby files this Reply Brief in support of her appeal and in response to the Answering Brief filed by Defendants and Appellees Eddie Bauer LLC and Eddie Bauer Parent LLC (collectively "Eddie Bauer"):

## I.   MS. CLARK HAS PLAUSIBLY ALLEGED IMMINENT HARM.

In its Answering Brief ("Opposition"), Eddie Bauer contends that Ms. Clark lacks Article III standing for injunctive relief because she fails to allege sufficiently "imminent" plans to shop at Eddie Bauer again. Oppo. 13–18. Eddie Bauer's argument is foreclosed by this Court's decision in *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956 (9th Cir. 2018), which held that a plausibly alleged desire to make a purchase "in the future" (*Ibid.* 967, 969–70) is sufficient to confer standing for purposes of forward-looking injunctive relief under California's false advertising statutes.

In the operative Complaint, Ms. Clark alleges that she "would shop at one of Eddie Bauer's Oregon Outlet stores again if she could have confidence regarding the truth of Eddie Bauer's prices and the value of its products." Compl. ¶ 75 (ER-30). According to *Davidson*, that is all that Ms. Clark is required to allege.

Eddie Bauer's belief that Ms. Clark must allege more is based on a misreading of *Davidson*. When the *Davidson* court recited what was in the record,

the court noted that Ms. Davidson made four potentially relevant allegations regarding future injury: (1) she "continues to desire to purchase" the product (in that case, flushable wipes); (2) she "would purchase" truly flushable wipes manufactured by the defendant; (3) she "regularly visits stores" where the defendant's wipes are sold; and (4) she is continually presented with the product. *Davidson*, 889 F.3d at 970–71.

But, when the *Davidson* court made its ruling that Ms. Davidson's allegations were sufficient to confer standing to request injunctive relief, the court looked *only* at her allegations of a desire to purchase the product again. In support of its holding that Ms. Davidson possessed standing, the court stated, "Davidson has alleged that she desires to purchase Kimberly-Clark's flushable wipes." *Id.* at 971. After the paragraph that contains this sentence, the decision moved on to the different issue of what constitutes a concrete injury.

Ms. Davidson's desire to make additional purchases at an unstated time in the future was sufficient to confer standing for injunctive relief in a false advertising case. *Davidson*'s standing holding is *not* based on Ms. Davidson's allegation that she "regularly visits stores" where the defendant's wipes are sold, and the holding is *not* based on Ms. Davidson's allegation that she is continually presented with the product. *Id.* at 970–971. While the decision *mentions* those allegations, the holding is not *based* on them.

2

District courts within this Circuit have applied *Davidson*'s ruling regarding imminence. *See*, *e.g.*, *Stewart v. Kodiak Cakes, LLC*, --- F. Supp. 3d ---, No. 19-cv-2454-MMA (MSB), 2021 WL 1698695, at *10 (S.D. Cal. Apr. 29, 2021) ("Plaintiffs face an injury of being unable to rely upon Defendant's 'non-GMO' marketing statements in deciding whether to purchase the product in the future. Pursuant and similar to *Davidson*, Plaintiffs show a concrete injury that subjects Plaintiffs to an imminent or actual threat of future harm.") (citation omitted); *Maeda v. Pinnacle Foods Inc.*, 390 F. Supp. 3d 1231, 1261 (D. Hawaii 2019) ("the Court finds that Plaintiff Maeda has adequately alleged that he faces an imminent or actual threat of future harm by being unable to rely on Defendant's packaging and marketing.").

Moreover, this Court should note that the *Davidson* case is about a product while this case is about a chain of outlet stores. In ordinary life, a consumer may see a product every week at the grocery store, which is why Ms. Davidson could allege that she "regularly visits" stores selling the product and that she was "continually presented" with its misleading packaging. But people do not ordinarily make weekly visits to a specific clothing store chain like they do a grocery store and, consequently, would not be continually presented with advertisements specific to that clothing store chain. Ms. Clark's allegations are

3

commensurate with the type of shopping alleged.[1]

Although *Davidson* controls the decision on this issue, Eddie Bauer's Opposition cites several other judicial decisions. All are addressed in *Davidson* or are inapposite.

Eddie Bauer cites six U.S. Supreme Court decisions (Oppo. 13–14), but five of those decisions were decided prior to *Davidson* and four are cited within *Davidson* itself.[2] In other words, this Court already considered the impact of those precedents when it decided *Davidson*. To the extent that Eddie Bauer is requesting that this panel revisit its interpretation of Supreme Court precedent and overrule *Davidson*, Eddie Bauer is well aware of the fact that it does not have the authority to make such a request. *See Kohler v. Presidio Int'l, Inc.*, 782 F.3d 1064, 1070 (9th Cir. 2015) (rejecting Eddie Bauer's attempt to avoid a prior panel's holding).

---

[1]    Eddie Bauer's insistence that Ms. Clark regularly visit its outlet stores is also absurd given that she alleges that she will not make a purchase until Eddie Bauer ceases its false advertising practices. Essentially, Eddie Bauer demands that Ms. Clark visit its outlet stores, purchase nothing, and return home, and to do so regularly to establish standing. No court has ever required such a futile act by a plaintiff to establish standing.

[2]    On page 967, *Davidson* cites *Clapper v. Amnesty International USA*, 568 U.S. 398 (2013), *Summers v. Earth Island Institute*, 555 U.S. 488 (2009), *Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992), and *City of Los Angeles v. Lyons*, 461 U.S. 95 (1983). The pre-*Davidson* decision cited in the Opposition but not cited within *Davidson* is *O'Shea v. Littleton*, 414 U.S. 488 (1974).

The remaining Supreme Court case—*Carney v. Adams*, 141 S. Ct. 493 (2020)—is "a highly fact-specific case" involving a challenge to Delaware's judicial nomination statutes. The participating justices unanimously held that, in equal protection cases, the imminence requirement is satisfied if the plaintiff is "able and ready" to apply for a government office or contract. Ms. Clark is not alleging an equal protection claim (although she is certainly "able and ready" to shop at Eddie Bauer if it ceased its false advertising).

Eddie Bauer's citations to four out-of-circuit decisions regarding imminence are irrelevant (Oppo. 14–15). *Davidson* is the law in this circuit, regardless of what a sister circuit holds. *See Carrillo v. City of Los Angeles*, 798 F.3d 1210, 1222–23 (9th Cir. 2015). *See also* Oppo. 15–16 (citing inapplicable out-of-circuit Americans With Disabilities Act decisions).

That leaves Eddie Bauer with three remaining citations to Ninth Circuit opinions—each of which is distinguishable. The decision in *Lanovaz v. Twinings North America, Inc.*, 726 Fed. Appx. 590, 591 (9th Cir. 2018), involves a plaintiff who testified that "she would not purchase Twinings products again, even if the company removed the allegedly misleading labels"; this is the opposite of Ms. Clark, who alleges she would shop at Eddie Bauer again if it ceased its false advertising (Compl. ¶ 75 (ER-30)).

Likewise, in the decision, *In re: Coca-Cola Products Marketing And Sales Practices Litigation*, 2021 WL 3878654, at *2 (9th Cir. Aug. 31, 2021), "[n]one of the plaintiffs in this case allege a desire to purchase Coke *as advertised*" and, at most, "would consider" buying Coke once the false advertising ceased. Here, Ms. Clark wants Eddie Bauer's discounts to be as large as advertised and "would shop"—a far more certain intent than "would consider"—at Eddie Bauer again if the products were truly discounted (Compl. ¶ 75 (ER-30)).

Finally, *D'Lil v. Best Western Encina Lodge & Suites*, 538 F.3d 1031, 1034–36 (9th Cir. 2008), involved an evidentiary hearing—not a pleading challenge—regarding whether an ADA plaintiff had a "legitimate intent" to return to a specific hotel such that there was a "sufficient likelihood that he will again be wronged in a similar way." Whatever the *evidentiary* standard may be in an ADA case, the *pleading* standard in a false advertising case is set by *Davidson*; while it may make sense for a court to require the existence of specific plans to visit a hotel in a distant city for an ADA case, people do not ordinarily make specific plans or reservations to shop for clothes at outlet stores.

Ultimately, the standards that apply to ADA violations or equal protection cases or environmental injuries do not apply to false advertising claims. *Davidson* decided what constitutes "imminent" harm under Article III in a false advertising

case—a plausibly alleged inability to rely in the future upon the defendant's advertising—and Ms. Clark satisfies the standard.

## II.   MS. CLARK POSSESSES STANDING BECAUSE EDDIE BAUER CONTINUES ITS ILLEGAL FALSE DISCOUNT ADVERTISING PRACTICES THAT WILL CAUSE THE SAME HARM.

Eddie Bauer contends that it ceased its false discounting scheme seven months before the Complaint was filed and that, consequently, Ms. Clark lacks standing to seek injunctive relief enjoining Eddie Bauer's violations of the UTPA. Oppo. 18. Eddie Bauer is incorrect because the District Court found that Eddie Bauer's new advertising practice in its Eddie Bauer Outlet brick-and-mortar stores, which consists of using the phrase "comparable value" next to the list price, continues to violate Oregon's Unfair Trade Practices Act ("UTPA").  Further, Eddie Bauer continues to perpetrate its original false discount advertising scheme (utilizing advertised discounts from inflated list prices *without* using the phrase "comparable value") on the website for its Eddie Bauer Outlet stores.

The Complaint alleges that Eddie Bauer violated the UTPA by creating inflated list prices (at which Eddie Bauer never or rarely offered its products) and then advertising that its products were "on sale" at large discounts off the phony list prices. This is a classic "former price" comparison; the consumer understands the discount to be "a reduction from the advertiser's own former price for an article." 16 C.F.R. § 233.1(a). *See also* Compl. ¶¶ 53, 63 (Ms. Clark believed the

advertised discounts were off Eddie Bauer's normal or regular prices for those products).

In its Motion To Dismiss Plaintiff's Complaint, Eddie Bauer claimed that, seven months prior to the filing of the Complaint, Eddie Bauer switched from advertising "former price" comparisons to advertising "comparable value" comparisons. *See* Declaration of Alison Woerman, ¶ 10 (SER-40) ("This value comparison is based on the price of competing products of similar quality and style in the market.").

Eddie Bauer insists that this change strips Ms. Clark of standing to seek prospective injunctive relief under the UTPA. *See* Oppo. 18–22. Eddie Bauer is mistaken for several reasons.

First, and most obviously, the District Court ruled that Eddie Bauer's "comparable value" advertising in its brick-and-mortar retail stores *continues to violate the UTPA*—which means that Ms. Clark possesses standing to pray for an injunction enjoining Eddie Bauer's *ongoing* UTPA violations. Eddie Bauer is taking the morally tone-deaf position that Ms. Clark cannot enjoin its old violations of the UTPA in its retail stores because Eddie Bauer is engaging in new, improved violations of the UTPA.

In an attempt to prove its change of practices, Eddie Bauer submitted to the District Court a photograph of one of its new "comparable value" tags (SER-40).

Eddie Bauer's decision to file this evidence backfired when the District Court held that the new tag also violated the UTPA. "[A]ccording to the UTPA, Eddie Bauer must provide the *origin* of any such reference price, Or. Rev. Stat. § 646.885(2). An opaque reference to a comparable value does not meet this requirement. Nor does a reference on the tag to a comparable value, without support for its basis, reduce the injury Ms. Clark would suffer. An inflated reference price, regardless of its source, may still cause a consumer such as Ms. Clark confusion in that she may still believe she is getting a deal when, in fact, she is not." Order 4–5 (ER-8–9).

The District Court's ruling regarding Eddie Bauer's unlawful comparable value tags is correct. Under the UTPA, "It shall be unlawful for a seller to include a price comparison in an advertisement unless . . . the seller clearly and conspicuously identifies in the advertisement the *origin* of the price that the seller is comparing to the seller's current price." ORS 646.883(1) (emphasis added). The photograph of Eddie Bauer's comparable value tag (SER-40) advertises a comparison without stating the origin of the comparison.[3]

The key to standing when seeking a forward-looking remedy is whether the plaintiff will be subject to a similar harm in the future. *Davidson* provides the rule:

---

[3]     The Court should disregard Eddie Bauer's attempt to challenge the District Court's comparable value ruling because Eddie Bauer failed to file a cross-appeal. *United States v. Bajakajian*, 84 F.3d 334, 338 (9th Cir. 1996).

"Where standing is premised entirely on the threat of repeated injury, a plaintiff must show a sufficient likelihood that he will again be wronged in a similar way. In determining whether an injury is similar, we must be careful not to employ too narrow or technical an approach. Rather, we must examine the questions realistically: we must reject the temptation to parse too finely, and consider instead the context of the inquiry." *Davidson*, 889 F.3d at 967 (citations and quotation marks omitted).

Obviously, a defendant ceasing one type of false discount advertising (on which a plaintiff cannot rely) and then substituting it with another type of false discount advertising (on which a plaintiff cannot rely) exposes a plaintiff to a similar—indeed, identical—injury (her inability to rely). Eddie Bauer's argument is a narrow, technical attempt to parse too finely.[4]

Second, Eddie Bauer's decision to cease advertising false former prices is not "irrefutably demonstrated and total." *Polo Fashions, Inc. v. Dick Bruhn, Inc.*, 793 F.2d 1132, 1135 (9th Cir. 1986). In its *brick-and-mortar retail stores*, the only thing Eddie Bauer did was switch from unlawfully advertising former prices to

---

[4]     Eddie Bauer cites *Corcoran v. CVS Health*, No. 15-CV-03504-YGR, 2017 WL 1065135, at *5 n.8 (N.D. Cal. March 21, 2017), for the proposition that Ms. Clark cannot request relief enjoining Eddie Bauer's comparable value references because "such references have not been litigated below." Oppo. 21. But Eddie Bauer's comparable value tags *were* litigated below; Eddie Bauer dislikes the District Court's ruling.

unlawfully advertising comparable values. Meanwhile, on the *website* for its Eddie Bauer Outlet stores, Eddie Bauer *continues* (contrary to the impression left by the carefully worded Woerman Declaration (SER-40)) to perpetrate its original false discount advertising scheme as pled in the Complaint *without* using the phrase "comparable value."[5] The only thing that Eddie Bauer has irrefutably demonstrated is its commitment to advertising false discounts.

One of the decisions cited by Eddie Bauer (*TRW, Inc. v. F.T.C.*, 647 F.2d 942, 954 (9th Cir. 1981)) (Oppo. 18–19), supports Ms. Clark on this point. Eddie Bauer's pivot in (only) its brick-and-mortar retail stores to a different but equally harmful and unlawful false discount advertising scheme demonstrates—*embodies*—the "cognizable danger of recurrent violation" that *TRW* sets as a standard for prospective injunctive relief.[6]

---

[5]     After Ms. Clark filed her Opposition to the Motion To Dismiss in the trial court, Eddie Bauer launched the website for its Eddie Bauer Outlet stores at https://www.eddiebaueroutlet.com/. An investigation by Ms. Clark's counsel has confirmed that the former price discounts on the Outlet stores website (which do not utilize the phrase "comparable value") are likewise fake, thereby continuing to harm Oregon consumers.

[6]     Another decision cited by Eddie Bauer—*Haskins v. Symnatec Corp.*, 654 Fed. Appx. 338, 339 (9th Cir. 2016) (Oppo. 21)—supports Ms. Clark. There, the plaintiff failed to allege that the misrepresentations were "part of an extensive and long-term advertising campaign"; here, Ms. Clark alleges a brand-wide false discounting scheme of at least six years' duration (Compl. ¶¶ 21, 38 (ER-19, 24–25)).

Third, other judicial decisions cited by Eddie Bauer are inapposite. The citation to *Bruton v. Gerber Products Co.*, No. 12-CV-02412-LHK, 2018 WL 1009257 (N.D. Cal. Feb. 13, 2018) (Oppo. 19), is particularly inapt because, while the defendant in *Bruton* ceased its false labelling, there was no allegation that Gerber's new labels were unlawful, and the court found that the new labeling "is no longer inaccurate." *See Bruton*, 2018 WL 1009257, at *6–*7. Here, Eddie Bauer is engaging in continued illegality.

Since Ms. Clark can still obtain "meaningful relief" from this Court regarding Eddie Bauer's ongoing UTPA violations, *Alaska Wilderness League v. Jewell*, 37 Fed. Appx 976, 980 (9th Cir. 2015) (Oppo. 18) aids Ms. Clark more than Eddie Bauer. The decision in *Lofton v. Verizon Wireless (VAW) LLC*, 586 Fed. Appx. 420, 421 (9th Cir. 2014), is fact-driven; plaintiff's grievance about surreptitiously recorded telephone calls was with a telemarketing sub-contractor that, at some point during the dispute, lost its contract with Verizon and thereby lost its financial incentive to call the plaintiff. The terse dispositions in *Mayweather v. Woodford*, 393 Fed. Appx. 425 (9th Cir. 2010), and *Wessel v. City of Albuquerque*, 299 F.3d 1186 (9th Cir. 2002), arise from the unique legal environments of prison management and union fair share payments, respectively— not false advertising.

### III. MS. CLARK LACKS AN ADEQUATE REMEDY AT LAW.

One of the reasons this appeal exists is because the District Court erroneously held that "Ms. Clark's complaint does not contain plausible allegations explaining *why* her legal remedies are inadequate as to past and future harms—both are financial and both can be cured by the monetary damages, *i.e., legal relief*, afforded by the UTPA." Order 7 (ER-10). The District Court then rejected on the same basis Ms. Clark's argument that she should be allowed to pray for alternative remedies. *Ibid.*

As explained in the Appellant's Opening Brief and hereinbelow, it is clear from the face of the Complaint why legal remedies are inadequate. The District Court erred because it misread this Court's decision in *Sonner v. Premier Nutrition Corp.*, 971 F.3d 834 (9th Cir. 2020).

### A. Money Damages Do Not Afford A "Complete" Remedy.

According to the well-worn saying, a "party seeking an injunction from a federal court must invariably show that it does not have an adequate remedy at law." *Northern California Power Agency v. Grace Geothermal Corp.*, 469 U.S. 1306, 1306 (1984) (Rehnquist, Circuit Justice). But the phrase "adequate remedy at law" is a synecdoche for the more elaborate phrase "plain, adequate and complete remedy"—and the historical meaning of "plain, adequate and complete remedy"

13

illustrates that Ms. Clark is entitled to pray for an injunction because money damages are not a complete remedy for the harms she alleges.

The judicial power of the federal government extends to cases in both "Law and Equity." U.S. CONST. ART III, § 2, cl. 1. The First Congress quickly codified the rule that a plaintiff had recourse to the equity side of the federal courts only when a plain, adequate and complete remedy was unavailable. *See* Judiciary Act of 1789 § 16, 1 Stat. 73, 82 ("[S]uits in equity shall not be sustained in either of the courts of the United States, in any case where plain, adequate and complete remedy may be had at law.").

The available legal remedies must be plain *and* adequate *and* complete— three different things—to prevent a plaintiff from having recourse to an equitable remedy like an injunction. In his famous treatise, U.S. Supreme Court justice Joseph Story explained each of the three parts of the test: "The remedy must be plain; for if it be doubtful and obscure at law, Equity would assert a jurisdiction. It must be adequate; for, if at law it falls short of what the party is entitled to, that founds a jurisdiction in Equity. And it must be complete; that is, it must attain the full end and justice of the case. It must reach the whole mischief, and secure the whole right of the party in a perfect manner, at the present time and in future; otherwise Equity will interfere, and give such relief and aid, as the exigency of the

14

particular case may require." Joseph Story, *Commentaries On Equity Jurisprudence As Administered In England And America* § 33 (1st ed. 1836).

Money damages do not provide complete relief. Remedies at law do not "reach the whole mischief"; they compensate a select number of plaintiffs and allow the defendant to continue its unlawful conduct. When an ongoing scheme is alleged, only an injunction can, as Justice Story wrote, "secure the whole right of the party in a perfect manner, at the present time *and in future*." *Id.* (emphasis added). Damages are an incomplete and therefore inadequate remedy.

A district court held that *Sonner* allows for the dismissal of a request for an injunction because people can file damages claims each time they are harmed in the future. *Clark v. American Honda Motor Co.*, 528 F. Supp. 3d 1108, 1121 (C.D. Cal. 2021) ("*Clark*") (Oppo. 23, 26). *Clark* is wrong on this point because one of the purposes of traditional equity jurisdiction is to prevent an inefficient multiplicity of future suits.

Multiple future damages actions are inadequate because they are inefficient. *See* Restatement (Second) of Torts § 933, comment a (1979) ("When the courts have analyzed these adequacy formulas, they have concluded that other remedies are to be deemed adequate if they are *as efficient* to the ends of justice as the injunction; otherwise, they are to be deemed inadequate. . . . . In many modern cases, such as those involving business torts when the paramount purpose is to

prevent the continuation of a tortious practice regarded as contrary to the public interest, injunctive relief is, as a matter of course, treated as the only appropriate remedy to provide adequate relief for all persons affected.") (emphasis added). *See also Boyce's Executors v. Grundy*, 28 U.S. 210, 215 (1830) ("It is not enough that there is a remedy at law; it must be plain and adequate, or in other words, *as practical and as efficient* to the ends of justice and its prompt administration, as the remedy in equity.") (emphasis added).

The nineteenth century treatise writer John Norton Pomeroy explained that money damages by themselves could only be adequate if the one action at law efficiently ended the entirety of the misconduct. "The legal remedy is not adequate simply because a recovery of pecuniary damages is possible. It is only adequate when the injured party can, by one action at law, recover damages which constitute a *complete and certain relief for the whole wrong*,—a relief virtually as efficient as that given by a court of equity." POMEROY'S EQUITY JURISPRUDENCE (3rd ed. 1905) § 1357, n.1 (emphasis added).

Pomeroy presciently explained why the *Clark* decision is wrong: A "remedy which prevents a threatened wrong is in its essential nature better than a remedy which permits the wrong to be done, and then attempts to pay for it by the pecuniary damages which a jury may assess." *Id.*

Equitable relief is better and more efficient than legal relief, which therefore is inadequate. On the face of her Complaint, Ms. Clark establishes that legal remedies are inadequate.

**B.    *Sonner* Allows Damages To Compensate For Past Harm And Injunctive Relief To Prevent Future Harm.**

Since Ms. Clark filed her Opening Brief, additional district courts have correctly interpreted *Sonner* as leaving unchanged the traditional practice by which a plaintiff can request money damages for past harm and an injunction to prevent future harm. *See*, *e.g.*, *Nacarino v. Chobani, LLC*, No. 20-CV-07437-EMC, 2021 WL 3487117, at *12 (N.D. Cal. Aug. 9, 2021) ("because the injunctive relief that Ms. Nacarino requests is prospective and her remedy at law, damages, is retrospective, her claim for an injunction under the UCL's unlawful prong is not barred by *Sonner*") (quotation marks omitted); *Scilex Pharmaceuticals Inc. v. Sanofi-Aventis U.S. LLC*, --- F. Supp. 3d ---, No. 21-CV-01280-JST, 2021 WL 3417590, at *7 (N.D. Cal. Aug. 5, 2021) ("Courts have found that a plaintiff may still seek injunctive relief under the UCL where damages would not protect against a future harm.") (collecting post-*Sonner* cases).

Since Ms. Clark alleges past harms—i.e., buying what she would not otherwise have bought (Compl. ¶¶ 57, 67, 71 (ER-28, 29–30))—and also alleges a different future harm—i.e., her inability to rely upon Eddie Bauer's future

advertising (Compl. ¶ 76) (ER-31))—Ms. Clark alleges on the face of her

Complaint that she lacks an adequate remedy at law for the future harms.[7]

### C. *Sonner* Allows Ms. Clark To Pray For Alternative Remedies.

Since Ms. Clark filed her Opening Brief, additional district courts have

correctly held that *Sonner* allows a party to plead for alternative remedies, at least

at the beginning of the litigation. *See*, *e.g.*, *Cepelak v. HP Inc.*, No. 20-CV-02450-

VC, 2021 WL 5298022, at *3 (N.D. Cal. Nov. 15, 2021) ("*Sonner* primarily speaks

to the ability of a federal court to award equitable relief at the end of the case. . . . .

While *Sonner* recognized that a complaint seeking equitable relief must plead the

basic requisites of the issuance of equitable relief including the inadequacy of

remedies at law, nothing in *Sonner* precludes plaintiffs from doing so in the

alternative to remedies at law. Indeed, the Federal Rules of Civil Procedure permit

demands for relief in the alternative. Fed. R. Civ. P. 8(a)(3). [¶] *Sonner*, therefore,

---

[7] Eddie Bauer also argues that Ms. Clark cannot seek an injunction because the "informational injury" recognized in *Davidson* is not a legally cognizable injury under the UTPA, and the UTPA does not permit a court to enjoin unlawful trade practices. Opp. 27–28. Eddie Bauer is wrong.

First, the UTPA permits the court to "make such additional orders or judgments . . . as may be necessary to ensure cessation of unlawful trade practices." ORS 646.636.

Second, Ms. Clark has already alleged the requisite injury to maintain a UTPA claim (i.e., the "ascertainable loss"). The informational injury described in *Davidson* is only required to establish Article III standing. Indeed, if Ms. Clark were in state court, she could obtain an injunction without needing to allege this additional injury.

should not be understood as a categorical bar to pleading claims for equitable relief under the UCL and damages under the CLRA in a single complaint, as plaintiffs can bring claims in the alternative under different legal theories."); *Edleson v. Travel Insured Int'l, Inc.*, No. 21-CV-323-WQH-AGS, 2021 WL 4334075, at *6 (S.D. Cal. Sept. 23, 2021) ("no controlling authority prevents a plaintiff from asserting alternative legal remedies at the pleading stage"); *Haas v. Travelex Ins. Servs. Inc.*, No. 20-CV-06171O-DWP-LAX, 2021 WL 3682309, at *6 (C.D. Cal. Aug. 19, 2021) (*Sonner* "cannot be read as reversing a clearly established circuit practice allowing plaintiffs to plead in the alternative at the earliest stages of litigation.") (collecting cases).[8]

---

[8]      Ms. Clark must be able to pray for alternative remedies because she is alleging her claims both as a putative class representative (*see* Compl**.** ¶ 79 (ER-31)) and also as a private attorney general seeking a public injunction to protect the general public (*see* Compl**.** ¶¶ 8, 113–14) (ER-17, 37–38).

     Post-*Sonner* courts have held that future harm to the general public cannot be remedied by damages. *See Audrey Heredia v. Sunrise Senior Living LLC*, No. 8:18-CV-01974-JLS-JDE, 2021 WL 819159, at *6–*7 (C.D. Cal. Feb. 10, 2021) (holding that damages cannot remedy the future harm to the general public that a public injunction is intended to redress); *Zeiger v. WellPet LLC*, 526 F. Supp. 3d 652, 687 (N.D. Cal. 2021) ("An injunction would ensure that he (and other consumers) can rely on WellPet's representations in the future. . . . California's consumer protection laws permit courts to issue injunctions that serve different purposes and remedy different harms than retrospective monetary damages."). The Oregon UTPA has similar injunctive provisions. *See* ORS 646.636**;** 646.638(1)**;** 646.638(8)(c).

### D. Ms. Clark Satisfies *Sonner* By Alleging A Lack Of Adequate Legal Remedies.

Since Ms. Clark filed her Opening Brief, additional district courts have correctly treated *Sonner* as providing merely a simple rule of pleading: that the inadequacy of legal remedies must be alleged. *See*, *e.g.*, *Guthrie v. Transamerica Life Ins. Co.*, No. 3:21-CV-04688-WHO, 2021 WL 4314909, at *4 (N.D. Cal. Sept. 23, 2021) ("I and many other district judges applying *Sonner* have understood it to require that a plaintiff must, at a minimum, *plead* that she lacks adequate remedies at law if she seeks equitable relief."). Since Ms. Clark alleges that she and the general public lack an adequate remedy at law (Compl. ¶¶ 113), Ms. Clark has satisfied *Sonner*'s simple rule of pleading.

### E. Ms. Clark Should Be Granted Leave To Amend.

Eddie Bauer argues that Ms. Clark's Complaint "offers no rationale for why any future harm cannot be remedied with damages." Oppo. 25. As argued above and in the Opening Brief, Ms. Clark believes the inadequacy of legal remedies appear on the face of her Complaint.

However, if the Court believes Ms. Clark's Complaint lacks an allegation or argument necessary to make it viable, this Court should order the District Court to grant Ms. Clark leave to amend—as other courts have done in light of *Sonner*. *See*, *e.g.*, *Brown v. Madison Reed, Inc.*, No. 21-CV-01233-WHO, 2021 WL 3861457, at *12 (N.D. Cal. Aug. 30, 2021) ("plaintiffs are given leave to amend to expressly

20

allege that their remedies at law are inadequate"); *In re Juul Labs, Inc., Antitrust Litig.*, No. 20-CV-02345-WHO, 2021 WL 3675208, at *23 (N.D. Cal. Aug. 19, 2021) (same).[9]

## IV. MS. CLARK ALLEGES THREE FORMS OF "ASCERTAINABLE LOSS" UNDER OREGON LAW.

### A. Ms. Clark Alleges The Loss Of An Advantageous Bargain.

Oregon law holds that an ascertainable loss under the UTPA includes the "loss of the value of the advantageous bargain that was represented." *Simonsen v. Sandy River Auto, LLC*, 413 P.3d 982, 983 (Or. Ct. App. 2018). The measure of this loss is "the difference between the value of the [product] as represented and the value of the [product] as purchased." *Id.* at 987.

In *Simonsen*, the plaintiff paid the true market value for the used car, which is why the jury awarded $0 damages. *Id.* at 988. Nevertheless, the court ruled that the plaintiff suffered an ascertainable loss because he did not receive "the better bargain that defendant had represented." *Id.*

Per *Simonsen*, Ms. Clark alleges the loss of the value of an advantageous bargain. Three products were represented by Eddie Bauer to have the values of

---

[9]     For the reasons stated in the Opening Brief at 53–56, nothing in Eddie Bauer's Opposition alters the fact that the District Court required Ms. Clark to plead facts not required by the UTPA's discovery statute and that the District Court acknowledged Ms. Clark's potential to amend—but then erroneously refused to grant leave to amend her one and only filed Complaint.

$39.99, $99.99, and $199.99. Compl. ¶¶ 48–49, 60 (ER-26–28). But the actual value of each product was at or near the purchase price—between 40% to 70% *less* than the represented value. Compl. ¶¶ 56–57, 66–67 (ER-28–30). Thus, Ms. Clark necessarily received something less than the advantageous bargain promised, and that something less is the ascertainable loss. *Simonsen*, 413 P.3d at 988.

Eddie Bauer attempts to avoid *Simonsen*'s holding by conflating the represented value and the purchase price. Oppo. 31. In Eddie Bauer's eyes, the represented value and the current price are the same; thus, Eddie Bauer maintains, a consumer who purchases the product at the current price receives the advertised value and therefore has not suffered an ascertainable loss. *Id.*

The obvious problem with Eddie Bauer's argument is that it ignores the existence of the list price. But, as Ms. Clark (as well as any reasonable consumer) understands, the represented value of each product is the list price printed on the product tags (Compl. ¶¶ 51–52, 62 (ER-27, 29)). Oregon law sees it that way, too.

According to the administrative rules promulgated to enforce the UTPA, a list price is a form of "reference price," which is defined as "any price . . . to which a person compares the currently represented offering price of its own goods." OAR 137-020-0010(5)(e). The use of reference prices violates the UTPA unless the retailer offered the product for sale at the reference price in good faith "[w]ithin the

preceding 30 days" or "[a]t any other time in the past which is identified." OAR 137-020-0010(6)(a)(A)–(B).

Ms. Clark alleges that Eddie Bauer violated Oregon's administrative rules regarding list prices. Compl. ¶ 101(7) (ER-36); Opening Br. 34–35. Ms. Clark's allegations are not based on her "subjective expectations" or "subjective disappointment" (Oppo. 31, 33); they are based on the objective fact that Eddie Bauer created (false) list prices and then advertised (false) discounts calculated off those list prices. Ms. Clark is well within her legal rights to allege an ascertainable loss that is the difference between the represented value (the false list price) and the actual value (the true regular price). *See Simonsen*, 413 P.3d at 988; *see also Hinojos v. Kohl's Corp.*, 718 F.3d 1098, 1105–06 (9th Cir. 2013) ("a product's 'regular' or 'original' price matters; it provides important information about the product's worth").

Eddie Bauer attempts to distinguish *Simonsen* by arguing that the misrepresentations in *Simonsen* were about a car's valve cover gaskets, which are different from the misrepresentations at bar (false discounts). Oppo. 35. Eddie Bauer misses the forest for the trees. While *Simonsen* involved hidden defects, the court stated that the actionable misrepresentation was the promise of "a really good deal" (i.e., an advantageous bargain). *Simonsen*, 413 P.3d at 988. Likewise, Eddie Bauer's actionable misrepresentation was also the promise of "a really good deal."

23

Both the *Simonsen* plaintiff and Ms. Clark did not receive their promised "really good deal," and thus, both suffered an ascertainable loss in the value of the advantageous bargain not received. Contrary to Eddie Bauer's assertions, *Simonsen*'s holding does not turn on *why* the plaintiff did not receive the advantageous bargain promised; all that matters is that the advantageous bargain was not received.

Eddie Bauer correctly states that Ms. Clark "places great reliance" upon *Simonsen*. Oppo. 35. That is because *Simonsen* is the law in Oregon and directly applicable to the case at bar. While Eddie Bauer lards its Opposition with dense citations to out-of-circuit courts interpreting the laws of other states (Oppo. 36–38), *Simonsen* is the applicable decision under Oregon law that this Court should follow.[10]

---

[10] Contrary to Eddie Bauer's assertions in footnote 10 of its Opposition at 34, the decisions in *Pearson v. Phillip Morris, Inc.*, 361 P.3d 3, 28 (Or. 2015), certainly applies to this case—*Pearson*'s legal holding, that is. This Court should apply *Pearson*'s three-part test for a UTPA claim stating that an ascertainable loss may be a result of *any* unlawful trade practice. *Ibid.*

Eddie Bauer ignores the three-part test and insists that *Pearson* limits ascertainable loss to only a few violations of the UTPA—namely, misrepresentations about a characteristic or quality of a product. But *Pearson* says the opposite—first recognizing that the UTPA prohibits over 76 unlawful trade practices and only then focusing on the relevant unlawful practice in the case, ORS 646.608(1)(e), misrepresentations about a characteristic or quality of a product. *Id.* at 21–22.

**B.    Ms. Clark Alleges The Loss Of Her Purchase Price.**

    1.    **Ascertainable Loss May Be A Result Of *Any* Violation Of ORS 646.608.**

Under Oregon law, Ms. Clark has alleged an ascertainable loss by pleading that she would not have purchased Eddie Bauer's products but for the alleged misrepresentations that violate ORS 646.608. *See Pearson*, 361 P.3d at 27; *Walters v. Vitamin Shoppe Indus., Inc.*, 701 Fed App'x 667, 670 (9th Cir. 2017) ("[Plaintiff] adequately pleaded his UTPA claim. He alleges that [Defendant] made representations that violate Or. Rev. Stat. § 646.608, and that he would not have purchased the product but for the alleged misrepresentations. The ascertainable loss, therefore, is the monetary value of a product that Walters would not otherwise have bought.").

As detailed in her Opening Brief at 32–35, Ms. Clark alleges that Eddie Bauer's false discount advertising violated at least seven provisions of ORS 646.608, and that she would not have purchased Eddie Bauer's products but for the alleged misrepresentations. This is all Ms. Clark is required to plead to establish an ascertainable loss under the UTPA.

In its Opposition at 38, Eddie Bauer repeats the District Court's misinterpretation of Oregon law, arguing that the purchase price cannot be a "loss" because Ms. Clark "did not identify any 'character or quality' that she had expected to get in the items she purchased but did not actually receive." In other

words, Eddie Bauer insists that ascertainable loss is limited to only certain violations of ORS 646.608. Eddie Bauer's argument fails in light of *Pearson*, *Walters*, and the statute's plain language: ascertainable loss may result from *any* violation of ORS 646.608. *Pearson*, 361 P.3d at 28; *Walters*, 701 Fed. App'x at 670; ORS 646.638(1); ORS 646.638(8)(a).

Because ascertainable loss may be a result of any violation of ORS 646.608, it does not matter which unlawful misrepresentation Ms. Clark relied upon in making her purchase—be it a misrepresentation about a characteristic of the product or a misrepresentation about a price reduction from the product's regular price. All that matters is that the misrepresentation violates ORS 646.608, and that Ms. Clark would not have purchased the products but for the unlawful misrepresentation.

### 2. This Court Should Rely Upon *Hinojos v. Kohl's Corporation*.

Contrary to Eddie Bauer's arguments (Oppo. 39–43), this Court's decision in *Hinojos v. Kohl's Corp.* explains why Ms. Clark should prevail on this appeal.

The plaintiff in *Hinojos* alleged that, due to false discount advertising, "he would not have purchased the goods in question absent this misrepresentation." 718 F.3d at 1105. This Court held that the price he paid for the products constituted "lost money or property" to satisfy the loss requirement under California's unfair competition ("UCL") and false advertising ("FAL") statutes. *See id.* at 1103–07.

This Court explained that a consumer incurs a "more obvious economic injury" from false price advertising than false labeling "because the bargain hunter's expectations about the product he just purchased is *precisely* that it has a higher perceived value and therefore has a higher resale value." *Id.* at 1106.

Eddie Bauer asks this Court to ignore the rationale and ruling in *Hinojos* for one reason only: *Hinojos* involved California's UCL and FAL, which require a plaintiff to have (to use the statutory phrase) "lost money or property," whereas Oregon's UTPA requires a plaintiff to have suffered an "*ascertainable* loss of money or property" (emphasis added). Oppo. 39. Eddie Bauer ends its argument there, however—never explaining how or why the Oregon Legislature's addition of the statutory term "ascertainable" changes anything.

To be "ascertainable," the loss need be only "objectively verifiable." *Pearson*, 361 P.32 at 22. In *Hinojos*, the "lost money or property" was the purchase price of the products that the plaintiff would not have bought but for the defendant's misrepresentations. 718 F.3d at 1105. The purchase price of a product is "objectively verifiable." Both the Oregon Supreme Court and this Court have already held that the purchase price of a product constitutes an "ascertainable loss of money or property" under the UTPA. *See Walters*, 701 Fed App'x at 670; *Pearson*, 361 P.3d at 27. And Eddie Bauer has conceded that the purchase price of the products Ms. Clark bought constitute "ascertainable" money or property.

Oppo. 39 ("the full price of each product Clark bought may be 'ascertainable' in the sense that one can put a determinate number on it").

There is no effective distinction between the California statutory phrase "lost money or property" and the Oregon statutory phrase "ascertainable loss of money or property." The Court can and should follow *Hinojos*, as it is the best framework for deciding the ascertainable loss issue in the false discounting context.

Eddie Bauer also states that "the loss requirements under California's UCL and FAL are less exacting than the loss requirements in other states' consumer protection laws." Oppo. 40. So what? Eddie Bauer does not claim that California's loss requirement is less exacting than Oregon's loss requirement, which is the only state that matters. If anything, Oregon's loss requirement appears to be *less exacting* than California's loss requirement. The Oregon Supreme Court explained that a loss under the UTPA "may be so small that the common law likely would reject it as grounds for relief, yet it will support an action under the statute." *Weigel v. Ron Tonkin Chevrolet Co.*, 690 P.2d 488, 494 (1984). Moreover, the *Weigel* court expressly declined to follow other states that took a more restrictive view of ascertainable loss. *See id.*[11]

---

[11]    Eddie Bauer also suggests that *Hinojos* was wrongly decided, citing out-of-circuit cases disagreeing with *Hinojos*. Oppo. 41–42. But *Hinojos* is a binding precedent that this Court has repeatedly reaffirmed and followed. *See*, *e.g.*, *Davidson*, 889 F.3d at 965.

28

### C. Ms. Clark Alleges Ascertainable Loss Because Eddie Bauer's False Advertising Allowed Eddie Bauer To Charge Higher Prices For Its Products.

Ms. Clark alleges that Eddie Bauer's false advertising artificially increased demand which, in turn, allowed Eddie Bauer to charge higher prices. Compl. ¶¶ 27, 109 (ER-22, 37); Opening Br. 47–48.

In opposition, Eddie Bauer argues that "the Oregon Supreme Court specifically rejected this theory in *Pearson*." Oppo. 43. Eddie Bauer is incorrect. The court in *Pearson* allowed the plaintiffs to take their theory all the way to trial, where the plaintiffs fell flat because they failed to provide expert testimony to support the theory. 361 P.3d at 26. *Pearson* stands for the proposition that this form of ascertainable loss is robust enough to proceed to trial.

## V. CONCLUSION

For the reasons stated in this Reply and the Opening Brief, Ms. Clark requests that this Court reverse the Order of the District Court.

Dated: November 19, 2021          HATTIS & LUKACS


By: *s/ Paul Karl Lukacs*
      Paul Karl Lukacs
Daniel M. Hattis
Paul Karl Lukacs
Che Corrington
400 108th Avenue NE, Suite 500
Bellevue, WA 98004
Telephone: (425) 233-8650
*Attorneys for Plaintiff-Appellant Susan Clark*

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

## Form 8. Certificate of Compliance for Briefs

**9th Cir. Case Number:** 21-35334

I am the attorney or self-represented party.

**This brief contains 6,985 words,** excluding the items exempted by Fed. R. App. P. 32(f). The brief's type size and typeface comply with Fed. R. App. P. 32(a)(5) and (6).

I certify that this brief *(select only one)*:

[**X**] complies with the word limit of Cir. R. 32-1.

[ ] is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

[ ] is an **amicus** brief and complies with the word limit of Fed. R. App. P. 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

[ ] is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

[ ] complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one)*:
    [ ] it is a joint brief submitted by separately represented parties;
    [ ] a party or parties are filing a single brief in response to multiple briefs; or
    [ ] a party or parties are filing a single brief in response to a longer joint brief.

[ ] complies with the length limit designated by court order dated _____.

[ ] is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature** *s/ Paul Karl Lukacs*      **Date** November 19, 2021

## **CERTIFICATE OF SERVICE**

*Susan Clark v. Eddie Bauer LLC and Eddie Bauer Parent LLC*

**Ninth Circuit Case No. 21-35334**

I hereby certify that I electronically filed the foregoing/attached document,

titled **Plaintiff and Appellant Susan Clark's Reply Brief**, on this date with the

Clerk of the Court for the United States Court of Appeals for the Ninth Circuit

using the Appellate Electronic Filing system.

By doing so, an electronic copy was served on:

Stephanie Sheridan, Esq.
Anthony Anscombe, Esq.
Michael A. Vatis, Esq.
Meegan Brooks, Esq.
STEPTOE & JOHNSON LLP

Marc C. Levy, Esq.
Thomas Arthur Shewmake, Esq.
SEED INTELLECTUAL PROPERTY LAW GROUP LLP

*Counsel for Defendants and Appellees*
*Eddie Bauer LLC and Eddie Bauer Parent LLC*


Signature: ___/s/ *Che Corrington*_____     Date: November 19, 2021