**FOR PUBLICATION**

**UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT**

| | |
|---|---|
| SUSAN CLARK, for herself and/or on behalf of all others similarly situated,<br>   *Plaintiff-Appellant*,<br><br>v.<br><br>EDDIE BAUER LLC; EDDIE BAUER PARENT, LLC,<br>   *Defendants-Appellees*. | No. 21-35334<br><br>D.C. No.<br>2:20-cv-01106-JCC<br><br><br>ORDER CERTIFYING QUESTION TO THE OREGON SUPREME COURT |

Filed April 14, 2022

Before: Jay S. Bybee, Carlos T. Bea, and Morgan Christen,
Circuit Judges.

Order

## SUMMARY[*]

### Oregon Law

The panel certified to the Supreme Court of Oregon the following question:

> Does a consumer suffer an "ascertainable loss" under Or. Rev. Stat. § 646.638(1) when the consumer purchased a product that the consumer would not have purchased at the price that the consumer paid but for a violation of Or. Rev. Stat. §§ 646.608(1)(e), (i), (j), (ee), or (u), if the violation arises from a representation about the product's price, comparative price, or price history, but not about the character or quality of the product itself?

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

## COUNSEL

Paul Karl Lukacs (argued), Daniel M. Hattis, and Che Corrington, Hattis & Lukacs, Bellevue, Washington, for Plaintiff-Appellant.

Michael A. Vatis (argued), Steptoe & Johnson LLP, New York, New York; Stephanie A. Sheridan, Anthony J. Anscombe, and Meegan B. Brooks, Steptoe & Johnson LLP, San Francisco, California; for Defendants-Appellees.

## ORDER

Susan Clark ("Plaintiff") bought garments from Eddie Bauer Outlet Stores advertising sales of 40–70% off. The price tags of the garments included two numbers: a higher price, which the parties call a "reference" or "list price," and a lower "sale" price. Plaintiff paid the "sale" price for the clothes. She alleges that she relied on the representation that she was getting the clothes on sale, but later discovered that the "list prices" were misleading because Eddie Bauer never sold some of the garments for the "list price" and that the Eddie Bauer Outlet Stores have perpetual sales of 40–70% off.

Plaintiff brought a single count under Oregon's Unlawful Trade Practices Act, Or. Rev. Stat. § 646.605 *et seq.* ("UTPA"), against Eddie Bauer's controlling entities, Eddie Bauer LLC and Eddie Bauer Parent LLC (collectively "Defendants"), in the District Court for the Western District of Washington, seeking money damages, equitable restitution, a permanent injunction, and the certification of a

class action.[1]  The diversity action alleges that Plaintiff would not have purchased the clothes at the prices that she paid if she had not been reasonably misled into thinking that the clothes she bought were usually sold by Eddie Bauer for (and had a true worth of) the "list price" on their price tags.

The district court granted Defendants' Fed. R. Civ. P. 12(b)(6) motion to dismiss with prejudice.  The district court held, as relevant here, that Plaintiff failed to plead that she suffered an "ascertainable loss of money or property" due to Defendants' unlawful trade practices, as required by § 646.638(1) of the UTPA.  The district court reasoned that Plaintiff failed to provide any cases recognizing an "ascertainable loss" under the UTPA "based *solely* on a plaintiff's failure to get as good of a deal as the plaintiff anticipated."  Relying primarily on *Pearson v. Philip Morris, Inc.*, 361 P.3d 3 (Or. 2015), the district court concluded that "[s]ome misstatement as to a characteristic, quality, or feature of the product is required."  Plaintiff timely appealed.

We conclude that the disposition of this appeal turns on a question of Oregon law: whether a consumer suffers an "ascertainable loss" under Or. Rev. Stat. § 646.638(1) when the consumer purchased a product that the consumer would not have purchased at the price that the consumer paid but for a violation of Or. Rev. Stat. §§ 646.608(1)(e), (i), (j), (ee), or (u), if the violation arises from a representation about the product's price, comparative price, or price history, but not about the character or quality of the product itself. Plaintiff has not presented any case recognizing an "ascertainable loss" under § 646.638(1) in such circumstances.  But we are not persuaded that *Pearson*

---

[1] Unless otherwise designated, citations to statutes in this order refer to the Oregon Revised Statutes.

requires us to reject Plaintiff's theories of loss, as the district court held.  We therefore exercise our discretion to certify the question to the Oregon Supreme Court.

Pursuant to Oregon Rule of Appellate Procedure 12.20(1)(a), we provide the following information for the consideration of the Oregon Supreme Court.

**FACTUAL AND PROCEDURAL HISTORY**

Defendants sell "clothing, accessories, and gear" in conventional retail stores, "Eddie Bauer Outlet Stores," and online.  "Nearly all of the products" Defendants sell are branded as "Eddie Bauer" and are exclusively sold by Defendants.

Plaintiff alleged that she visited the Eddie Bauer Outlet Store in Oregon on March 22, 2017.  She alleged she "saw prominent signs" throughout the store "advertising large percentage-off discounts and savings" and "reasonably believed that Eddie Bauer was having a special store-wide sale."  She then paid $19.99 for a Fleece Zip with a "product tag" showing "a printed list price of $39.99" that was accompanied by "signage" stating that it "was on sale for 50% off, at a selling price of $19.99."  She also paid $49.99 for a Microlight Jacket with a "product tag" showing "a price of $99.99" that was accompanied by "signage" stating that it "was on sale for 50% off, at a selling price of $49.99."  Her receipt read, for the Fleece Zip: "1 @ 39.99," "Item Discount 50.00%" of "(20.00)"; and for the Microlight Jacket: "1 @ 99.99," "Item Discount 50.00%" of "(50.00)."

Later, on April 5, 2018, Plaintiff returned the Microlight Jacket at a different Eddie Bauer Outlet Store in Oregon because it had a broken zipper.  She was given a $49.99 credit, which she applied to the purchase of a StormDown

Jacket.  The StormDown Jacket was located in the "Clearance" section of the store and its product tag showed a list price of $229.00 and a reduced price of $199.99 on a red sticker.  Adjacent signage indicated that it was for sale 50% off the lowest price marked on the tag.  Plaintiff purchased the jacket for a price of $99.99.

Plaintiff alleged she relied on the discount representations and advertised reference prices in making her March 2017 and April 2018 purchases, which led her to "reasonably believe[]" that "the list prices printed on the product tags of Eddie Bauer's products represented Eddie Bauer's usual and normal selling prices for the products"; that the "Fleece Zip was thereby worth and had a value of" and was "usually sold for, $39.99"; that the "Microlight Jacket was thereby worth and had a value of" and was "usually sold for, $99.99"; and that the StormDown Jacket "had a value of, and was recently normally and usually sold for, $199.99."

But Plaintiff alleged, based in part on her counsel's investigation, that "Eddie Bauer advertises perpetual store-wide sales . . . typically ranging from 40% to 70% off" Defendants "self-created list prices" on "all of its products" in Eddie Bauer's Outlet Stores.  She alleged that the Fleece Zip and Microlight Jacket were "Eddie Bauer Outlet-exclusive items" that were never offered for the purported prices of $39.99 and $99.99, but were "*always* offered at discounts of between 40% and 70% off the list prices printed on their tags."  She claims that the StormDown Jacket was never sold in any Eddie Bauer retail, outlet, or website for $199.99 or greater at any time in the 600 days preceding her purchase.  Plaintiff claims that she "first learned of Eddie Bauer's false advertising scheme, and that she was likely a victim of the scheme, on March 13, 2020."

Plaintiff filed a complaint against Defendants on July 16, 2020, alleging a single count under Oregon's UTPA. Section 646.638(1) of the UTPA authorizes the private right of action under which Plaintiff sues:

> [A] person that suffers an ascertainable loss of money or property, real or personal, as a result of another person's willful use or employment of a method, act or practice declared unlawful under ORS 646.608 [henceforth an "unlawful trade practice"], may bring an individual action in an appropriate court to recover actual damages or statutory damages of $200, whichever is greater. The court or the jury may award punitive damages and the court may provide any equitable relief the court considers necessary or proper.

Plaintiff alleged that Defendants committed unlawful trade practices in the form of seven violations of Section 646.608: (1) "represent[ing] [that] its goods had characteristics or qualities that the goods did not have" in violation of § 646.608(1)(e); (2) "advertis[ing] goods with the intent not to provide the goods as advertised" in violation of § 646.608(1)(i); (3) making "false or misleading representations of fact concerning the reasons for, existence of, or amounts of price reductions" in violation of § 646.608(1)(j); (4–6) "engag[ing] in price comparison advertising" and violating the UTPA by, *inter alia*, using terms such as . . . 'regular,' 'reduced,' 'sale,' . . . 'formerly' . . . '__ percent discount,' . . . '__ percent off' . . . where the reference price was not in fact Eddie Bauer's own former price" in violation of § 646.608(ee) and §§ 646.883(2) or 885(1)–(2); and (7) engaging in any "other unfair or

deceptive conduct in trade or commerce" in violation of § 646.608(1)(u).

Plaintiff seeks for herself and a putative class of similarly situated consumers the greater of statutory or actual damages, punitive damages, and equitable relief in the form of disgorgement or restitution and a permanent injunction, prohibiting Defendants "from the unlawful conduct alleged" in the complaint and requiring Defendants to maintain records of its pricing and sales practices for auditing purposes.

The district court granted Defendants' Fed. R. Civ. P. 12(b)(6) motion to dismiss on the grounds that Plaintiff had failed to allege adequately an "ascertainable loss of money or property" under the UTPA. The district court reasoned that Plaintiff failed to provide any cases recognizing an "ascertainable loss" under the UTPA "based *solely* on a plaintiff's failure to get as good of a deal as the plaintiff anticipated . . . . Some misstatement as to a characteristic, quality, or feature of the product is required." The district court then dismissed the complaint with prejudice because it found "amendment would be futile given [Plaintiff's] inability to plead an ascertainable loss."

## DISCUSSION

"A federal court sitting in diversity applies the substantive law of the state . . ." *Albano v. Shea Homes Ltd. P'ship*, 634 F.3d 524, 530 (9th Cir. 2011). "In determining the law of the state for purposes of diversity, a federal court is bound by the decisions of the highest state court." *Id.*

Plaintiff contends on appeal that she adequately pleaded three different theories of "ascertainable loss" under § 646.638(1). We begin with Plaintiff's argument that she

suffered an "ascertainable loss" in the form of some or all of the money she used to pay for the clothes because she would not have purchased the clothes at all at the prices she paid but for alleged violations of § 646.608 ("Purchase Price Theory"). The district court rejected Plaintiff's Purchase Price Theory on the grounds that Plaintiff "fail[ed] to explain how [Defendants' alleged misrepresentations] amount[] to a false representation as to the 'character or quality' of the garments which, as discussed in [*Pearson v. Philip Morris, Inc.*, 361 P.3d 3 (Or. 2015)], is necessary to establish reliance on the allegedly misleading claims." Plaintiff argues that the district court erred by reading *Pearson* too narrowly.

In *Pearson*, the plaintiffs alleged that a cigarette company violated the UTPA by allegedly misrepresenting that a "light" cigarette product would deliver less tar and nicotine to smokers than regular cigarettes, even though the amount of tar and nicotine a smoker would consume from the "light" cigarettes "depend[ed] . . . upon the way the cigarette is smoked." 361 P.3d at 7–10, 9 n.5. The plaintiffs claimed that they suffered an "ascertainable loss . . . as a result of" the defendant's violation of § 646.608(e) ("[r]epresent[ing] that . . . goods . . . have . . . characteristics, . . . benefits, . . . or qualities that the . . . goods . . . do not have") because "they paid for cigarettes that 'they believed were inherently lower in tar and nicotine than [the] defendant's regular cigarettes but received cigarettes that would deliver lowered tar and nicotine only if smoked in particular ways.'" *Id.* at 23, 26–27. The plaintiffs sought, inter alia, "a refund of their purchase price as a remedy." *Id.* at 27.

The Oregon Supreme Court reviewed the Oregon Court of Appeals' reversal of the trial court's denial of the

10	CLARK V. EDDIE BAUER

plaintiffs' motion to certify a class. *Id.* at 13. The Oregon Supreme Court held that the trial court correctly found that the plaintiffs failed to carry their burden to show that common issues prevailed over individual ones on the element of reliance. *Id.* at 33. The court recognized that a "purchaser may have suffered a loss in the form of buying something he or she would not have otherwise bought." *Id.* at 25. But the court explained that although "reliance is not, in and of itself, an element of a UTPA claim," because § 646.638(1) requires that a plaintiff show an "ascertainable loss . . . as a result of" an unlawful trade practice, when a plaintiff's theory of loss is that the plaintiff lost the money he paid for the product because "without the misrepresentation [that constitutes the unlawful trade practice] the purchaser would not have bought the product and thus should be entitled to a refund," the plaintiff must plead reliance on the misrepresentation "[a]s a function of logic, not statutory text." *Id.* at 27. But proving reliance would require assessing each class member's motives for purchasing the defendant's cigarettes. Accordingly, the court found that the "plaintiffs failed to show that the reliance required to prove their refund theory of economic loss could be litigated through common evidence." *Id.* at 32.

In so holding, the court appeared to acknowledge that a plaintiff could satisfy the "ascertainable loss" requirement of § 646.638(1) by proving that the plaintiff would not have purchased a product from the defendant but for a misrepresentation that amounts to a violation of § 646.808. However, the court framed its discussion of the plaintiff's purchase price theory of "ascertainable loss" in terms of a consumer's reliance on a misrepresentation that a "product had a character or quality" because the plaintiffs alleged in *Pearson* that the defendant violated, specifically, § 646.808(1)(e). *Id.* at 27.

Here, Plaintiff argues that the district court erred in applying the standard of § 646.808(1)(e), which addresses misrepresentations about the "characteristics" or "qualities" of goods, in assessing whether Plaintiff pleaded an "ascertainable loss" premised on violations of other subsections of § 646.608(1). Plaintiff alleged that she would not have purchased goods from Defendants but for the alleged violations of not only § 646.608(1)(e), but also §§ 646.608(1)(i), (j), (ee), or (u). Subsection (1)(j) (making "false or misleading representations of fact concerning the reasons for, existence of, or amounts of price reductions") and subsection (1)(ee) (engaging in certain kinds of price comparison in violation of §§ 646.883 or 885), in particular, do not involve misrepresentations about a product itself, but about the product's price, comparative price, or price history.[2]

We agree with Plaintiff that *Pearson* does not *require*, as the district court held, that that a plaintiff must always prove a "misstatement as to a characteristic, quality, or feature of the product" to establish an "ascertainable loss" under § 646.638(1). The court in *Pearson* held that if a consumer alleges that the purchase price of a product he purchased satisfies the "ascertainable loss" requirement of § 646.638(1), on the theory that the consumer would not have purchased the product but for a misrepresentation about the "characteristics" of the product in violation of § 646.608(1)(e) (prohibiting misrepresentations about the

---

[2] We note that the Oregon Supreme Court has stated en banc: "[n]o doubt the primary target of [§ 646.608(1)(j)] was the practice of luring customers with dubious representations that prices have been 'slashed' by large percentages, sometimes said to be forced by 'going out of business,' 'removal,' or 'fire sales.'" *Sanders v. Francis*, 561 P.2d 1003, 1006 (Or. 1977).

12           CLARK V. EDDIE BAUER

"characteristics" of a product), then the consumer must establish that he relied on the misrepresentation about the "characteristics" of the product when he purchased it. 361 P.3d at 10–11, 26–28. But this does not mean that Oregon law necessarily *would* recognize Plaintiff's Purchase Price Theory: that a plaintiff may satisfy the "ascertainable loss" requirement of § 646.608(1) by proving that but for a misrepresentation that amounts to a violation of *any* subsection of § 646.808, the plaintiff would not have purchased a product from the defendant, and therefore suffered a "loss" in the form of the purchase price, even if the misrepresentation does not concern the "character or quality" of the item the plaintiff purchased.[3] Accordingly, we invite the Oregon Supreme Court to determine in the first instance whether Oregon law recognizes such a theory of "ascertainable loss."

Plaintiff also argues that she adequately pleaded an ascertainable loss under two additional theories. Under an "Advantageous Bargain Theory," Plaintiff claims that she suffered an "ascertainable loss" because she lost out on the "advantageous bargain" that Plaintiff would acquire by purchasing clothes at a significant discount of their regular selling price, as Defendants represented in alleged violation of § 646.608.[4] Additionally, Plaintiff alleges that she paid

---

[3] Plaintiff has not identified any cases standing for this proposition. *See* Oral Argument at 37:58–38:40, *Clark v. Eddie Bauer*, No. 21-35334 (9th Cir. February 9, 2022), https://www.ca9.uscourts.gov/media/video/?20220209/21-35334/.

[4] Plaintiff relies primarily on *Simonsen v. Sandy River Auto, LLC*, 413 P.3d 982 (Or. Ct. App. 2018). In *Simonsen*, the Oregon Court of Appeals found that a car purchaser suffered an "ascertainable loss" when he bought a car advertised to be in working order but received a car with undisclosed material defects, even though a jury found that the purchaser

more for the clothes than she otherwise would have because Defendants' alleged violation of § 646.608 caused "inflate[d] consumer demand, thereby shifting the demand curve and increasing the prices that Eddie Bauer is able to command and charge for its products" ("Inflated Consumer Demand Theory").[5]  Although we discuss Plaintiff's Purchase Price Theory at the greatest length, we invite the Oregon Supreme Court to consider whether Plaintiff advances any viable theories of "ascertainable loss" under the UTPA.

## CERTIFICATION

In light of the foregoing discussion, we certify the following question to the Oregon Supreme Court:

---

paid the fair market value for the malfunctioning car he received. *Id.* at 987–89.  *Simonsen* recognized that a purchaser can suffer an "ascertainable loss" even when he pays the fair market value for the product he receives if the product was advertised as being in a better condition than it really was.  Similarly, in *Weigel v. Ron Tonkin Chevrolet Co.*, 690 P.2d 488 (Or. 1984), the Oregon Supreme Court recognized that a car purchaser suffered an "ascertainable loss" when he purchased a car that was advertised as new when in fact it was previously "conditionally sold and delivered" to a third person who put 200 miles on the odometer before returning the car, because the defendant's salesman admitted that if the vehicle were used it would have depreciated in market value.  *Id.* at 490.  These holdings do not require us to find that a consumer suffered an ascertainable loss when the consumer purchased a product that was advertised as discounted from a higher price but not otherwise advertised as any different from the product the consumer received.  Accordingly, it appears that Plaintiff's Advantageous Bargain Theory, if recognized, would constitute an extension of Oregon law.

[5] The Oregon Supreme Court stated in *Pearson* that no other court had found an inflated consumer demand theory viable.  361 P.3d at 26.

14            CLARK V. EDDIE BAUER

> Does a consumer suffer an "ascertainable loss" under Or. Rev. Stat. § 646.638(1) when the consumer purchased a product that the consumer would not have purchased at the price that the consumer paid but for a violation of Or. Rev. Stat. §§ 646.608(1)(e), (i), (j), (ee), or (u), if the violation arises from a representation about the product's price, comparative price, or price history, but not about the character or quality of the product itself?

We acknowledge that, as the receiving court, the Oregon Supreme Court may reformulate the certified question.

The Clerk shall forward copies of this certification order and the appellate docket for this case to the Oregon Supreme Court. Or. R. App. P. 12.20(1)(b).[6] The Clerk is further directed to forward a copy of the Excerpts of Record, Supplemental Excerpts of Record, and the appellate briefs filed by the parties. If requested by the Administrator of the Oregon Supreme Court, the Clerk shall provide all or part of the district court record not included in the Excerpts of Record or Supplemental Excerpts of Record. Or. R. App. P. 12.20(5)(c).

Submission of this appeal for decision is vacated and deferred pending the Oregon Supreme Court's final response to this certification order. The Clerk is directed to close this docket administratively, pending further order. The parties shall notify the Clerk of this court within fourteen days of

---

[6] If the docket does not show the names and addresses of the parties or their attorneys, the Clerk is ordered to provide that information to the Oregon Supreme Court. Or. R. App. P. 12.20(1)(b).

the Oregon Supreme Court's acceptance or rejection of certification, and again, if certification is accepted, within fourteen days of the Oregon Supreme Court's issuance of a decision.

**QUESTION CERTIFIED; PROCEEDINGS STAYED.**

Signed:   /s/ Judge Christen
Judge Christen
Presiding Judge[7]

---

[7] Oregon Rule of Appellate Procedure 12.20(1)(b) provides that "certification order[s] shall be signed by the presiding judge."